# Exhibit K - Detective Trevor Alsup's arrest report



*Joseph Lombardo, Sheriff*

<div style="display:flex">

**FORCE INVESTIGATION TEAM**

**Lieutenant Dennis O'Brien**
Office: 702-828-8443
Cell: 702-239-8711
Email: d6192o@lvmpd.com

**Sergeant Jerry MacDonald**
Office: 702-828-3273
Cell: 702-756-8803
Email: j4660m@lvmpd.com

**Detective Trever Alsup**
Office: 702-828-0015
Cell: 702-289-5617
Email: t5782a@lvmpd.com

**Detective Marc Colon**
Office: 702-828-0012
Cell: 702-812-0147
Email: m7585c@lvmpd.com

**Detective Craig Jex**
Office: 702-828-0010
Cell: 702-845-0598
Email: c5597j@lvmpd.com

**Detective Jason Leavitt**
Office: 702-828-7309
Cell: 702-860-4160
Email: j5814l@lvmpd.com

**Detective Joseph Patton**
Office: 702-828-5767
Cell: 702-401-8581
Email: j8289p@lvmpd.com

**Detective Blake Penny**
Office: 702-828-0014
Cell: 702-300-6906
Email: b6042p@lvmpd.com

**LEST Lara Stein**
Office: 702-828-0013
Email: l9392s@lvmpd.com

</div>

# Force Investigation Team Report
## In-Custody Death

LVMPD Event: 170514-0228
Division of Occurrence: Tourist Safety Division
Date of Incident: 05-14-17
Time of Incident: 0056 hours
Location of Incident: The Venetian Hotel Casino
3355 S. Las Vegas Boulevard
Las Vegas, NV 89109

Detectives: Trever Alsup, P# 5782
Marc Colon, P# 7585

Involved Officer: Kenneth Lopera, P# 14610

Victim: Tashi Farmer, ID# 7037405

Date of report: 08-01-2017

Submitted by: Detective Trever Alsup, P# 5782

Signature: _5782_

Approved by: Sergeant Jerry MacDonald, P# 4660

Signature:

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

## TABLE OF CONTENTS

I.      PERSONS INVOLVED ........................................................................................4

      Involved Officer ........................................................................................4

      Witness Officer ........................................................................................4

      Victim ........................................................................................4

II.     PERSONS AT THE SCENE ........................................................................5

III.    INCIDENT DETAILS ........................................................................................6

IV.     BODY WORN CAMERAS (BWC) ........................................................7

      Officer Lopera ........................................................................................7

      Officer James Rybacki, P# 14907 ....................................................11

      Officer William Stutzman, P# 14902 ..............................................11

V.      HOSPITAL ........................................................................................11

VI.     SCENE WALK-THROUGHS ........................................................................12

VII.    PUBLIC SAFETY STATEMENT (PSS) ........................................................12

VIII.   OFFICER WEAPON COUNTDOWNS ........................................................14

IX.     DESCRIPTION OF THE SCENE AND VISIBLE EVIDENCE ....................15

X.      THIRD PERSON VIDEO AND PHOTOGRAPHIC EVIDENCE .................18

XI.     AUTOPSY ........................................................................................18

XII.    PERSONS CONTACTED ........................................................................20

      LVMPD Officers/Personnel ................................................................20

      Civilians ........................................................................................21

XIII.   INVESTIGATION ........................................................................................23

      Officer Kenneth Lopera ......................................................................23

      Officer Ashley Lif ................................................................................23

      Peter Infantino ....................................................................................23

      Marcelino Vibas ..................................................................................24

      Ronnie Guy ..........................................................................................24

      Sergeant Travis Crumrine ..................................................................25

      Officer Michael Tran ..........................................................................25

      Officer James Rybacki ........................................................................26

      Officer Michael Amburgey ................................................................26

      Carolyn Becic ......................................................................................27

      Erik Hopkins ......................................................................................27

      Witness #1 ..........................................................................................27

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

Cody Kollar...........................................................................................28

Jonathan Pierce ..................................................................................29

XIV.   TIMELINE ...........................................................................................29

XV.    FORENSICS REQUESTS/RESULTS.........................................................30

Officer Lopera's ECD Examination..........................................................30

Farmer's Cellular Phone ......................................................................31

XVI.   USE OF FORCE ....................................................................................31

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
# FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

## I.   PERSONS INVOLVED

### Involved Officer

| | |
|---|---|
| Name: | **Kenneth Lopera, P# 14610** |
| Date of hire: | 06-04-12 |
| Area of assignment: | Convention Center Area Command (CCAC) |
| Squad: | CC16 |
| Call sign: | VEN1 |
| Vehicle: | 14107 |
| Shift hours: | 2000-0600 hours |
| Days off: | Wednesday/Thursday/Friday |
| Statement given to FIT: | No |
| Weapon | |
|     Make: | Taser |
|     Model: | X26P |
|     Serial number: | X12002RP4 |



| | |
|---|---|
| Criminal charges/offenses: | Oppression Under the Color of Office<br>Involuntary Manslaughter |

### Witness Officer

| | |
|---|---|
| Name: | **Sergeant Travis Crumrine, P# 8881** |
| Date of hire: | 09-05-05 |
| Area of assignment: | CCAC |
| Squad: | CC16 |
| Call sign: | 756 |
| Vehicle: | 1768 |
| Shift hours: | 2000-0600 hours |
| Days off: | Wednesday/Thursday/Friday |
| Statement given to FIT: | Yes |

### Victim

| | |
|---|---|
| Name: | **Tashi Farmer** |
| DOB: | |
| SSN: | |
| ID number: | 7037405 |
| Race: | Black |
| Height/Weight: | 6'0"/195 pounds |
| Hair/Eyes: | Black/Brown |
| Address: | 1912 Embrey Ave.<br>Las Vegas, NV 89106 |

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

## II.   PERSONS AT THE SCENE

The majority of LVMPD personnel who arrived on this event were documented on the LVMPD unit log. Refer to the unit log for a complete listing of those individual's names, personnel numbers, and call signs.

The below listed persons responded to the primary and/or secondary incident scene(s) of this event but were not on the LVMPD unit log.

### POLICE EMPLOYEE ASSISTANCE PROGRAM (PEAP)
1)   Peer Counselor Michael Springer                                   P# 6278

### CLARK COUNTY OFFICE OF THE CORONER/MEDICAL EXAMINER (CCOCME)
1)   Coroner John Fudenberg
2)   Assistant Coroner Paul R. Parker III
3)   Investigator Michelle Ortero, P# 404

CCOCME case:              17-5089
Date & time of death:   05-14-17 at 0139 hours
Seal:                           537773

### DAVIS FUNERAL HOME, CREMATORY & CEMETERY
1)   Josh Turriff
2)   Trampas Turriff

### COLLECTIVE BARGAINING ASSOCIATIONS

### LAS VEGAS POLICE MANAGERS AND SUPERVISORS ASSOCIATION (LVPMSA)
1)   Sergeant Russell Wood                                               P# 5266
2)   Attorney Jay Roberts

### LAS VEGAS POLICE PROTECTIVE ASSOCIATION (LVPPA)
1)   Officer Bryan Yant                                                    P# 6956
2)   Attorney John Aldrich

### MEDICAL PERSONNEL

### CLARK COUNTY FIRE DEPARTMENT RESCUE 18
1)   J. Mayes
2)   C. Grinder

### MEDICWEST 791
1)   J. Shepherd
2)   D. Clark

### SUNRISE HOSPITAL & MEDICAL CENTER
1)   Doctor Patrick Flores (time of death 0139 hours)

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

## III.    INCIDENT DETAILS

The following information was provided to FIT detectives upon their arrival:

Officers Lopera and Lif were inside the Venetian Hotel getting a cup of coffee. The officers were approached by a black male adult [Farmer] who stated he was being chased. Farmer ran from the officers and was chased by Officer Lopera.

During the foot pursuit, Officer Lopera observed Farmer near a white truck and believed he attempted to open the tailgate of the truck in an attempt to flee. Officer Lopera then observed Farmer approach the driver's door of the white truck and believed Farmer was going to attempt to take the vehicle by force. Officer Lopera discharged his Taser at Farmer and Farmer fell to the ground. Farmer attempted to pull the Taser probes out and attempted to grab the Taser from Officer Lopera's hand.

Security guards from the Venetian Hotel responded and attempted to help take Farmer into custody. Officer Lopera then performed a Lateral Vascular Neck Restraint (LVNR) and rendered Farmer unconscious.

Officers requested medical personnel and attempted to revive Farmer when they observed he was not breathing. Officers began Cardio Pulmonary Resuscitation (CPR) and continued until relieved by medical personnel.

Upon arrival of investigators, Sergeant Abdal-Karim, P# 13724 conducted a briefing. The following persons were present:

1)   Assistant Sheriff Kelly
2)   Deputy Chief Hank
3)   Deputy Chief McGrath
4)   Captain Pelletier
5)   Lieutenant Bledsoe
6)   Lieutenant Calhoun
7)   Lieutenant O'Brien
8)   Lieutenant Summers
9)   Sergeant MacDonald
10)  Sergeant Ward
11)  Detective Alsup
12)  Detective Colon
13)  Detective Jex
14)  Detective Leavitt
15)  Detective Patton
16)  Detective Penny
17)  Detective Watkins
18)  Corrections Officer Gray
19)  Officer R. Thorne
20)  CSA Supervisor Nemcik

**Event: 170514-0228**

Following the briefing Detective Alsup was assigned as the lead case agent and the responsibility of documenting the crime scene with crime scene analysts. Detectives Colon, Jex, Leavitt, and Penny were assigned to interview available witnesses and conduct weapon countdowns. Detective Patton was assigned responsibilities at the hospital, which included interviewing any possible witnesses.

## IV.   BODY WORN CAMERAS (BWC)

### Officer Lopera

Officer Lopera was wearing a body worn camera at the time of the incident. The camera was activated at 00:54:14 on 05-14-17. The camera was collected by Sgt. MacDonald and secured. The video footage captured was later viewed by detectives.

Officer Lopera's camera footage depicted the following:

00:00 – Footage began as Farmer approached Officers Lopera and Lif.

00:09 – Officer Lopera began to walk towards Farmer.

00:13 – Farmer walked through a chained off area into an employee only area.

00:14 – Officer Lopera reached out to grab Farmer. Farmer turned and ran down a hallway. Officer Lopera ran after Farmer.

00:52 – Officer Lopera reached a stairwell and began to descend the stairs.

01:18 – Officer Lopera exited the hotel.

01:19 – Officer Lopera asked a security guard if he observed anyone running.

01:21 – Officer Lopera ran south.

01:30 – Farmer observed running by a white pickup.

01:34 – Officer Lopera yelled, "Stop don't move. You're going to get tased."

01:36 – Officer Lopera yelled, "Taser, Taser, Taser." Farmer then fell backward onto the street.

01:38 – Officer Lopera yelled, "Taser, Taser." Farmer held his hands up and a cell phone is visible in his left hand.

01:39 – Officer Lopera yelled, "Don't move."
          Farmer replied, "OK."
          Officer Lopera yelled, "Don't move."

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

01:43 – Officer Lopera pointed in the direction of the white truck and yelled, "Stop right there."

01:44 – Officer Lopera yelled, "Get on your stomach."
Farmer sat up and attempted to put on his left shoe which had slipped off the heel.

01:45 – Officer Lopera yelled, "Get on your stomach".
Farmer replied, "I will. I will. Please." Farmer fell backward to the ground.

01:49 – Officer Lopera broadcast over the radio, "Control Venetian1, Give me a Red."
Farmer is heard saying, "Please."

01:51 – Officer Lopera yelled, "Don't move. Get on your stomach."

01:53 – Farmer attempted to put his left shoe on again.

01:54 – Officer Lopera yelled "Get on your stomach."
Farmer was rolling to his right side.

01:55 – Farmer replied, "I will" then yelled "I will."

01:56 – Farmer reached to his lower back.

01:57 – Officer Lopera yelled "Get on your stomach."

02:00 – Farmer rolled onto his stomach, then to his back.

02:01 – Officer Lopera yelled "Get on your stomach."
Farmer replied, "I will."

02:03 – Officer Lopera yelled, "Get on your stomach. Do it now."

02:04 – Farmer rolled to his stomach. Officer Lopera grabbed his left arm.

02:07 – Farmer replied, "OK, OK, OK Sir."

02:09 – Officer Lopera yelled, "Get on your stomach."
Farmer replied, "I will."

02:13 – Officer Lopera stated, "Stop, you're gonna get it again. Get it again. Help me out."

02:18 – Farmer said "No, no, no."

02:20 – Venetian Hotel Security arrived. They gave Farmer verbal commands and a security guard grabbed onto Farmers arms.
Farmer said, "I will."

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

02:22 – Security gave commands to "Stop, turn around."
Farmer replied, "I will." Farmer then sat up.

02:24 – Officer Lopera told Farmer, "Get on the ground."

02:27 – Farmer replied, "OK sir."

02:29 – Officer Lopera told Farmer, "Don't move."

02:30 – Officer Lopera repeated the command, "Don't move."

02:33 – Officer Lopera holstered his ECD and told Farmer, "Hands behind your back."
Farmer replied, "I'm trying to."

02:35 – Officer Lopera told Farmer, "On your stomach."

02:36 – Officer Lopera straddled Farmer's lower back.

02:37 – Officer Lopera put both his hands on Farmer's head.

02:40 – Officer Lopera told Farmer, "Get on your stomach."
Farmer is observed lying on his stomach.

02:42 – Officer Lopera told Farmer, "Get on your stomach."
Farmer is observed lying on his stomach.

02:45 – Security is observed grabbing Farmer's arms.

02:47 – Officer Lopera told Farmer, "Get on your stomach."
Farmer is observed lying on his stomach.

02:50 – Officer Lopera told Farmer, "Get on your stomach."
Farmer is observed lying on his stomach.

02:52 – Officer Lopera told Farmer, "Get on your stomach."
Farmer is observed lying on his stomach.

02:53 – Officer Lopera told Farmer, "Let me see your hands."

02:58 – Officer Lopera appeared to put Farmer in some type of neck restraint.

03:01 – Sergeant Crumrine arrived and stated, "Put your fucking hands behind your back."

03:13 – Officer Lopera asked, "Is he out yet?"

03:15 – Farmer gasps.

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
## FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

03:18 – Officer Lopera asked, "Is he out yet?"

03:19 – Officer Lopera asked, "Is he out yet?"

03:25 – Officer Tran arrived and said, "Let him go, Ken."

03:26 – Officer Lopera asked, "Are you sure?"
Officer Tran replied, "Yeah."

03:27 – Officer Lopera stated, "Roll him to…Hold on. Don't grab my fucking legs."
Officer Tran stated, "We're on top of him."

03:30 – Officer Lopera stated, "Roll him to the other side. Get the other arm too!"

03:36 – Officer Lopera placed the palm of his hand on Farmer's forehead.

03:38 – Officer Lopera asked, "You got the other one?"

03:50 – Farmer Gasps.

04:11 – Officer Lopera released the hold on Farmer.

04:17 – Officer Lopera stated, "He tried to carjack somebody."

04:36 – Officer Lopera stated, "I tased him."

04:38 – Officer Lopera stated, "Roll medical."

05:03 – Sergeant Crumrine approached Officer Lopera. Officer Lopera told Sergeant Crumrine, he was getting coffee when he was approached by a guy who said someone was following him. Officer Lopera then stated the male ran away from the officers and outside the hotel. As Officer Lopera was chasing the male, he attempted to gain access into the bed of a truck at which time Officer Lopera Tased him. Farmer attempted to pull the ECD wires out and Officer Lopera stated "I choked him out."

05:44 – Officer Lopera told other officers he needed to obtain a voluntary statement from the driver of the white truck.

06:38 – Officer Lopera told Officers Flores and Rybacki what happened. During the conversation he stated, "I start waling on the dude and then I rear mounted and choked him out."

07:02 – Officer Lopera told Officer Lif, "He tried to get in somebody's truck. So I Tased him and choked him out."

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

Event: 170514-0228

07:20 – Officer Lopera asked, "Sarge, is he OK? He's breathing?" Officer Lopera then gives a thumbs up sign and says, "Thank you."

07:27 – Officer Lopera asked if he should expedite medical.

07:41 – Officer Lopera tells another officer, "I tased him, fought a little bit and choked him out."

07:48 – Officer Lopera approached Venetian Security personnel and asked them to attempt to pull video surveillance of the incident.

09:34 – Officer Lopera talked to Officer Lif again. During the conversation Officer Lopera told her, "I start punching him. Rear nakeded his ass. He went out."

**Officer James Rybacki, P# 14907**

Officer Rybacki was wearing a body worn camera at the time of the incident. The camera was activated on 05-14-17 at 01:04:16. The camera was docked and uploaded on 05-14-17 at 05:58:49 and the footage was later viewed by detectives. The following times are from the activation of the camera.

11:25 – Officer Rybacki approached Officers Flores and Tran. One of the officers said, "He was out when we got here." Officer Rybacki resonded, "He was definitely on something."

**Officer William Stutzman, P# 14902**

Officer Stutzman was wearing a body worn camera at the time of the incident. The camera was activated on 05-14-17 at 01:11:14. The camera was docked and uploaded on 05-14-17 at 05:46:06 and the footage was later viewed by detectives. The following times are from the activation of the camera.

04:09 – Officer Stutzman began talking to Officer Flores. Officer Flores stated, "By the time we got here, Sarge and uh what's that guy? Lopero were wrestlin' around with that guy. Had him in a lock. I grabbed the guys feet but he was already out."

Numerous other officers who were assigned to this event also activated their body worn cameras. Their cameras were docked and uploaded with the footage saved.

## V.    HOSPITAL

### Location and Description of the Body

Farmer's body was located inside the quite room. Farmer was lying supine on top of a hospital gurney and was covered by a white sheet. After the sheet was removed by CCCO Investigator Otero, Detective Patton observed signs of medical intervention.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

A black t-shirt was cut open and located under Farmer's upper body. A pair of black Hanes boxer briefs were cut with part of the briefs covering Farmer's groin and the other portion of the boxer briefs were located under Farmer's midsection. A pair of blue jeans and a black belt were cut open and located below Farmer's lower body. Located on Farmer's feet were a pair of white socks and black high tops.

CCCO Investigator Otero rolled Farmer's body for observation and photographs. Attached to Farmer's back were two Taser prongs with wires.

The following items were impounded by CSA Reiner:

1)   Taser wire with prongs.

## VI.    SCENE WALK-THROUGHS

The purpose of the scene walk-through was to help investigators develop an understanding of the scene, including identifying officer location at the time deadly force was used, identifying potential physical evidence, and re-creating a timeline of the incident.

On 05-14-17, at approximately 0330 hours, Officer Lopera provided a walk-through of the scene in the presence of the following persons:

1)   Lieutenant O'Brien
2)   Sergeant MacDonald
3)   Detective Alsup
4)   Detective Colon
5)   LVPPA representative Officer Yant
6)   LVPPA attorney John Aldrich

During the walk-through, which was not video or audio recorded, Officer Lopera relayed the following information:

Officer Lopera exited a set of doors, observed a security officer and asked if the officer had seen anyone running. The security officer pointed to the south and Officer Lopera observed Farmer running south in the middle of the street. Farmer approached a white truck that was travelling west. Farmer attempted to open the tailgate of the truck and Officer Lopera believed that Farmer was going to attempt to take the vehicle by force. Officer Lopera deployed and discharged his Taser resulting in Farmer falling to the ground.

The walkthrough was then stopped as directed by LVPPA attorney John Aldrich.

## VII.    PUBLIC SAFETY STATEMENT (PSS)

On 05-14-17, at approximately 0317 hours, Detective Patton interviewed Sergeant Abdal-Karim in reference to the Public Safety Statement he obtained from Officer Lopera. Below is the transcript of the interview. Note: Detective Patton is designated by (JP) and Sergeant Abdal-Karim is designated by (SA).

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

JP: *Operator, this is Detective Joe Patton, P-A-T-T-O-N, P# 8289, with the Force Investigation Team, conducting an interview with, uh, Sergeant spelled phonetically Adam-Baker-David-Adam-Lincoln King-Adam-Robert-Ida-Mary, P# 13724, call sign 781. Uh, this interview is taking place reference a Public Safety Statement that he conducted with Officer Lincoln-Ocean-Paul-Easy-Robert-Adam, uh, in reference to an in-custody death that occurred, uh, to the rear of The Venetian, near The Venetian parking lot, on May 14, 2017, at approximately 0058 hours, um, in reference to LVMPD Event#...LVMPD Event#, uh, 170514-0228. Uh, today's date is May 14, 2017. Uh, the time of this interview is 0317 hours. This interview is taking place in my unmarked LVMPD vehicle, uh, to the rear of The Venetian, near The Venetian parking lot. And also present for the interview is PMSA representative Kurt McKenzie, Mary-Charlie-King-Easy-Nora-Zebra-Ida-Easy. Can you state your name and P# for me?*

SA: *Uh, la...uh, Shakeel Abdal-Karim, P# 13724.*

JP: *Okay. And, um, did I get that correct; you took a Public Safety Statement from Officer Lopera?*

SA: *Correct.*

JP: *And approximately what time did you conduct that statement?*

SA: *Uh, it was about 0130 hours approximately.*

JP: *Okay. All right. And, uh, so what I'll have you do, Sarge, is just go ahead and, um, read the questions that you asked him and then his answers verbatim what he gave you. And if you get to a question, um, that was not applicable, just read the number and the question then just, uh, refer to it as not applicable.*

SA: *Okay.*

JP: *Okay. Go ahead.*

SA: *Uh, question 1: "Did you discharge your firearm?"*

    *A: "If so, in what direction?"*
    *B: "Approximately where were you located when you fired?"*
    *C: "How many shots do you think you fired?"*



LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**



JP:

JP:     *...for me?*

SA:     *Uh, question 3: "Are there any outstanding suspects? If so, what is their description? What direction/mode of travel? How long have they been...have they been gone? What crimes have they committed? What type of weapons do they have?"*
    *Question 4: "Is it possible the suspect fired rounds at you? If so, what direction were the rounds fired from? How many shots do you think the suspect fired? Approximately were was the suspect located when they fired?"*
    *Um, 5: "Do you know if any other officers discharged their firearm? If so, who are they? Approximately where was the officer(s) located when they fired?"*

JP:     *Okay. All right. Operator, this will end the interview. Same persons are present. Time is 0321 hours.*

## VIII.   OFFICER WEAPON COUNTDOWNS

On 05-14-17, Officer Lopera's ECD was secured and impounded by detectives. Involved and witness officers were photographed by CSI personnel for appearance purposes, and Officer Lopera's ECD was photographed for identification purposes.

Officer Lopera was dressed in a green LVMPD long sleeve utility uniform. He wore LVMPD patches on each shoulder and a sewn on LVMPD badge over his left breast. Officer Lopera

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

wore a black duty belt with attached tools and equipment as part of his position in patrol. Officer Lopera's ECD was carried on the left side of his body and secured in a holster.

## IX.   DESCRIPTION OF THE SCENE AND VISIBLE EVIDENCE

The description of the scene was reported by SCSA Herring in her Crime Scene Investigation Report. Her report follows in italics. Information *not* in italics has been added by Detective Alsup.

**Vehicle(s):**
*Vehicle 1: 2008 Ford Crown Victoria, 4 door, LVMPD Patrol vehicle #CC1768, NV/EX54746, VIN/2FAFP71VX8X100165*

**GENERAL INFORMATION:**

*On the above listed date and time, I arrived to the Venetian Hotel, at 3355 S. Las Vegas Blvd., in reference to an in-custody death investigation. FIT Lt. O'Brien P36192, Sgt. MacDonald P#4660, Detectives Alsup P#5782, Patton P# 8289, Jex P#5597, Colon P#7585, and Penny P#6042; CIRT Detectives; CSAS Nemcik P#8504, SCSA King P#14372; CSA Biwer P#16190; and Clark County Medical Personnel were present on scene.*

*The scene was secured with yellow crime scene tape and uniformed LVMPD patrol officers present.*

*The involved subject was transported from the scene prior to my arrival.*

**SCENE**

*The involved area of the hotel/casino property was the intersection at Krueger Dr. (an east/west roadway), and a north/south private driveway along the east side of the building; at the southeast corner of the property.*

*The north/south private driveway contained an east facing employee "The Palazzo Team Member Entrance" at the west side of the roadway, with a security check-point adjacent to the double employee entrance/exit doorway; a stairway south of the employee entrance; and an extension of the building with an adjacent curb. Traffic signals, paved sidewalk and landscaping were located at the southeast corner of the building. The north and southbound travel lanes were separated by delineator traffic posts.*

*The interior of the aforementioned employee entrance accessed a stairwell labeled "Stairwell 3" leading to lower and upper levels of the property. From the second level access, a series of hallways were present, and accessed a "Coffee Bean & Tea Leaf" business on the public shopping/casino/hotel floor.*

*Krueger Dr., west of the intersection with the aforementioned north/south private driveway consisted of eastbound and westbound travel lanes. The directional travel lanes were separated by a raised concrete partition, and the two (2) lanes for each direction of travel were*

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

*divided with delineator traffic posts. A covered walkway with a paved sidewalk, landscaping, and partitioned railings extended along the south side of the buildings.*

*Vehicle #1 was located in travel lane 1 of the westbound lanes of Krueger Dr., west of the intersection. The vehicle was facing west with the front driver side door in an open position; and the vehicle was running in an "ON" position. A black "Brix" baseball hat (**Item 14**); a black bi-ford wallet containing the following items: a cigarette (**Item 16**), numerous business cards, receipts, miscellaneous papers, and multiple financial credit/debit cards in the name of "Tashi Farmer"(**Item 15**); a black "Alcatel" cell phone (unknown serial #)(**Item 17**); a box of "Tic-Tac" candies; and a set of metal handcuffs were located on the hood (driver side) of vehicle #1.*

*Medical equipment, medical debris, and apparent blood (labeled AB 1)(**Item 18**) were located on the roadway of the westbound travel lanes of Krueger Dr., west of vehicle #1.*

*Numerous yellow/pink "AFID" tags bearing serial #TSC:C31040 (designated as AFID Cluster)(**Items 1-5**) were located on the roadway/curb at the northwest corner of the intersection; throughout the westbound lanes of Krueger Dr., adjacent to vehicle 1(designated as AFID Cluster 2)(**Items 6-9**); on the roadway underneath vehicle #1 (**Item12**); and the westbound travel lane 2 of Krueger Dr, (**Items 10-11**). A taser "blast door" (**Item13**) was located on the roadway, adjacent to the front passenger tire of vehicle #1.*

## PHOTOGRAPHY

*Digital images were taken showing: the above described scene for location and overall condition; perspective views marked in the scene with large orange cons for: LVMPD Officer Lopera P#14610 and Tashi Farmer, DOB: 12/16/76 SCOPE ID#7037405; the locations of the recovered items of evidence; and views of the recovered items of evidence for identification and overall condition.*

*Additional digital images were taken showing:*

- *views of LVMPD Officer Lopera P#14610 wearing a green tactical uniform with a body camera attached at the left shoulder and a duty belt in place, for identification and overall condition to include injuries taken with and without a scale to the right hand, and the left elbow; views of markings (black) to the left (outer) hand; and views of apparent blood on the right hand (**Item 19**), the left hand (**Item 20**), the inner right forearm, the left forearm/wrist, and the left and right uniform sleeves.*
- *views of the aforementioned duty belt for overall condition and contents to include a black "TASER" gun at the left side*
- *views of the aforementioned "TASER" gun (model: 11002 A, serial #X12002RP4) for identification and overall condition, and views of the attached cartridges (expended at the front end/non-expended in the grip handle) for overall condition*

## Evidence

*The following items were recovered and impounded into evidence by SCSA King P#14372: thirteen (13) "AFID" tags, one (1) TASER "blast door", and one (1) swab of apparent blood from the roadway/intersection of Krueger Dr.; one (1) baseball cap, wallet with contents, and*

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

*cell phone from the hood of vehicle #1; and two (2) swabs of apparent blood from the left and right hands (one swab each hand) of Officer Lopera P#14610. Please refer to the Evidence Impound Report for additional information.*

## DIAGRAM

*A sketch of the scene with measurements was completed by SCSA King P#14372, with the assistance of CSA Biwer P#16190. A computerized diagram will be completed and maintained in the electronic case file.*

## ADDITIONAL INFORMATION

*The measured distance between the above described marked large cones for LVMPD Officer Lopera P#14610 and Tashi Farmer, DOB: 12/16/76 SCOPE ID#7037405, is approximately 11'6".*

*The "TASER" gun was recovered by FIT detectives on scene.*

*SCSA Reiner P#8167 and CSA Strumillo P#16067 responded to an additional location in reference to this incident. Please refer to Reiner's reports for further information.*

*No further action taken.*

Location and Description of the Body

The description of the body was reported by SCSA reiner in her Crime Scene Investigation Report. Her report follows in italics. Information *not* in italics has been added by Detective Alsup.

## GENERAL INFORMATION:
*On Sunday, May 14, 2017 at approximately 0340 hours, I arrived at Sunrise Hospital reference an in-custody death investigation. Also present on the scene were the following people: FIT Detective J. Patton P#8289; CSA J. Strumillo P#16067; LVMPD Patrol Officers M. Amburgey P#14869 and E. Von Tagen P#16098; Coroner Investigator M. Otero #404; Representative from PEAP and Representatives from Davis Funeral Home.*

## The Decedent:
*The decedent, Tashi Farmer (a black male adult, dob: 12/16/76), was laying on his back face up on a hospital gurney covered with a white sheet inside the Quiet Room at Sunrise Hospital. Once the sheet was removed, the decedent was wearing a partially cut black shirt, white socks and black shoes. On the gurney between the legs and under the buttocks was a cut pair of black and gray boxers and a pair of black jeans with a black belt. On the back side of the shirt and boxers were Taser probes and wire. There were medical devices on and around the body. The Coroner Investigator performed a cursory external examination of the decedent with injuries observed to the top of the nose, swelling and bruising to the right eye, the left upper and lower arm, an abrasion on the right knee, the lower lip, and red marks on the upper center*

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

*and middle chest. There was apparent blood on the top of the left hand and black marks on the right hand.*

**Photography:**
*Digital images were captured showing the decedent for identification and overall condition, the location of injuries, a small biohazard bag containing Taser wire and a NV Driver's License in the name of the decedent.*

**Evidentiary Observations:**
*The biohazard bag containing Taser wire was recovered and impounded as evidence(please refer to the Evidence Impound Report for further).*

**Additional Information:**
*The decedent's hands were bagged, the decedent was placed on a sheet and into a body bag, sealed (#537773) and transported to CCOCME by representatives from Davis Funeral Home. I cleared from this incident at approximately 0528 hours.*

*No further action taken.*

## X.   THIRD PERSON VIDEO AND PHOTOGRAPHIC EVIDENCE

### Venetian Hotel and Casino

During the subsequent investigation I viewed the footage provided by the Venetian Hotel. The camera was active and zoomed in on Officer Lopera's location at 00:56:35 on 05-14-17. The following annotations were identified along with the time each event occurred. The time noted is from the time stamp on the video.

| | |
|---|---|
| 00:56:40 | Officer Lopera holstered his ECD. |
| 00:56:40 – 00:57:03 | Officer Lopera struck Farmer in the head approximately 10-12 times. |
| 00:57:03 – 00:58:16 | Officer Lopera held Farmer in a choke hold. |

## XI.   AUTOPSY

On 05-14-17, at approximately 1308 hours, under CCOCME case 17-05089, an autopsy was performed on the body of Tashi Farmer at the Clark County Office of the Coroner/Medical Examiner by Doctor Olson.

The following persons were in attendance:

1) Detective Alsup
2) Detective Colon
3) SCSA Lynch
4) Forensic Tech Ammann

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
## FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

The following items of evidence were impounded:

1) Item #1- One (1) right hand evidence preservation bag
2) Item #2 – One (1) left hand evidence preservation bag
3) Item #3 – Two (2) cotton swabs bearing samples of possible DNA
4) Item #4 – Two (2) cotton swabs bearing samples of possible DNA
5) Right hand fingernail clippings bearing possible DNA
6) Left hand fingernail clippings bearing possible DNA
7) Item #7 – One (1) buccal swab kit
8) Item #8 – One (1) taser probe bearing apparent blood
9) Item #9 – One (1) taser probe bearing apparent blood
10) Item #10 – One (1) taser wire
11) Item #11 – One (1) cut and torn black "forty brix" shirt, size XL, bearing apparent blood and defects
12) Item #12 – One (1) pair of cut "jeanius level products akademiks" blue and camouflage patched jeans, size 34X32, and one (1) cut black "Dickies" leather belt, size 38
13) Item #13 – One (1) pair of cut, black "Hanes" boxer briefs, size M, bearing apparent blood and defect
14) Item #14 – One (1) pair of black "adidas tubular" shoes size 10 ½
15) Item #15 – One (1) pair of white "adidas" socks

The following wounds/injuries were noted on Farmer:

1) Taser probe lodged in the middle of his upper back.
2) Apparent probe strike (puncture) in lower back slightly left of midline.
3) Bruising on the back of the left shoulder, back of left arm and inside upper lip.
4) Lacerations to exterior upper lip.
5) Multiple lacerations and swelling around the right eye.
6) Laceration to the bridge of the nose.
7) Laceration under the left eye.
8) Swelling around the left eye.
9) Abrasion under his right ear.
10) Abrasion on inner right knee.
11) Abrasion to left bicep.
12) Abrasion on back left shoulder.
13) Injury to upper right back.
14) Multiple subscalp hemorrhages.
15) Multiple hemorrhages in the neck.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

Upon the completion of toxicology testing, the following results were noted:

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Atropine | Positive | ng/mL | 001 - Peripheral Blood |
| Lidocaine | Positive | mcg/mL | 001 - Peripheral Blood |
| Monoethylglycinexylidide (MEGX) | Positive | mcg/mL | 001 - Peripheral Blood |
| Nicotine | Positive | ng/mL | 001 - Peripheral Blood |
| Caffeine | Positive | mcg/mL | 001 - Peripheral Blood |
| Cotinine | Positive | ng/mL | 001 - Peripheral Blood |
| Theobromine | Positive | mcg/mL | 001 - Peripheral Blood |
| Quetiapine | 69 | ng/mL | 001 - Peripheral Blood |
| Delta-9 Carboxy THC | 10 | ng/mL | 001 - Peripheral Blood |
| Delta-9 THC | 1.9 | ng/mL | 001 - Peripheral Blood |
| Amphetamine | 51 | ng/mL | 001 - Peripheral Blood |
| Methamphetamine | 950 | ng/mL | 001 - Peripheral Blood |

After a complete autopsy, Doctor Olson opined Farmer died as a result of asphyxia due to police restraint procedures. The manner of death was homicide. Dr. Olson further stated that significant factors also included methamphetamine intoxication and an enlarged heart.

## XII.   PERSONS CONTACTED

The following persons were contacted reference their knowledge of the facts and circumstances related to the incident:

**LVMPD Officers/Personnel**

**Officer Michael Amburgey, P# 14869**
| | |
|---|---|
| Date of hire: | 03-13-14 |
| Area of assignment: | CCAC |
| Squad: | CC12 |
| Call sign: | 1M24 |
| Vehicle: | CC1752 |
| Shift hours: | 2200-0800 hours |
| Days off: | Wednesday/Thursday/Friday |

Witness officer; provided an audio recorded interview

**Officer Ashley Lif, P# 15392**
| | |
|---|---|
| Date of hire: | 07-16-15 |
| Area of assignment: | CCAC |
| Squad: | CC16 |
| Call sign: | VEN1 |
| Shift hours: | 2000-0600 hours |
| Days off: | Wednesday/Thursday/Friday |

Witness officer; provided an audio recorded interview

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

**Officer James Rybacki, P# 14907**
Date of hire:                    03-13-14
Area of assignment:              CCAC
Squad:                           CC15
Call sign:                       8M
Vehicle:                         10957
Shift hours:                     0600-1600 hours
Days off:                        Monday/Tuesday/Wednesday
Witness officer; provided an audio recorded interview

**Officer Michael Tran, P# 15221**
Date of hire:                    04-16-15
Area of assignment:              CCAC
Squad:                           CC15
Call sign:                       Linq1
Vehicle:                         10472
Shift hours:                     2000-0600 hours
Days off:                        Sunday/Monday/Tuesday
Witness officer; provided an audio recorded interview

**Civilians**

**Carolyn Becic**
DOB:
SSN:
Address:

Phone number:
Employer:                        St. Andrew Nativity School
Witness; provided a written statement and audio recorded interview

**Ronnie Guy**
DOB:
Work Address:
Cellular Number:
Work Number:
Employment:                      Venetian Hotel and Casino/Security
Work Hours:                      2230-0830
Days Off:                        Wednesday / Thursday / Friday
Witness; provided a written and audio recorded interview

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

Event: 170514-0228

**Peter Infantino**
DOB:
SSN:
Address:

Phone number:
Employer:            Venetian Hotel
Occupation:          Security Officer
Shift hours:         2230-0830
Days off:            Thursday/Friday/Saturday
Witness; provided a written statement and audio recorded interview

**Cody Kollar**
DOB:
SSN:
Address:

Phone number:
Employer:            Barclay
Occupation:          Credit Card Analyst
Shift hours:         1130-2000
Days off:            Sunday/Monday
Witness; provided a written statements and audio recorded interview

**Jonathan Peirce**
DOB:
Address:

Cellular Number:
Employment:          United States Forest Service
Work Hours:          0700-1730
Days Off:            Friday / Saturday / Sunday
Witness; provided an audio recorded interview

**Marcelino Vibas**
DOB:
SSN:
NV OLN:
Address:

Phone number:
Employer:            Venetian Security
Occupation:          Security Officer
Shift hours:         1030-0830 hours
Days off:            Tuesday/Wednesday/Thursday
Witness; provided a written statement and audio recorded interview

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

## XIII.   INVESTIGATION

Involved Officer

### Officer Kenneth Lopera

Per LVMPD Policy 6/002.04, Post Use of Force Procedures, an involved officer may provide a recorded statement to FIT investigators. If given, involved officer statements are taken at least 48 hours after the incident unless waived by the involved officer.

Lieutenant O'Brien contacted Officer Lopera on 05-15-17 at 0818 hours. Officer Lopera declined to give a FIT statement.

Witnesses

### Officer Ashley Lif

On 05-14-17, at approximately 0425 hours, Detective Jex conducted an audio recorded interview with Officer Lif at 3355 S. Las Vegas Boulevard. Also present for the interview was PPA representative Bryan Yant. Below is a summary of the interview; for complete details refer to the interview transcript.

Officer Lif and her partner, Officer Lopera were at a coffee shop inside the Venetian Hotel and were approached by Farmer who asked them for directions to a water fountain. Officer Lif stated Farmer was sweaty and stated to them that he was almost hit by a car out on Las Vegas Boulevard. Farmer then asked if the officers would escort him to valet. The officers agreed to escort Farmer to valet.

Officer Lif stated Farmer started to walk away from them and Officer Lopera told Farmer to come back and talk. Officer Lif stated she took Officer Lopera's coffee from him and sat their coffee on the ground. Officer Lopera and Farmer began to walk down an employee service hallway. Farmer then took off running and Officer Lopera began a foot pursuit with Farmer. The hallway was being cleaned by workers and was very slippery which caused Officer Lif to slip. After getting her footing, Officer Lif lost sight of Officer Lopera and Farmer and did not know what route they had taken.

Officer Lif worked her way outside and with the assistance of hotel security officers was able to locate Officer Lopera who, along with several other officers were taking Farmer into custody. Officer Lif also observed officers administering first aid to Farmer. Officer Lif did not know any of the circumstances as to why Officer Lopera had taken Farmer into custody.

### Peter Infantino

On 05-14-17, at approximately 0314 hours, Detective Leavitt conducted an audio recorded interview with Peter Infantino at the rear of the Venetian Hotel. Below is a summary of the interview; for complete details refer to the interview transcript.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

On 05-14-17, Peter Infantino was a security officer for the Venetian Hotel. He was assigned to work Mike 22 which is the employee entrance of the hotel. Infantino's responsibilities were to monitor employees who entered and exited the hotel on the east side of the property. Sometime around 1255 hours (05-13-17) an unknown black male exited the employee entrance, he was walking somewhat fast and moved up the road. A short time later a Metro officer exited and asked if he had seen anybody. Infantino pointed toward the unknown male, and the officer followed the male. Infantino also followed the male and the officer when he observed the unknown male reach for and put his hands on the tailgate of a white pickup truck. He believed the male was going to attempt to jump in the bed of the truck to get away from the Metro officer. The Metro officer tased the unknown black male who fought with the officer and refused to obey orders. Infantino attempted to help the officer and grabbed at the males arm, but was unable to assist. The male was so strong that he was unable to control him as he continued to fight. As soon as other officers arrived, he backed away and let them assist.

## Marcelino Vibas

On 05-14-17, at approximately 0310 hours, Detective Jex conducted an audio recorded interview with Marcelino Vibas at 3355 S. Las Vegas Boulevard. Below is a summary of the interview; for complete details refer to the interview transcript.

Vibas was employed by Venetian Hotel as a security guard and was on duty during the incident. He was dressed in a security uniform clearly identifying him as a security officer. Vibas observed another security officer and Officer Lopera chasing Farmer. Vibas followed to see what was going on. When Vibas arrived at the traffic light the security officer and Officer Lopera were taking Farmer into custody but did not see how Farmer got to the ground. Vibas stated Officer Lopera gave several verbal commands to Farmer to stop resisting and was struggling to get Farmer into custody and at one point Farmer was pushing away at the officers.

Vibas stated that he did not assist in taking Farmer into custody. Once Farmer was in custody, Vibas assisted in vehicle control around the scene.

## Ronnie Guy

On 05-14-17, at approximately 0312 hours, Detective Penny conducted an audio recorded interview with Guy at 3355 South Las Vegas Boulevard. The following is a summary of the interview; for complete details refer to the interview transcript.

Security Officer Guy was standing at a fixed post leading into the parking garage when he saw Officer Lopera in foot pursuit. Officer Lopera was chasing Farmer who was wearing a black t-shirt, jeans and black shoes. Farmer approached a white pickup truck and attempted to open the driver's door when Officer Lopera tased Farmer. Farmer immediately fell to the ground.

Officer Lopera told Farmer several times to lay on the ground and put his hands behind his back. Farmer said, "I will," but then made several attempts to get up, ignoring the verbal commands. Officer Lopera went to grab Farmer who physically resisted him. Officer Lopera

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

asked for help as security officers approached. Guy attempted to grab Farmer but was unsuccessful due to Farmer tucking his hands under his body.

As other patrol officers arrived, Guy stepped away and continued to watch. Guy saw Farmer get handcuffed, but did not see Farmer go unconscious. Guy's view was blocked by patrol cars, however when he moved positions he saw officer's giving Farmer CPR. Medical personnel arrived a short time later and took over CPR.

**Sergeant Travis Crumrine**

On 05-14-17, at approximately 0455 hours, Detective Leavitt conducted an audio recorded interview with Sergeant Crumrine at the rear of the Venetian Hotel. Also present for the interview was PMSA Attorney Roberts and PMSA Representative McKenzie. Below is a summary of the interview; for complete details refer to the interview transcript.

Sergeant Crumrine was assigned to a utility squad that does mostly proactive work. On 05-14-17 his squad was assigned to work "Safe Strip." He had been in the area of Sands Ave. and Koval Ln. when he heard radio traffic from one of his officers assigned to the Venetian. He could not understand what the traffic was reference to, but decided to go to the back of the Venetian Hotel. When he neared the road that goes into the employee only area and loading dock he observed Officer Lopera on the ground wrestling with Farmer. When he exited his vehicle he recognized that Officer Lopera had Farmer in a back-lying LVNR. He attempted to place Farmer in handcuffs but was unsuccessful. He was only able to get one hand in a handcuff as Farmer was still fighting. He told Farmer to "Stop resisting" as Officer Lopera began to roll to the side. Other officers arrived and assisted in taking Farmer into custody. Officers sat Farmer up and attempted to give care by doing a swat to the back (a palm reviving technique which is taught after an LVNR).

**Officer Michael Tran**

On 05-14-17, at approximately 0434 hours, Detective Leavitt conducted an audio recorded interview with Officer Tran at the rear of the Venetian Hotel. Also present for the interview was PPA Attorney John Aldrich. Below is a summary of the interview; for complete details refer to the interview transcript.

Officer Tran was assigned a special detail to patrol the hotel properties. He was headed to the Linq when he heard a code red on the radio from the Venetian property. He drove northbound on a street to the rear of the hotel properties that took him to the back of the Venetian. He wasn't sure where to go due to not being able to discern a location on the radio. When he arrived to the rear of the Venetian and observed an LVMPD vehicle in the street and an officer in a green uniform with a suspect on the ground. When he exited his vehicle and approached it appeared Officer Lopera had Farmer in a LVNR, and a handcuff on one hand. When he looked at Farmer, he appeared to be unconscious and he informed Officer Lopera of that and told Officer Lopera to loosen up on the hold. When Officer Lopera loosened up on the LVNR, Farmer was able to be placed in handcuffs. Farmer appeared to be unresponsive and he was unable to find a pulse. Medical was requested and Officer Amburgey began CPR.

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
## FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

### Officer James Rybacki

On 05-14-17, at approximately 0441 hours, Detective Jex conducted an audio recorded interview with Officer Rybacki at 3355 S. Las Vegas Boulevard. Also present for the interview was PPA representative Bryan Yant. Below is a summary of the interview; for complete details refer to the interview transcript.

Officer Rybacki heard a broadcast request for a Code Red for the officers working the inside of the Venetian Hotel and went en route to the back valet area of the Venetian. Officer Rybacki stated he arrived and observed Farmer on the ground and unconscious. He stated he and a couple of other officers around Farmer could not tell if Farmer was breathing. Officer Rybacki stated that someone should check to see if Farmer was breathing. Officer Rybacki stated someone indicated that Farmer was breathing but it was very shallow.

Officers checked for a pulse but were unable to find one. The officers laid Farmer on his back and requested medical to expedite. Officer Rybacki believed Officer Amburgey began chest compressions on Farmer and continued until medical personnel arrived.

### Officer Michael Amburgey

On 05-14-17, at approximately 0504 hours, Detective Patton conducted an audio recorded interview with Officer Amburgey inside his unmarked LVMPD vehicle near the parking garage of Sunrise Hospital. Below is a summary of the interview; for complete details refer to the interview transcript.

Officer Amburgey was riding with his trainee, Officer Von Tagen, in the area of Las Vegas Boulevard and Bellagio Drive when Officer Lopera requested a code red over the radio. Officers Amburgey and Von Tagen were dispatched to assist Officer Lopera near the back of the Venetian Hotel.

Upon their arrival, Officer Amburgey observed Farmer on the ground and handcuffed. Officer Amburgey approached Farmer and rolled him on his side. Officer Amburgey continued to check Farmer to ensure he was still breathing. Officer Amburgey conducted a pat down on Farmer and removed Farmer's wallet from his back right pocket.

A short time later Officer Amburgey noticed Farmer was not breathing and requested the handcuffs be removed from Farmer so he could perform CPR. Officer Amburgey performed CPR on Farmer for a couple of minutes before being relieved by responding medical personnel.

Officers Amburgey and Von Tagen followed Medic West Unit 791 to Sunrise hospital. Officers Amburgey and Von Tagen were present when the doctor pronounced Farmer deceased and stayed with Farmer's body until relieved by Detective Patton.

Officer Amburgey did not witness the incident between Officer Lopera and Farmer. Officer Amburgey stated he did not witness any statements made by Farmer.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

## Carolyn Becic

On 05-14-17, at approximately 1100 hours, Detective Leavitt conducted an audio recorded interview with Carolyn Becic at 1405 Vegas Valley. Below is a summary of the interview; for complete details refer to the interview transcript.

Carolyn Becic was in Las Vegas visiting her stepdaughter and her boyfriend. They had been on Las Vegas Boulevard sightseeing and then went to the Venetian Hotel's ride share pick up location for an Uber. The group had been drinking during the night and she had approximately three beers over a period of several hours. The location of the pick-up spot gave her a bird's eye view of the street below. She heard a male yelling, looked down and observed Farmer on the ground with an officer standing above him. She stated the officer Tased Farmer who was on the ground at least twenty times. She immediately told her husband to record the incident with his phone, however his phone did not have enough memory.

When more officers arrived Farmer was not moving and the officers did nothing. She eventually observed them doing chest compressions on Farmer for at least ten minutes and they never used paddles. An ambulance arrived when they finished doing their chest compressions. She observed them place Farmer in the back of a van and not take him to the ambulance.

## Erik Hopkins

On 05-14-17, at approximately 1100 hours, Detective Jex conducted an audio recorded interview with Erik Hopkins at 1405 Vegas Valley Boulevard, building 22, apartment 209. Below is a summary of the interview; for complete details refer to the interview transcript.

Hopkins stated he was visiting from Portland, Oregon and was with his family at the Venetian walking to the valet area to be picked up by Uber. Hopkins heard yelling coming from below and went to the railing to see what was going on. Hopkins stated he observed one or two people trying to hold Farmer to the ground. He identified them as security officers. Hopkins stated he could hear the sound of a Taser making the snapping sound and could see the flash.

Hopkins stated he had his older daughter with him and she became distressed watching what was going on so they stepped away from the railing. Approximately two minutes later, Hopkins stated he again went to the railing and observed Officer Lopera who had the Taser move away from the other officers and Farmer. Officers then rolled Farmer over and began to do chest compressions on him. The officers continued chest compressions until an ambulance arrived and transported him.

## Witness #1

On 05-14-17, at approximately 1124 hours, Detective Jex conducted an audio recorded interview with Witness #1 (W1) at 1405 Vegas Valley Boulevard, building 22, apartment 209. Below is a summary of the interview; for complete details refer to the interview transcript.

W1 stated she was with her family at the Venetian and was walking to the valet area to catch an Uber ride. They were walking on the second floor area of the parking garage and heard yelling below. W1 looked over the railing and observed Officer Lopera chasing Farmer. The officer was yelling, "Stop, get on the ground." W1 stated Farmer was not following orders from the officer. W1 stated Officer Lopera had his Taser out but she did not see Farmer go to the ground but observed Officer Lopera and Farmer begin to struggle. W1 stated the scene upset her so she stepped away and could not watch. W1 stated her step-father, Erik Hopkins, stepped away with her. While they were away from the railing, W1 stated she heard the Taser sounds four or five times.

After a few minutes W1 stepped back to the railing and observed Officer Lopera pin Farmer to the ground. W1 described the officer was behind the subject and his arms were around him, "almost like spooning." W1 was unsure if the subject was in handcuffs or not.

A short time later W1 observed officers doing chest compressions on Farmer until and ambulance arrived. W1 described the officer that was holding the subject was wearing a green uniform and other officers arrived wearing the same uniform and she did not observe any officer use force against the subject.

**Cody Kollar**

On 05-14-17, at approximately 1132 hours, Detective Leavitt conducted an audio recorded interview with Cody Kollar at 1405 Vegas Valley. Below is a summary of the interview; for complete details refer to the interview transcript.

Kollar went to the Las Vegas Strip with his girlfriend and her parents to sightsee. The group had spent about four hours at various locations on Las Vegas Boulevard and had been drinking, however he did not believe anybody in the group was very impaired. When they prepared to go home they went to the Venetian Hotel ride share pick up location. The ride share pick up location is a second floor bridge located between Las Vegas Boulevard and the back side of the Venetian Hotel.

Kollar heard yelling and looked down from his location toward the back of the hotel driveway. He heard Officer Lopera telling Farmer to "Stop." Farmer appeared to be running from Officer Lopera. Farmer was not responding and was fighting the officer, when Kollar heard the sound of a Taser. He believed he heard the Taser used approximately three to four times due to the "pop" sound a Taser makes. Farmer went to the ground and Officer Lopera went to the ground with him. It appeared to Kollar the Officer Lopera was trying to hold Farmer until more help could arrive. There were other people around and Kollar believed they were hotel security. Once other police officers arrived they took Farmer into custody. When Kollar observed the officers doing chest compressions on the Farmer he was concerned at how much time had passed since they had taken him into custody. Kollar did not believe that Officer Lopera's actions were excessive when he took Farmer into custody.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

**Jonathan Pierce**

On 05-16-17, at approximately 18:30 hours, Detective Penny conducted an audio recorded interview with Pierce via telephone. The following is a summary of the interview; for complete details refer to the interview transcript.

Pierce was stopped in traffic as he approached the parking garage to the Venetian. His friend, JoAnn, was in the passenger seat and drew his attention to Officer Lopera running towards his truck on the rear passenger side. Pierce then noticed Farmer near the rear driver's side of his truck who Pierce believed Officer Lopera was chasing.

Officer Lopera told Farmer to "Stop" and "I'm going to tase you." Pierce saw Officer Lopera tase Farmer, who fell near the rear tire of Pierce's truck. Pierce saw and heard Officer Lopera tase Farmer several times. During this time, Farmer was not complying and appeared to be trying to get away. Officer Lopera and Farmer moved away from Pierce's truck and Pierce began to drive away.

As Pierce drove away, he continued to watch Officer Lopera and Farmer in his mirror. Farmer was on the ground and Officer Lopera "mounted" Farmer and aggressively stuck Farmer in the face. Prior to pulling into the garage, Pierce saw that an officer had Farmer in a rear naked choke. Pierce was unsure if Officer Lopera was the officer who was applying the rear naked choke but believed it was.

Pierce stated Farmer did not attempt to open the tail gate of his truck or get into the truck bed. Pierce also stated Farmer did not attempt to open his driver's door, however Pierce said Farmer's erratic behavior made him nervous so he locked his doors prior to Farmer being tased by Officer Lopera.

## XIV.   TIMELINE

The below timeline is a reconstruction of events which transpired on Sunday 05-14-17 in relation to the in-custody death that occurred at 3355 S. Las Vegas Blvd.

| Time (hours) | Description of Event/Action | Source |
|---|---|---|
| 0056:22 | Officer Lopera initiated the event and asked for a Code Red. | Computer Aided Dispatch (CAD) |
| 0056:39 | Other officers were assigned to the call. | CAD |
| 0058:45 | Farmer was taken into custody. Medical was requested. | CAD |
| 0059:10 | Officers broadcast Farmer was tased. | CAD |

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
# FORCE INVESTIGATION TEAM REPORT
**CONTINUATION**

**Event: 170514-0228**

## XV.   FORENSICS REQUESTS/RESULTS

**Officer Lopera's ECD Examination**

The following report was completed by Officer Rinella on 05-31-17. Officer Rinella is assigned to the Organization Development Bureau and is the ECD Coordinator for the Las Vegas Metropolitan Police Department. The report details the date, time and duration of each ECD cycle from Officer Lopera's ECD during the event. It was determined Officer Lopera cycled his ECD seven times during this incident for a total of 39 seconds.

**Officer Conducting Download: Last Name:** Rinella        **First Name:** Nicola

**PN:** 9214

**Today's Date:** 5/31/2017                                **Time:** 0945 hours

**Officer Involved: Last Name:** Lopera        **First Name:** Kenneth        **PN:** 14610

**Section:** CCAC-CC16

**Supervisor: Last Name:** Crumrine        **First Name:** Travis        **PN:** 8881

**Date Officer Attended A.O.S.T.:** 12/13/2016

**ECD Serial Number:** X12002RP4

**Holster – External Wearing (Yes / No):** UNK

**Broken Areas:** N/A

**ECD Camera Serial Number:** N/A

**Worn Gasket: (Yes / No):** No

**Worn Battery: (Yes / No):** No

**Loose in Device: (Yes / No):** No

**Event Number:** 170514-0228

**Type of Deployment:** Probe and Touch

**Number of Cycles Recorded (#):** 7

**Duration of Cycles Recorded:** 39

**Line Number of Firings (#):** 714-720

**Device Returned to Field Use (Yes / No):** No

**Description of Event:** FIT investigation currently ongoing.

**Download Notes:** The following information was recovered from the above X26P TASER; Line 713 shows the device was armed at 00:54:10 hours on May, 14th, 2017. Line 714 shows the device trigger was pulled at 00:54:12 hours on May, 14th, 2017 for a duration of 5 seconds. Line 715 shows the device trigger was pulled at 00:54:21 hours on May, 14th, 2017 for a duration of 5 seconds. Line 716 shows the device trigger was pulled at 00:54:31 hours on May, 14th, 2017 for a duration of 5 seconds. Line 717 shows the device trigger was pulled at 00:54:37 hours on May, 14th, 2017 for a duration of 5 seconds. Line 718 shows the device trigger was pulled at 00:54:46 hours on May, 14th, 2017 for a duration of 5 seconds. Line 719 shows the device trigger was pulled at 00:54:51 hours on May, 14th, 2017 for a duration of 5 seconds. Line 720 shows the device trigger was pulled at 00:54:59 hours on May, 14th, 2017 for a duration of 5 seconds. Line 721 shows the device was placed into safe mode at 00:55:10 hours on May, 14th, 2017 for a total event duration of 60 seconds. Upon examining the pulse logs for the device it appears a circuit was completed on Line 714-717. During the trigger pulls for Line 718-720, the completed circuit appear to be intermittent. A copy of the event and pulse logs are attached for examination.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

**Farmer's Cellular Phone**

On 05-23-17 at approximately 0900 hours, Detective Jex delivered Farmer's 'Alcatel' cellular phone IMEI 014650003820194 to Detective Jerry Saba #400793 of the Los Angeles County Sheriff's Office for analysis. No significant evidentiary data was obtained as a result of the analysis.

## XVI.   USE OF FORCE

The following is taken from the LVMPD Policy Manual for determining Objectively Reasonable Force:

*"The United States Supreme Court decisions and interpretations of the Fourth Amendment of the United States Constitution a police officer may only use such force as is 'objectively reasonable' under all of the circumstances. The standard that courts will use to examine whether a use of force is constitutional was first set forth in* Graham v. Connor, *490 U.S. 386 (1989) and expanded by subsequent court cases. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. The reasonableness must account for the fact that officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.*

*The reasonableness inquiry in reviewing use of force is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them. The officer's perception will be a consideration, along with other objective factors that may affect the reasonableness of the force. These factors may include but are not limited to:*

1. *The severity of the crime(s) at issue;*
2. *Whether the subject poses an immediate threat to the safety of the officer(s) or others;*
3. *Whether the subject is actively resisting arrest or attempting to evade the arrest by flight;*
4. *The influence of drugs/alcohol or the mental capacity of the subject;*
5. *The time available to an officer to make a decision;*
6. *The availability of officers/resources to de-escalate the situation;*
7. *The proximity or access of weapons to the subject;*
8. *The environmental factors and/or other exigent circumstances.*

*The officer will use a level of force that is necessary and within the range of 'objectively reasonable' options. When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option will de-escalate the situation and bring it under control in a safe and prudent manner. Reasonable and sound judgment will dictate the force option to be employed. Therefore, the department examines all uses of force from an objective standard rather than a subjective standard."*

The following is taken from the LVMPD Policy Manual for levels of resistance:

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

**Event: 170514-0228**

Each bold force option within the Levels of Control represents the highest level of force option available; however, other force options should be considered to help de-escalate the situation.



This graphic is intended as a general guideline for an officer. The subject(s) actions will dictate the Resistance Level and officers will make an "objectively reasonable" force option choice. Corrections officers will follow their established standard operating procedures in incidents involving use of force within a detention facility. (i.e. DSD SOP 09.11.01 Use of Force.)

In use of force incidents, the officer will transition to differing degrees or types of force, including attempts to de-escalate. Force situations are dynamic and require an officer to continually assess the subject's actions to ensure an objectively reasonable response. Officers shall modify their Level of Control in relation to the amount of resistance offered by a subject. (6/15, 11/15)■

LVMPD policy on levels of resistance states *"It is important for officers to bear in mind that there are many reasons a suspect may be resisting arrest or may be unresponsive. The person in question may not be capable of understanding the gravity of the situation. Officers must consider several factors when dealing with a non-compliant subject. A subject may be non-compliant due to a medical condition, mental, physical, or hearing impairment, language barrier, drug interaction or emotional crisis, and have no criminal intent. This may not make the subject any less dangerous but it may require a change in tactics that will be more effective while maintaining officer safety, once these circumstances are known to the officer.*

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## FORCE INVESTIGATION TEAM REPORT
CONTINUATION

Event: 170514-0228

1. *Compliant – A person contacted by an officer who acknowledges direction or lawful orders given and offers no passive/active, aggressive, or aggravated aggressive resistance.*
2. *Passive Resistance – The subject is not complying with an officer's commands and is uncooperative, but is taking only minimal physical action to prevent an officer from placing the subject in custody and taking control. Examples include: standing stationary and not moving upon lawful direction, falling limply and refusing to use their own power to move (becoming "dead weight"), holding onto a fixed object, or locking arms to another during a protest or demonstration.*
3. *Active Resistance – The subject's verbal or physical actions are intended to prevent an officer from placing the subject in custody and taking control, but are not directed at harming the officer. Examples include: waling or running away, breaking the officer's grip.*
4. *Aggressive Resistance – The subject displays the intent to harm the officer, themselves or another person and prevent an officer from placing the subject in custody and taking control. The aggression may manifest itself through a subject taking a fighting stance, punching, kicking, striking, attacks with weapons or other actions which present an imminent threat of physical harm to the officer or another.*
5. *Aggravated Aggressive Resistance – The subject's actions are likely to result in death or serious bodily harm to the officer, themselves or another. These action may include a firearm, use of blunt or bladed weapon, and extreme physical force.*

Due to Officer Lopera not providing a statement to FIT investigators and the limited scope of the walk-through, investigators relied on BWC footage, video surveillance and statements from other officers to answer the eight factors and determine whether Officer Lopera's use of force was objectively reasonable.

1. The severity of the crime(s) at issue;

    There was no crime committed at the onset of the incident or when Officer Lopera engaged in the foot pursuit. At the time of the first ECD deployment, Officer Lopera believed that Farmer may attempt to take the white pickup from the driver by force.

2. Whether the subject poses an immediate threat to the safety of the officer(s) or others;

    Farmer was not posing a threat to anyone at the onset of the incident. Officer Lopera believed Farmer was going to attempt to take a vehicle by force at the time of the initial Taser deployment. During the subsequent ECD cycles, Farmer was displaying passive and active resistance. Prior to and during the repeated strikes to Farmer's head, Farmer was displaying passive and active resistance. When Officer Lopera placed Farmer, in what he called, the "Rear Naked Choke" Farmer was displaying passive and active resistance.

3. Whether the subject is actively resisting or attempting to evade the arrest by flight;

    At the onset of the incident, Farmer was engaged in a consensual encounter with Officers Lopera and Lif and ran from the officers for an unknown reason. Once force

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

was used, Farmer used both passive and active resistance to keep from being taken into custody. It did not appear that Farmer used, or attempted to use force against Officer Lopera.

4. The influence of drugs/alcohol or the mental capacity of the subject;

   Due to the fact Officer Lopera did not provide a statement to investigators, this cannot be answered.

5. The time available to an officer to make a decision;

   Due to the fact Officer Lopera did not provide a statement to investigators, this cannot be answered.

6. The availability of officers/resources to de-escalate the situation;

   Due to the fact Officer Lopera did not provide a statement to investigators, this cannot be answered. Investigators do know that a request for assistance was not given over the radio until after Officer Lopera deployed his ECD.

7. The proximity or access of weapons to the subject;

   Due to the fact Officer Lopera did not provide a statement to investigators, this cannot be answered. There were no weapons located at the scene related to Farmer.

8. The environmental factors and/or other exigent circumstances.

   Due to the fact Officer Lopera did not provide a statement to investigators, this cannot be answered.

According to her statement, Officer Lif believed the contact between the officers and Farmer was a consensual encounter. Farmer had approached the officers and asked if they knew where a drinking fountain was located. After a short conversation with Officer Lopera, Farmer began walking away from the officers and towards a hallway which was marked with an illuminated exit sign. Farmer walked into a chain which was suspended by two yellow caution cones. Officer Lopera reached out with both arms in an attempt to grab Farmer. Farmer then turned around and ran down the hallway chased by Officer Lopera.

LVMPD policy states "*An officer may initiate a foot pursuit of any individual(s) the officer reasonably believes is about to engage in, is engaging in, or has engaged in criminal acitivity*." As Officer Lopera began to chase Farmer, he had no reasonable suspicion or probable cause to believe that Farmer was preparing to engage in, or was involved in any criminal conduct.

Officer Lopera continued to follow Farmer outside of the hotel and observed him near a white truck. Officer Lopera stated he believed Farmer attempted to gain access into the bed of a white truck and then began walking towards the driver's side door of the truck. Officer Lopera believed Farmer was going to attempt to take the vehicle by force and deployed his ECD. The

LAS VEGAS METROPOLITAN POLICE DEPARTMENT
**FORCE INVESTIGATION TEAM REPORT**
CONTINUATION

**Event: 170514-0228**

driver of the white truck stated he did not believe Farmer was going to attempt to take his truck. Officer Lopera pulled the trigger of his ECD. Both probes from Officer Lopera's ECD struck Farmer in the back resulting in neuromuscular incapacitation. Farmer fell to the ground and landed on his back.

Officer Lopera attempted several touch stuns while Farmer was on the ground. The touch stuns were to Farmer's chest, abdomen, back, legs and arms. This resulted in the intermittent cycles depicted in the Pulse Log Graph obtained by Officer Rinella during the download of Officer Lopera's ECD. As Officer Lopera was attempting the touch stuns, security officers with the Venetian Hotel and Casino grabbed Farmer's arms in an attempt to help get Farmer into custody.

Officer Lopera began issuing verbal commands to Farmer however the longest time between cycles of the ECD was six seconds. Officer Lopera told Farmer to get on his stomach several times but never gave Farmer a reasonable opportunity to comply with commands before cycling the ECD again. Officer Lopera's verbal commands also contradicted each other, telling Farmer "don't move" followed by a command to "Get on your stomach."

LVMPD policy states "*After the initial five second cycle, the officer will evaluate the need to apply an additional five second cycle after providing the subject a reasonable opportunity to comply. Policy further states after a subject has been exposed to three cycles the ECD shall be deemed ineffective and another force option will be considered.*"

After cycling the ECD seven times, Officer Lopera holstered his ECD. With Farmer lying on his stomach, Officer Lopera straddled Farmer's back and struck him approximately 10-12 times in the head while giving Farmer verbal commands to "Get on your stomach." According to LVMPD policy, officers should only use hand strikes when a subject is displaying aggressive or aggravated aggressive resistance. Aggressive and aggravated aggressive resistance is defined as that which has the potential to cause injury, substantial pain or death. As Officer Lepora began to strike him, Farmer appeared to be protecting his face from being hit. Farmer did not appear to be displaying aggressive resistance and was complying with the command to get on his stomach.

After striking Farmer approximately 10-12 in the head, Officer Lopera performed what he described as a "Rear Naked Choke." This technique is not approved by or taught by the LVMPD. The LVMPD employs the Lateral Vascular Neck Restraint (LVNR). Both the LVNR and the Rear Naked Choke are neck restraints which can render a subject unconscious by stopping blood flow to the brain by compressing the carotid arteries. When applied correctly, neither the LVNR nor the Rear Naked Choke will restrict a subject's airflow. Unconsciousness can occur in as little as seven seconds with both the LVNR and the Rear Naked Choke.

Officer Lopera held what he described as a "Rear Naked Choke" for a total of one minute and thirteen seconds. Officer Lopera held the "Rear Naked Choke" for forty four seconds after being told to let go by Officer Tran. LVMPD policy states that "*The LVNR will only be used in accordance with policy and department training.*"