# Exhibit S - LVMPD's use of force policy in effect on the date of the subject incident

# Las Vegas Metropolitan Police Department
## Partners with the Community (Department Manual 5-24-2017)

**6/002.00**      **USE OF FORCE POLICY**
   **I.**      **POLICY**
   **II.**      **DEFINITIONS**
   **III.**      **DETERMINING OBJECTIVELY REASONABLE FORCE**
   **IV.**      **MEDICAL ATTENTION**
   **V.**      **USE OF FORCE MODEL**

**6/002.01**      **USE OF FORCE PROCEDURE**
   **I.**      **USE OF FORCE TO AFFECT A DETENTION, AN ARREST OR TO CONDUCT A SEARCH**
   **II.**      **DUTY TO INTERVENE**
   **III.**      **LEVELS OF RESISTANCE (see Use of Force Model)**
   **IV.**      **LEVELS OF CONTROL (see Use of Force Model)**
   **V.**      **DE-ESCALATION**

**6/002.02**      **AUTHORIZED FORCE TOOLS, DESCRIPTION, REQUIREMENTS, USES AND CONSIDERATIONS**
   **I.**      **PRESENCE AND VERBAL COMMUNICATION**
   **II.**      **EMPTY HAND TACTICS**
   **III.**      **HANDCUFFS, FLEXIBLE HANDCUFFS, OR OTHER RESTRAINT DEVICES**
   **IV.**      **BATON/IMPACT WEAPONS**
   **V.**      **OLEORESIN CAPSICUM SPRAY**
   **VI.**      **LATERAL VASCULAR NECK RESTRAINT®**
   **VII.**      **ELECTRONIC CONTROL DEVICE**
   **VIII.**      **USE OF CANINE**
   **IX.**      **USE OF FORCE WITH A VEHICLE**
      **a.**   **Precision Intervention Technique**
      **b.**   **Blocking**
      **c.**   **Stationary Vehicle Immobilization Technique (Pinching)**
      **d.**   **Ramming**
   **X.**      **USE OF FORCE WITH A FIREARM**
      **a.**   **Low Lethality Shotgun**
      **b.**   **Handgun/Shotgun("OO" Buck & Slug)/Rifle**
      **c.**   **Deployment of Rifles**

**6/002.03**      **REPORTABLE USE OF FORCE**
   **I.**      **REPORTABLE FORCE INCIDENTS**
   **II.**      **INVESTIGATIONS AND REPORTING**

**I.      POLICY**

The Las Vegas Metropolitan Police Department is committed to protecting people, their property and rights, while providing the best in public safety and service. The proper use of force is essential for policing. There are circumstances where individuals will not comply with the law unless compelled or controlled by the use of force. Yet, officers must also remain mindful that they derive their authority from the community and that unreasonable force degrades the legitimacy of that authority. In a Use of Force Incident, the governmental interest must match the level of force and intrusion upon an individual's constitutional rights.

It is the policy of this department that officers hold the highest regard for the dignity and liberty of all persons, and place minimal reliance upon the use of force. The department respects the value of every human life and that the application of deadly force is a measure to be employed in the most extreme circumstances.

**II·      DEFINITIONS**

# *Las Vegas Metropolitan Police Department*
## *Partners with the Community (Department Manual 5-24-2017)*

1. **Approved Weapons** – Approved weapons are those weapons meeting department specifications for which officers receive proficiency and safety training. Prior to the use of any approved weapon option, the officer, when practical, will communicate to other officers and the subject that the use of the option is imminent, and clearly and audibly announce the same to all personnel in the immediate area unless exigent circumstances prevent this from occurring.

2. **Blocking** - Blocking is the positioning of a police vehicle in the path of an occupied subject vehicle where contact between the vehicles is not anticipated or is anticipated to be minimal. The intent of blocking is to prevent an avenue of escape by the safe placement of a police vehicle.

3. **Cuffing Under Power** - Cuffing under Power is a tactic where a secondary officer handcuffs a subject while the ECD (being deployed by the primary officer) is cycling and the subject is in Neuro-Muscular Incapacitation (NMI).

4. **Critical Incident Review Team** (CIRT) - A team put in place to conduct an administrative examination of uses of deadly force and other high-risk law enforcement operations, for the purpose of improving both individual and the agency's performance.

5. **Deadly Force** - Deadly force is that degree of force, which is likely to produce death or serious bodily injury. Deadly force can also result from a force option being improperly applied.  Deadly force is not limited to the use of firearms.

6. **Electronic Control Device (ECD)** - The ECD is a Neuro-Muscular Incapacitation (NMI) device that stimulates the motor neurons to contract disrupting communication from the brain to the muscles thereby causing temporary motor skill dysfunction.
   1. Spark Display – A non-contact demonstration of the ECD's ability to discharge electricity.
   2. Touch Stun - A secondary function of the ECD intended to administer pain to a subject by making direct contact with the body after the air cartridge has been expended or removed.
   3. Probe Mode - The primary function of the ECD where the ECD cartridge is deployed firing probes at the subject. The intent is that the subject be temporarily immobilized for the period of time the ECD is cycled.

7. **Fatal Detail** – A section of the Traffic Bureau who conducts or assists in investigations related to uses of force with a vehicle which may cause serious bodily injury, or result in death.

8. **Force Transitions** - The movement, escalation/de-escalation, from the application of one force type to another in conjunction with the "objectively reasonable" standard from Graham v. Connor, 490 U.S. 386 (1989). The officer must consider all the factors prior to using force and choose a reasonable option based on the "totality of the circumstances" present.

   The LVMPD Use of Force Policy applies to all commissioned officers, but the legal standard specific to incidents involving use of force within a pretrial detention facility are set forth in Kingsley v. Hendrickson, 576 U.S. (2015).

9. **Force Investigation Team** (FIT) - Conducts a criminal investigation to determine whether the use of deadly force was legally justified under criminal law. FIT also directs the investigation against a subject who either committed crimes which led to the use of deadly force or who has committed crimes against an officer.

10. **Imminent Threat** - "Imminent threat" refers to an impending violent act or resistance that an officer reasonably believes will occur, based on the totality of the circumstances.

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

11. **Intermediate Force** - A level of force that has the potential to cause injury or substantial pain, and is greater than Low-Level Force.

12. **Involved Officer** – A commissioned officer or supervisor, who participated in, directed or influenced the application of the use of force.

13. **Lateral Vascular Neck Restraint (LVNR®)** - LVNR® is a specific method of applying pressure to the side of a subject's neck to overcome resistance and allow safe control. This technique is used only in accordance with official departmental training and policy.

14. **Levels of Control** - Levels of Control are broad categories of influence and/or force in identifiable, escalating stages of intensity. They are identified as low level force, intermediate force, and deadly force.

15. **Low Level Force** - Low level force is a level of force or control that is neither likely nor intended to cause injury.

16. **Non-Deadly Force** - Non-deadly force is the level of force required to compel compliance, which is not intended to, and is not known to create a substantial risk of causing death or serious bodily harm.

17. **Officer-Involved Shooting** - An officer-involved shooting is an officer's discharge of a firearm at a person, with or without physical injury or the death of the person.

18. **Officer Witness Monitor** - An Officer Witness Monitor is a designated officer who is not involved in the use of deadly force. The responsibilities of the Officer Witness Monitor are to observe and prevent discussions regarding the incident among involved officer(s) and witness(s).

19. **Other Firearm Discharge** - An "other firearm discharge" is an unintentional discharge of a firearm that does not cause injury or death to a person or the intentional shooting at, injuring, or killing animals.

20. **Precision Intervention Technique** (PIT) - The PIT is a specific manner of intentional contact using a police vehicle against a fleeing vehicle to cause the fleeing vehicle to come to a stop; this technique is used only in accordance with official department training and policy.

21. **Public Safety Statement** (PSS) - The PSS is a series of questions to obtain information to determine if there is an immediate threat to public safety and must be taken in a timely manner. (An example would be shots fired by an officer or a subject in the direction where the public may be in immediate danger.) The supervisor must take appropriate action to ensure public safety, based on the information received from the PSS.

22. **Ramming** - The use of a vehicle to intentionally hit another vehicle, outside the approved PIT, blocking and stationary vehicle immobilization policies. Ramming is prohibited unless it is a deadly force situation which can be clearly articulated.

23. **Reasonable Force** - Reasonable force is an objective standard of force viewed from the perspective of a reasonable officer, without the benefit of 20/20 hindsight, and based on the totality of the circumstances presented at the moment the force is used. See section IV. "Determining Objectively Reasonable Force."

24. **Reportable Force** - Reportable force is any use of force which is required to overcome subject resistance to gain compliance that results in injury or complaint of injury, complaint of continuing pain, or any use of force greater than low level force (see Levels of Control) and any application of the LVNR®.

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

25. **Serious Bodily Injury** - A bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in a prolonged loss or impairment of the functioning of any bodily member or organ.

26. **Significant Force** - Any force which results in treatment at a medical facility due to injuries or alleged injuries caused by any officer. Examples include, but are not limited to: skeletal fractures; serious bodily injury or complaint of injury to a person's head or sternum area. All Significant Force is Reportable Force.

27. **Stationary Vehicle Immobilization Technique** (Pinching) - Is a containment tactic whose use is restricted for specialized units. It employs extremely low-speed, intentional vehicle contact with a subject vehicle. The purpose is to render a vehicle immobile by blocking it in place with police vehicles, so that subjects can be taken into custody.

28. **Use of Force Model** – A visual guide describing the appropriate levels of force authorized to be used by an officer in response to the level of resistance being displayed by a subject

29. **Witness Officer** – A commissioned officer or supervisor who did not participate in or directly influence the application of the use of force.

### III·  DETERMINING OBJECTIVELY REASONABLE FORCE

The United States Supreme Court decisions and interpretations of the Fourth Amendment of the United States Constitution a police officer may only use such force as is "objectively reasonable" under all of the circumstances. The standard that courts will use to examine whether a use of force is constitutional was first set forth in Graham v. Connor, 490 U.S. 386 (1989) and expanded by subsequent court cases. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. The reasonableness must account for the fact that officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving.

The reasonableness inquiry in reviewing use of force is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them.  The officer's perception will be a consideration, along with other objective factors that may affect the reasonableness of the force. These factors may include but are not limited to:
1. The severity of the crime(s) at issue;
2. Whether the subject poses an immediate threat to the safety of the officer(s) or others;
3. Whether the subject is actively resisting arrest or attempting to evade arrest by flight;
4. The influence of drugs/alcohol or the mental capacity of the subject;
5. The time available to an officer to make a decision;
6. The availability of officers/resources to de-escalate the situation;
7. The proximity or access of weapons to the subject;
8. The environmental factors and/or other exigent circumstances.

The officer will use a level of force that is necessary and within the range of "objectively reasonable" options. When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option will de-escalate the situation and bring it under control in a safe and prudent manner. Reasonable and sound judgment will dictate the force option to be employed. Therefore, the department examines all uses of force from an objective standard rather than a subjective standard.

The LVMPD Use of Force Policy applies to all commissioned officers, but the legal standard specific to incidents involving use of force within a pretrial detention facility are set forth in Kingsley v. Hendrickson, 576 U.S. (2015). Corrections officers will follow DSD Standard Operating Procedure(s) regarding the Use of Force as applicable (i.e. DSD SOP 09.11.01 Use of Force).

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

LVMPD allows certain classifications of civilian employees to carry a firearm and OC spray while on duty. Civilian employees have no power of arrest and therefore may only use force consist with Nevada law on self-defense or defense of others.

**IV·   MEDICAL ATTENTION**

Whenever an officer applies a Use of Force option upon a subject that results in a visible injury or complaint of injury, the officer will monitor the subject and immediately summon medical attention. When requesting medical attention, the officer will provide the nature of the injury for responding medical personnel.

Note: In some instances, the best course of action may be to transport the subject to the nearest medical facility. In these instances, the nature of injury, response time of medical personnel and proximity of the medical facility should be considered.

Medical attention will be summoned for the following Use of Force applications regardless of visible injury or complaint of injury:

1. Baton/Impact Weapons-Any strikes to the head, neck or groin area.
2. OC Spray- Direct exposure to the facial area.
3. LVNR®-When applied.
4. ECD-Probe strikes to the head, neck or groin area.
5. Use of Canine- All bites
6. Use of Force with a vehicle:
   a. Precision Intervention Technique- Over 40 MPH.
   b. Blocking- Contact with an occupied vehicle.
   c. Stationary Vehicle Immobilization Technique (Pinching)-All.
   d. Ramming-All.
7. Use of Force with a Firearm:
   a. Low Lethality Shotgun-All strikes.
   b. Handgun/Shotgun ("00" Buck & Slug)/Rifle-Any discharge.

**V·   USE OF FORCE MODEL**

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Each bold force option within the Levels of Control represents the highest level of force option available; however, other force options should be considered to help de-escalate the situation.



This graphic is intended as a general guideline for an officer. The subject(s) actions will dictate the Resistance Level and officers will make an "objectively reasonable" force option choice. Corrections officers will follow their established standard operating procedures in incidents involving use of force within a detention facility. (i.e. DSD SOP 09.11.01 Use of Force.)

In use of force incidents, the officer will transition to differing degrees or types of force, including attempts to de-escalate. Force situations are dynamic and require an officer to continually assess the subject's actions to ensure an objectively reasonable response. Officers shall modify their Level of Control in relation to the amount of resistance offered by a subject. (6/15, 11/15)■

# *Las Vegas Metropolitan Police Department*
## *Partners with the Community (Department Manual 5-24-2017)*

6/002.01      USE OF FORCE PROCEDURE

    I.      USE OF FORCE TO AFFECT A DETENTION, AN ARREST OR TO CONDUCT A SEARCH
    II.     DUTY TO INTERVENE
    III.    LEVELS OF RESISTANCE (see Use of Force Model)
    IV.    LEVELS OF CONTROL (see Use of Force Model)
    V.     DE-ESCALATION

## *I.* USE OF FORCE TO AFFECT A DETENTION, AN ARREST OR TO CONDUCT A SEARCH

    A.  Officers may use reasonable force:
        1.  To protect themselves;
        2.  To protect others;
        3.  To affect a lawful detention;
        4.  To affect a lawful arrest;
        5.  To conduct a lawful search.

    B.  If it is not already known by the subject to be detained, arrested, or searched, officers should, if reasonable, make clear their intent to detain, arrest or search the subject. When practicable, officers will identify themselves as a peace officer before using force.

## *II.* DUTY TO INTERVENE

Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, safely intercede to prevent the use of such excessive force. Officers shall promptly report these observations to a supervisor.

## *III.* LEVELS OF RESISTANCE (see Use of Force Model, 6/002.00)

It is important for officers to bear in mind that there are many reasons a suspect may be resisting arrest or may be unresponsive. The person in question may not be capable of understanding the gravity of the situation. Officers must consider several factors when dealing with a non-compliant subject. A subject may be non-compliant due to a medical condition, mental, physical, or hearing impairment, language barrier, drug interaction or emotional crisis, and have no criminal intent. This may not make the subject any less dangerous but it may require a change in tactics that will be more effective while maintaining officer safety, once these circumstances are known to the officer.

    1.  **Compliant** - A person contacted by an officer who acknowledges direction or lawful orders given and offers no passive/active, aggressive, or aggravated aggressive resistance.

    2.  **Passive Resistance** - The subject is not complying with an officer's commands and is uncooperative, but is taking only minimal physical action to prevent an officer from placing the subject in custody and taking control. Examples include: standing stationary and not moving upon lawful direction, falling limply and refusing to use their own power to move (becoming "dead weight"), holding onto a fixed object, or locking arms to another during a protest or demonstration.

    3.  **Active Resistance** - The subject's verbal or physical actions are intended to prevent an officer from placing the subject in custody and taking control, but are not directed at harming the officer. Examples include: walking or running away, breaking the officer's grip.

---------------------------- **SUBJECT'S INTENT TO HARM** -----------------------------

# Las Vegas Metropolitan Police Department
## Partners with the Community (Department Manual 5-24-2017)

4. **Aggressive Resistance** - The subject displays the intent to harm the officer, themselves or another person and prevent an officer from placing the subject in custody and taking control. The aggression may manifest itself through a subject taking a fighting stance, punching, kicking, striking, attacks with weapons or other actions which present an imminent threat of physical harm to the officer or another.

5. **Aggravated Aggressive Resistance** - The subject's actions are likely to result in death or serious bodily harm to the officer, themselves or another. These actions may include a firearm, use of blunt or bladed weapon, and extreme physical force.

**IV.   LEVELS OF CONTROL (see Use of Force Model, 6/002.00)**

When use of force is needed, officers will assess each incident to determine, based on policy, training and experience, which use of force option is believed to be objectively reasonable for the situation and bring it under control in a safe and prudent manner.

1. **Low Level Force** - Low level force is a level of force or control that is neither likely nor intended to cause injury. Examples are handcuffing a compliant arrestee for transport to detention facility or proning a suspect out on a high-risk vehicle stop.
This level of force includes:
   1. Officer Presence
   2. Verbal Communication
   3. Empty Hand Tactics (Takedowns)
   4. Handcuffs/Other LVMPD Approved Restraint Devices
   5. Baton (As escort tool)
   6. LVNR® (Level One – minimum restraint)
   7. Canine
   8. Pinching
   9. Blocking

2. **Intermediate Force** - A level of force that has the potential to cause injury or substantial pain, and is greater than Low-Level Force.

3. This level of force requires a Use of Force Report and includes:
   1. Empty Hand Tactics (Takedown with injury, Strikes, Kicks)
   2. Baton/Impact Weapons (Jabs, Strikes)
   3. LVNR® (Level 2 – medium restraint; and 3-maximum restraint)
   4. OC Spray
   5. ECD
   6. Low Lethality Shotgun (five yards or greater)
   7. Canine
   8. P.I.T. (Speeds 40mph or below)

4. **Deadly Force** - Deadly force is that degree of force, which is likely to produce death or serious bodily injury. Deadly force can also result from a force option being improperly applied. In order for the Use of Deadly Force to be justified, at least one of the <u>parameters</u> and all <u>elements</u> must be present. Examples include but are not limited to:
   1. Baton (Striking head, neck, sternum, spine, groin, or kidneys)
   2. Low Lethality Shotgun (Fired at a distance less than five yards)
   3. P.I.T. (More than 40mph)
   4. Ramming
   5. Firearm Use

## *Las Vegas Metropolitan Police Department*

### *Partners with the Community (Department Manual 5-24-2017)*

**Parameters for Use of Deadly Force**

An officer may use deadly force upon another person only when it is objectively reasonable to:

1. Protect themselves or others from what is reasonably believed to be an imminent threat of death or serious bodily injury;
2. Prevent the escape of a fleeing felon who the officer has probable cause to believe has committed a violent felony crime and is an imminent threat to human life if escape should occur. (See NRS 171.1455.) Officers will give some warning, if feasible, prior to the use of deadly force.

    Example: *"Police! Stop or I will shoot!"*

**Elements of Deadly Force**

1. **Ability** - Ability exists when a person has the means or capability to cause grave injury, serious bodily harm or death to an officer or another. This may include, but is not limited to the following: the subject's physical ability, size, age, strength, combative skill, level of aggression, and any weapons in their immediate control.
2. **Opportunity** - Opportunity exists when a person is in a position to effectively resist an officer's control or to use force or violence upon the officer or another. Examples which may affect opportunity include: relative distance to the officer or others, and physical barriers between the subject and the officer.
3. **Imminent Jeopardy** - Based upon all the facts and a circumstance confronting the officer, the officer reasonably believes the subject poses an imminent threat to the life of the officer(s) or other third parties and the officer must act immediately to prevent death or serious bodily injury.
4. **Preclusion** - Lesser alternatives have been reasonably considered and exhausted prior to the use of deadly force, to include disengagement. Deadly force in response to the subject's actions must remain reasonable while based upon the totality of the circumstances known to the officer at the time force was applied. **(Updated 06/15)**

## V.   DE-ESCALATION

Policing requires that at times an officer must exercise control of a violent or resisting subject to make an arrest, or to protect the officer, other officers, or members of the community from risk of imminent harm. Clearly, not every potential violent confrontation can be de-escalated, but officers do have the ability to impact the direction and the outcome of many situations they handle, based on their decision-making and the tactics they choose to employ.

When reasonable under the totality of circumstances, officers should gather information about the incident, assess the risks, assemble resources, attempt to slow momentum, and communicate and coordinate a response.  In their interaction with subjects, officers should use advisements, warnings, verbal persuasion, and other tactics and alternatives to higher levels of force. Officers should recognize that they may withdraw to a position that is tactically more secure or allows them greater distance in order to consider or deploy a greater variety of Force Options. Officers shall perform their work in a manner that avoids unduly jeopardizing their own safety or the safety of others through poor tactical decisions.

The prospect of a favorable outcome is often enhanced when supervisors become involved in the management of an overall response to potential violent encounters by coordinating resources and officers' tactical actions. Supervisors should possess a good knowledge of tactics and ensure that officers under their supervision perform to a standard. As a good practice, supervisors will acknowledge and respond to incidents in a timely manner where law enforcement use of force is probable. (4/14, 5/14) ∎

**6/002.02       AUTHORIZED FORCE TOOLS, DESCRIPTION, REQUIREMENTS, USES AND CONSIDERATIONS**

    **A.       Presence and Verbal Communication:**

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

| | |
|---|---|
| B. | Empty Hand Tactics: |
| C. | Handcuffs, flexible handcuffs, or other restraint devices: |
| D. | Baton/Impact Weapons: |
| E. | Oleoresin Capsicum Spray: |
| F. | Lateral Vascular Neck Restraint®: |
| G. | Electronic Control Device: |
| H. | Use of Canine |
| I. | Use of Force with a Vehicle |
| |    a. Precision Intervention Technique: |
| |    b. Blocking |
| |    c. Stationary Vehicle Immobilization Technique (Pinching) |
| |    d. Ramming |
| J. | Use of Force with a Firearm |
| |    a. Low Lethality Shotguns |
| |    b. Handgun/Shotgun ("OO" Buck & Slug)/Rifle |
| |    c. Deployment of Rifles |

With minimal exception, only department-approved weapons and training techniques shall be used. Uniformed officers will carry all issued tools and equipment required by the policies of this agency. Officers should note that less lethal tools may result in a lethal outcome, or be ineffective even when used appropriately.

Non-uniformed commissioned personnel the rank of lieutenant and below are required to carry at least one intermediate force option - baton, OC spray, or ECD – on their person when on-duty unless the requirement is waived, via completion of LVMPD Form 483, by their division commander.

Supervisors of commissioned personnel will ensure their subordinates complete their minimum required hours of training within the calendar year. Officers completing an academy during the calendar year are exempt from the minimum hour requirement. Defensive tactics proficiency testing will be required for the quarter following graduation from an academy.

If the employee fails to demonstrate proficiency, the employee and/or the employee's supervisor will contact the Organizational Development Bureau/DSD Training as soon as practicable for assistance in formulating a remedial training program.

The following are authorized force tools/restraints and techniques which may be used when objectively reasonable and otherwise permitted under this policy. Specialized units may have additional tools that are not covered in this policy.

    **I.  Presence and Verbal Communication:**
        Level of Control:
           Low Level Force

        Approved Use:
           Officers will, when and to the extent reasonably possible, attempt to use verbal communication skills to control subjects before resorting to physical control methods.

    **II.  Empty Hand Tactics:**
        Level of Control:
           Low Level Force – takedowns (not likely to cause injury), escorts
           Intermediate Level Force - takedown, strikes, kicking
           Deadly Force - takedown, strikes, kicking

        Certification/POST Requirements:
          1.  Entry level training is taught at the LVMPD police and corrections academies.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

2.  Annual Training - Two hours of Defensive Tactics training per quarter for lieutenants and below. NV POST requires officers must participate in 8 hours of Defensive Tactics training per year and demonstrate proficiency with each tactic/tool they are authorized to use.

Approved Use:
1.  These tactics will be used only in accordance with policy and department training.
2.  Officers should only use tactics appropriate to the situation which have been taught by department Defensive Tactics instructors.

Additional Considerations:

Summon medical attention on use of an Empty Hand Tactic and/or any incident where a subject is injured and/or complains of injury.

All strikes, punches, kicks, and/or any incident where a subject is injured or complains of injury is a reportable Use of Force Report in Blue Team.

**III. Handcuffs, flexible handcuffs, or other restraint devices:**
Level of Control:
Low Level Force

Description:
Officers will only use department-authorized or issued handcuffs.

Certification/POST Requirements:
1.  Entry level training is taught at the LVMPD police and corrections academies.
2.  Two hours of Defensive Tactics training per quarter for lieutenants and below. NV POST requires officers participate in 8 hours of Defensive Tactics training per year and demonstrate proficiency with each tactic/tool they are authorized to use.

Inspection Requirement:
Handcuffs will be maintained in clean and working order.

Approved Use:
1.  This tool will be used only in accordance with policy and department training.
2.  In an attempt to minimize the risk of injury to officers and others during arrest situations, officers will handcuff all persons arrested as soon as possible.
3.  During investigative detentions ("Terry Stops") where one or more of the following factors is present:  Note: Investigative detentions cannot exceed 60 minutes pursuant to NRS 171.123.
    a.  Articulable facts that the subject is physically uncooperative;
    b.  Articulable facts that a subject's actions at the scene may present physical danger to themselves or others if not restrained;
    c.  Reasonable possibility of flight based on the action of the subject;
    d.  Information that the subject is currently armed;
    e.  The stop closely follows a violent crime and the subject matches specific parts of a description;
    f.  When there are articulable facts that a crime of violence is about to occur;
    g.  Care and discretion should be used when the subject is at extremes of age (elderly and young children) or physically disabled, when handcuffing an individual during an investigative detention.
    h.  The authority to handcuff during investigatory stops continues for only as long as the circumstances above exist.
4.  Suicidal persons;
5.  During a search warrant service;

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

     a.  At a private residence as is reasonably necessary to execute the warrant in safety;

     b.  At a commercial business open to the public if it reasonably appears that handcuffing is necessary to protect an officer or others from physical harm. Circumstances which may justify initial handcuffing may change and eliminate continued justification;

6. Persons being transported to detoxification facilities;
7. By detention personnel moving in-custody subjects.

Disapproved Use:

1. If medical circumstances make it unreasonable to handcuff an arrestee, officers will refrain from handcuffing.
2. When responding to a security office where a subject has already been placed in handcuffs prior to arriving to the scene, officers shall not place LVMPD handcuffs on the subject until they have reasonable suspicion or probable cause based on their independent investigation and/or findings.

Tactical Considerations:

1. Officers will check handcuffs for tightness and double lock as soon as it is safe to do so prior to transport.
2. When a handcuffed subject first complains that handcuffs are too tight and/or are hurting the subject, the officer having custody of the handcuffed subject will, as soon as reasonably possible, check the handcuffs to make sure that they are not too tight. If they are too tight (per training), they will be loosened and double locked.

Additional Considerations:

Summon medical attention on use of Handcuffs or other restraint devices and/or any incident where a subject is injured and/or complains of injury.

Any incident where a subject is injured or complains of injury is a reportable Use of Force Report in Blue Team.

### D. Baton/Impact Weapons:

Level of Control:

Low Level Force - when used as an escort tool

Intermediate Force - when used for jabbing or striking

Deadly Force - striking subjects on the head, neck, sternum, spine, groin, or kidneys

Description:

1. A baton is a department-authorized expandable straight baton.
2. All commissioned police personnel the rank of lieutenant and below must obtain certification training and carry the baton when in an approved LVMPD uniform (see 4/107.00).
3. Plain clothes officers are required to carry OC spray, an ECD, or an expandable straight baton.

Certification/POST Requirements:

1. Entry level training is taught at the LVMPD police and corrections academies.
2. All officers, in the rank of lieutenant and below, shall complete the following requirements:
      a.  Receives initial baton training in the academy; or
      b.  Receives a minimum of four (4) hours of initial expandable straight baton training by an LVMPD certified Defensive Tactics Instructor.
3. Annual Training - Two hours of Defensive Tactics training per quarter for lieutenants and below. Nevada POST requires officers participate in 8 hours of Defensive Tactics training per year and demonstrate proficiency with each tactic/tool they are authorized to use.

Inspection Requirement:

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Batons will be maintained in clean and working order.

Deployment Requirement:
1. When deploying, an officer will, if practical, announce a warning to the subject and other officers of the intent to deploy a baton/impact weapon if the subject does not comply with your commands. Example, "Do what I am telling you to do, or I will strike you with my baton."
2. Officer shall give the subject a reasonable opportunity to voluntarily comply.

Approved Use:
1. This tool will be used only in accordance with policy and department training.
2. Blocking, jabbing, to apply control holds, or passive/active escort techniques (Example: stirring the pot).

Disapproved Use:
1. A subject who poses no imminent threat will not be struck with a baton or impact tool.
2. Officers are discouraged from using their firearm as an impact tool due to the possibility of an unintentional discharge.
3. During non-deadly force incidents, officers will use reasonable care to avoid striking subjects on the head, neck, sternum, spine, groin, or kidneys, as these strikes may constitute deadly force.
4. The use of instruments as a weapon for the purpose of striking or jabbing (i.e., flashlights, radio, etc.) other than department-authorized batons, is strongly discouraged and acceptable only when other authorized force responses have been exhausted and are either unavailable or ineffective.
5. Officers must be able to articulate a compelling need to use any other device or object other than an authorized baton as an impact weapon.

Additional Considerations:

Summon medical attention on all strikes with a Baton/Impact weapon and/or any incident where a subject is injured and/or complains of injury.

Notify a supervisor when a Baton/Impact weapon has been used.

Use of the baton for escort/control or "stirring the pot" is non-reportable.

All strikes or any incident where a subject is injured and/or complains of injury is a reportable Use of Force Report in Blue Team.

**V. Oleoresin Capsicum Spray:**

Level of Control:
    Intermediate Force

Description:
1. OC spray is a non-lethal agent which causes inflammation of the skin and mucus membranes of a subject and has a natural base as opposed to a chemical base.
2. All commissioned police personnel the rank of lieutenant and below must obtain certification training and carry OC spray when in an approved LVMPD uniform (see 4/107.00).
3. Plain clothes officers are required to carry OC spray, an ECD, or an expandable straight baton.

NOTE: SWAT and SERT personnel are exempt from these provisions during tactical operations, and will follow their own training and standard operations procedures (SOP).

Certification/POST Requirements:
1. Entry level training is taught at the LVMPD police and corrections academies.

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

2.  Annual Training - Two hours of Defensive Tactics training per quarter for lieutenants and below.
    Nevada POST requires officers participate in 8 hours of Defensive Tactics training per year and
    demonstrate proficiency with each tactic/tool they are authorized to use.

Inspection Requirement:
    OC spray expiration date and serviceability will be checked.

Deployment Requirement:
2.  When deploying, an officer will, if practical, announce a warning to the subject and other officers
    of the intent to deploy the OC spray if the subject does not comply with your commands.
    Example, *"Do what I am telling you to do, or I will spray you with pepper spray."*
3.  Officer shall give the subject a reasonable opportunity to voluntarily comply.

Approved Use:
1.  OC Spray will be used only in accordance with policy and department training.
2.  OC spray may be used when subject is engaging or displays the intent to engage in aggressive
    resistant behavior which may cause injury.
3.  OC spray may be used on vicious or aggressive animals when those animals interfere with the
    safety of the officers or citizens.
4.  OC spray may only be used in a protest or demonstration situation when authorized by an incident
    commander in response to imminent threat of harm.

Disapproved Use:
1.  Shall not be used on a subject inside a closed vehicle, unless an officer is attempting to secure an
    aggressive resistant subject in a patrol vehicle.  OC is not intended to be used to force extraction
    from an enclosed area, unless utilized in a detention facility. (See DSD SOP 09.11.01 Use of
    Force)
2.  Shall not be used on passive resistant protestors.
3.  Shall not be used other than as an aerosol/stream.
4.  Shall not be used on a handcuffed subject unless the subject is displaying Aggressive Resistance.

Tactical Considerations:
1.  Whenever possible, should be used upwind and relatively close to the subject.
2.  High capacity OC spray may be used as an intermediate level of control; however, officers will
    assess the effect the device will have on subjects in the general area due to the volume of agent
    dispersed.

Supervisory Consideration:
    Incident commander may authorize use in a protest or demonstration incident in response to imminent
threat of harm.

Additional Considerations:

    Summon medical attention on all use of OC Spray and/or any incident where a subject is injured
and/or complains of injury.

    Notify a supervisor when OC Spray has been used.

    Inform detention personnel the subject has been exposed to OC Spray and ensure they have been
screened by the detention facility medical staff.

    The use of OC Spray on a subject is a reportable Use of Force Report in Blue Team.

# *Las Vegas Metropolitan Police Department*

## *Partners with the Community (Department Manual 5-24-2017)*

Note: In addition to the above, when OC Spray is used by a civilian department member a patrol officer and supervisor will respond to the scene to assist with enforcement action.

**F. Lateral Vascular Neck Restraint®:**

There are three levels to applying the LVNR®. Level One begins with Low Level Force and may progress to the Intermediate based on the subject's actions.

Level of Control:
    Low Level Force --    LVNR® Level One (minimum restraint)

    Intermediate Force --      LVNR® Level Two (medium restraint)
                         LVNR® Level Three (maximum restraint)

Description:
    The LVNR® is a control technique in which the carotid arteries on the sides of the neck are compressed, restricting blood flow to the brain, causing the subject to pass out.

Certification/POST Requirements:
1. Entry Level Training is provided in the LVMPD police and corrections academies. No officer will use the LVNR® without first completing the 12-hour certification course provided in the academy.
2. Training will be provided by certified LVNR® instructors only.
3. All commissioned officers the rank of lieutenant and below will receive training in the LVNR®.
4. Officers certified in the LVNR® will be required to complete recertification training through quarterly defensive tactics.
    a. Any officer requesting an exemption from LVNR® training due to medical reasons must obtain a medical exemption from their physician.
    b. This exemption must be obtained immediately upon requesting the exemption and at the beginning of each calendar year thereafter, and be forwarded to the Director of Risk Management.

Approved Use:
1. This tool will be used only in accordance with policy and department training.
2. The LVNR® is a defensive tactic to quickly and safely stop active/aggressive resistance.

Disapproved Use:
1. Will not be used on subjects that have been exposed to OC spray or who are experiencing difficulty breathing.
2. Officers will not use any arm bar technique that involves a neck restraint.

Tactical Considerations:
1. When applying the LVNR®, only the amount of force necessary to bring the subject under control will be used.
2. Upon the subject being brought under control the LVNR® will be relaxed.

Additional Considerations:

Summon medical attention on all use of LVNR®, and/or any incident where a subject is injured and/or complains of injury.

Notify a supervisor when LVNR® has been attempted or used.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Inform detention personnel LVNR® has been applied on the subject and ensure they have been screened by the detention facility medical staff.

Any application of LVNR® on a subject is a reportable Use of Force Report in Blue Team.

**G·   Electronic Control Device:**

All commissioned personnel at the rank of lieutenant and below must obtain initial ECD certification training, and annual recertification. Sergeants and below, who are issued an ECD, must carry the device when in an approved LVMPD uniform (including overtime assignments; see 4/107.00), excluding NYE, 9/11 or any other Special Events as stated in the IAP for the Event.

Level of Control:
   Intermediate Force

Description:
   1.   The ECD is a Neuro-Muscular Incapacitation (NMI) device that disrupts the body's ability to communicate messages from the brain to the muscles thereby causing temporary NMI.
        a.   An air cartridge is a replaceable cartridge for the ECD which uses compressed nitrogen to fire two barbed probes on thin connecting wires, sending a high voltage/low current signal into a subject.
   2.   Use of the ECD Camera
        a.   Some ECDs are equipped with a video camera and audio recording device.
        b.   Any and all images, video, and/or audio generated by the ECD camera are the sole property of the Las Vegas Metropolitan Police Department. No video and/or audio may be downloaded unless obtained in the course of official duties. No material produced by the ECD cameras may be reproduced, uploaded to non-departmental websites, or otherwise disseminated without authorization from the Sheriff or his designee.
        c.   When an officer leaves Patrol, the ECD camera must be turned into the Supply Section.

Certification/POST Requirements:
   1.   Entry Level Training is taught at the LVMPD police and corrections academies.
   2.   Defensive Tactics instructors who have been certified as ECD instructors will be the only authorized persons to instruct on the ECD.
   3.   Officers authorized to use an ECD must successfully complete an initial six-hour certification training course, to include written and practical tests.
   4.   Once certified, all officers, regardless of issuance of an ECD, must annually attend two-hour recertification training taught by the AOST Staff.
   5.   If the employee fails to demonstrate proficiency at any time, the employee and/or the employee's supervisor will contact the Training Section for assistance in formulating a remedial training program.

Inspection Requirement:
   1.   Officers will use only authorized ECD equipment issued by the LVMPD. The ECD will be inspected for damage and cleanliness, and batteries and cartridges replaced by the officer when required. The ECD will be inspected and maintained in accordance with training protocols. When off duty, ECDs must be stored and secured in a climate-controlled area (i.e. locker), not in a vehicle.
   2.   Officers must conduct a spark check, outside the public view, at the beginning of shift to ensure the ECD will function properly. This spark check does not require completion of a Use of Force Report.
   3.   Uniformed officers will carry the ECD in a department approved holster. The holster will be carried on the duty belt, on the side opposite the duty firearm. Cross-draw position is optional. Plain clothes officers, who are issued an ECD, will carry the device on their weak side. Officers

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

have the option of carrying the standard DPM or the X-DPM which is an extended version, capable of carrying a spare ECD cartridge.

Deployment Requirement:
1.  When displaying an ECD, officers will give a warning, when practical, to the subject and other officers before firing the ECD.
    Example: *"Do what I am telling you to do or I will taze you and it will hurt."*
2.  Officer shall give the subject a reasonable opportunity to voluntarily comply.

    Note: Officers should be aware of the higher risk of sudden death which may exist in subjects under the influence of illicit drugs and/or exhibiting symptoms associated with excited delirium. In addition, once a subject has received an ECD application; officers should be aware of the potential for impaired breathing during restraint procedures. If the subject is thought to be experiencing impaired breathing, they should be placed on their side to reduce the risk of aspiration. Severely impaired breathing could result in death.

Approved Use:
1.  This tool will be used only in accordance with policy and department training.
2.  The ECD is an Intermediate Level of Control and may be used when there is an imminent threat of physical harm.

Disapproved Use:
1.  Officers are not authorized to draw or display the ECD except for training and inspection, unless the circumstances create a reasonable belief that use may be necessary.  The ECD will be handled in the same manner as a firearm and will be secured prior to entering any detention facility.
2.  The intentional use of more than one ECD simultaneously on the same subject is prohibited.
3.  The ECD will not be used:
    a·  When the officer knows a subject has come in contact with flammable liquids or is in a flammable atmosphere;
    b·  When the subject is in a position where a fall may result in serious bodily harm or death;
    c·  Punitively for purposes of coercion or in an unjustified manner;
    d·  To escort or jab individuals;
    e·  To awaken unconscious or intoxicated individuals;
    f·  When the subject is visibly pregnant, unless deadly force is the only other option;
    g·  When a subject displays solely Passive or Active Resistance (i.e. peaceful protest, refusal to stand, non-aggressive verbal resistance, etc.);
    h·  When a subject is fleeing as the sole justification for use of the ECD.
4.  The ECD should not be used in the following circumstances unless there are compelling reasons to do so which can be clearly articulated:
    a.  When the subject is in handcuffs or waist restraints;
    b.  When the subject is operating a motor vehicle;
    c.  When the subject is holding a firearm;
    d.  When the subject is at the extremes of age (elderly and young children) or physically disabled;
    e.  In a situation where deadly force is clearly justifiable unless another officer is present and capable of providing deadly force to protect the officers and/or others as necessary.
5.  Use of the ECD Camera:
    a.  The ECD camera will not be used as a simple recording device.
    b.  The ECD camera may only be used for official law enforcement business.  Any use of the ECD camera video or audio that is not in the performance of official duties is strictly prohibited.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Tactical Considerations:

1. There are three types of reportable ECD applications:
   a. Spark Display - A non-contact demonstration of the ECD's ability to discharge electricity.
   b. Touch Stun - A pain compliance application of the ECD without a cartridge intended to gain compliance of a subject or used to complete a circuit by making direct contact with the body after the air cartridge has been expended or removed.  Note: Use of the ECD as a pain-compliance tool is discouraged.
   c. Probe Mode - When the ECD cartridge is fired at a subject with the intent that the subject be temporarily immobilized for the period of time the ECD is cycled. Proper application will result in temporary immobilization of the subject and provide the officer a "window of opportunity" in which to take the subject safely into custody.

2. For a frontal shot, reasonable effort should be made to target lower center mass and avoid intentionally targeting the head, neck, groin and chest. It is recognized that the dynamics of each situation and officer safety may not permit the officer to limit the application of the ECD probes to a precise target area. Back shots are the preferred target area when practical.

3. When deploying an ECD, officers will:
   a. Initial use of the ECD shall be a standard five-second cycle, and then the officer will evaluate the need to apply a second five-second cycle after providing the subject a reasonable opportunity to comply. Each subsequent five-second cycle requires separate justification based on the objectively reasonable standard of Graham v. Connor, 490 U.S. 386 (1989). Once the subject has been exposed to three cycles, the ECD shall be deemed ineffective and another use of force option will be considered, unless exigent circumstances exist;
   b. Begin control and restraint procedures, including cuffing under power, as soon as is reasonably safe and practical to do so in order to minimize the total duration of ECD exposure(s). The device user, and those assisting the user, should avoid touching the probes, wires, and the areas between the probes to avoid accidental shock during the electrical discharge;
   c. The use of "touch stun" mode should only be used to supplement Probe Mode to complete the Neuro-Muscular Incapacitation (NMI) effect. The ECD "touch stun" mode requires the same level of justification as probe deployment.

Additional Considerations

Summon medical attention on all use of the ECD, and/or any incident where a subject is injured and/or complains of injury.

Notify a supervisor when ECD has been used (Spark Display, Probe or Touch Stun).

Inform detention personnel an ECD has been used on the subject (Probe or Touch Stun) and ensure they have been screened by the detention facility medical staff.

Any use of ECD on a subject is a reportable Use of Force Report in Blue Team with the only exception being a spark check out of public view. Note: Any accidental discharge of an ECD other than at a subject will be documented on an Officer's Report.

If the subject is thought to be experiencing impaired breathing, they should be placed on their side to reduce the risk of aspiration.

**I.      Use of Canine**

Level of Control:
   Low Level
   Intermediate Force

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Certification/POST Requirements:
1. All police service dogs will be initially certified.
2. Patrol dogs will be re-certified on a quarterly basis, while detector dogs will be re-certified on a semi-annual basis.

Inspection Requirement:
   Maintenance training with the Canine team should occur on a daily basis to ensure the training standards are maintained.

Deployment Requirement:
   Canine teams can be requested through Communications, 24 hours a day, and 7 days a week. A Canine team may need to be called out upon the approval of the section lieutenant or his designee.

Approved Use:
1. Canine is approved when there is probable cause to believe a subject has committed a crime or is a danger to themselves or others, and when the subject is actively evading efforts to take them into custody and the use of a canine would reduce risk to officers or the public. Canine will be used only in accordance with policy, department training, and Graham v. Connor, 490 U.S. 386 (1989).

Disapproved Use:
   Since the use of police dogs may inflame an already volatile situation, it is the policy of this department to place limitations on the use of police dogs in crowd control, civil disorders, or riot situations. In the event of such an occurrence, the canine teams may be dispatched to the problem area in a standby status. They would be utilized only when authorized by the field lieutenant in charge of the scene in a dire emergency. Such an emergency would be for crowd control in conjunction with an all-out police effort to rescue isolated officers or citizens in danger of being injured or killed.

Tactical Considerations:
1. In police operations, canine handlers are in charge and responsible for their dogs' deployment.
2. When it is believed a subject may be armed with a weapon likely to cause injury or death to the police service dog, the handler may exercise their discretion before deploying the dog.
3. Risk to Third Parties: In using police service dogs, the canine handler shall exercise reasonable care to avoid unnecessary risk of injury to persons who are not the subject of a search or apprehension.
4. When cover officers accompany canine handlers during searches, they should stay with the handler during a search and not move or run past the canine team unless directed to do so. Cover officers should watch for dangers, make citizen contacts and let canine handlers issue commands to a subject. The canine handlers will let the cover officers know when it is safe to apprehend a subject.

Additional Considerations:

Summon medical attention on all bites, and/or any incident where a subject is injured and/or complains of injury.

Notify a supervisor when a subject or person has been bitten by a police service dog.

Inform detention personnel the subject has been bitten by a police service dog and ensure they have been screened by the detention facility medical staff.

Any use of a Canine with bites on a subject is a reportable Use of Force Report in Blue Team. Note: Any injury caused by a police service dog to a person who was not the subject of the search will be documented in an Officer's Report.

*Las Vegas Metropolitan Police Department*
*Partners with the Community (Department Manual 5-24-2017)*

L.    **Use of Force with a vehicle:**
      **Blocking**
      **Stationary Vehicle Immobilization Technique (Pinching)**
      **Precision Intervention Technique (PIT)**
      **Ramming**

Level of Control:

Blocking & Pinching - Low Level Force

PIT-Intermediate Force - At speeds 40mph or below
    Deadly Force – In the following instances:
        1.   At speeds of more than 40mph;
        2.   When used on motorcycles;
        3.   When used on high center of gravity vehicles likely to roll over, such as vans, SUVs, and jeeps;
        4.   In circumstances creating a substantial risk of death or serious bodily injury.

Ramming - Deadly Force regardless of speed.

Description:

**Blocking-** is the positioning of a police vehicle in the path of an occupied subject vehicle where contact between the vehicles is not anticipated or is anticipated to be minimal.  In circumstances where the officer initiates contact it is a reportable use of force.  In the use of blocking, the potential for injuries and vehicle damages are low.  If the subject initiates contact, this will be investigated as an incident.

**Pinching-** is a pre-planned containment tactic that uses low-speed, intentional police vehicle contact with a subject's vehicle. This tactic is limited for use by specialized units with Bureau Commander's approval and training. The purpose is to render a vehicle immobile so that subjects can be taken into custody.
**PIT-** is a specific manner of intentional contact using a police vehicle against a fleeing vehicle to cause the fleeing vehicle to come to a stop.

**Ramming-** is the use of a police vehicle to intentionally hit another vehicle.

Certification/POST Requirements:

**Pinching:**
1.   Personnel assigned to an approved unit intending to use this technique for a preplanned apprehension, must re-certify each year by attending EVOC training.
2.   Approval necessary for specialized units to train in and use this technique must be given by the specialized unit's bureau commander, and the ODB commander.
3.   Training records for personnel certified in this technique will be maintained by the Training Section of ODB.

**PIT:**
1.   Entry level training is taught at the LVMPD police and corrections academies.
2.   Only commissioned officers who maintain current certification may use this stopping technique.

Deployment Requirement:

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

**Blocking:** The officer has reasonable belief the subject has committed a crime and may use the vehicle to flee.

**Pinching:** The officer has a reasonable belief the subject has committed a crime and has been attempting to evade, or has the potential to harm themselves or others.

**PIT:**
1. Prior to initiating a PIT, officers will use their emergency equipment (red and blue lights and sirens) and will give the operator of the subject vehicle a reasonable opportunity to stop.
2. Officers will broadcast through dispatch the intent to use PIT if circumstances permit. Otherwise, notification will be made immediately after.

**Ramming:** The officer has reasonable belief imminent threat of death or serious bodily injury exists. Notification will be made immediately after.

Approved Use:
These tactics will be used only in accordance with policy and department training.

**Blocking:** The intent of blocking is to prevent the escape of a subject by utilizing a police vehicle to block the path of the occupied subject vehicle when contact is not anticipated or probable.

**Pinching:** This pre-planned tactic is not approved for use by Patrol. May be used by specialized units who have gathered intelligence on a specific subject(s) requiring the application of the tactic based on the subjects potential for violence, disregard for public safety and/or to prevent a potential vehicle pursuit.

**PIT:** Circumstances warranting the use of PIT as deadly force are as follows:
1. Continued movement of the pursued vehicle would place others in danger of serious bodily injury or death; and/or
2. Apparent risk of harm, to other than the occupants of the pursued vehicle, is so great as to outweigh the risk of harm in making the forcible stop; and
3. Other means of apprehension have been considered and rejected as impractical, i.e., continue to follow, stop sticks, request the air unit.

**Ramming:** To be used when all other means of apprehension have been considered and rejected as impractical and/or an imminent threat of death or serious bodily injury exists.

Disapproved Use:

**Pinching:** Not approved for use by patrol.

**PIT:**
1. PIT will not be used unless the subject demonstrates their attempt to evade police and the elements necessary for an approved Vehicular Pursuit (6/014.00) are present (i.e., violent felony offense or subject presents a clear and immediate danger to the public).
2. Officers driving department truck or SUV-type vehicles are not authorized to use PIT.
(Exception: Patrol Marked Ford Explorer SUV)

**Ramming:** When the imminent threat of death or serious bodily injury to an officer or citizen does not exist.

Tactical Considerations:

Officers will consider the safety of the public and subjects before utilizing these tactics.

LVMPD 0021

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Environmental factors:
    a.   Areas with pedestrians;
    b.   Other vehicle traffic;
    c.   Parked vehicles;
    d.   Telephone/utility poles;
    e.   Bridges/overpasses;
    f.   Areas adjacent to paved roads with a large elevation change.

Subject factors:
    a.   Seriousness of the crime;
    b.   Number of subjects;
    c.   Subject(s) known to have or has access to firearms;
    d.   Potential of the subject to use the vehicle as a weapon;
    e.   Potential of a tactical disadvantage due to close proximity of the subject(s);
    f.   Potential of creating a crossfire situation;
    g.   Size/weight of the subject's vehicle compared to the police vehicle.

Supervisory Consideration:

**Blocking:** Utilized to prevent the escape of a subject in a vehicle.

**Pinching:**
1. Supervisors assigned to units authorized to use this technique will ensure all personnel operating police vehicles in a Stationary Vehicle Immobilization deployment are current on annual certifications.
2. Order discontinuation of the pinch when the necessity for apprehension is outweighed by the dangers of the pinch.
3. Ensure this is the best tactic and that other reasonable options have been considered.

**PIT:**
1. Immediately acknowledge the officer's notification over the radio, and assume responsibility for (either approving or disapproving) PIT;
2. Order discontinuation of the PIT when the necessity for apprehension is outweighed by the dangers of the PIT;
3. Consider use of other options.

**Ramming:** When the imminent threat of death or serious bodily injury to an officer or citizen does not exist.

Additional Considerations:

Summon medical attention on all incidents involving use of force with a vehicle and/or any incident where a subject is injured and/or complains of injury.

Notify a supervisor on any use of force with a vehicle.

Blocking with contact of a vehicle that is occupied is a reportable Use of Force Report in Blue Team.

Blocking with contact of an unoccupied vehicle, or a subject's vehicle unintentionally touches the patrol vehicle; the contact will be reported as a traffic incident, LVMPD 42, Vehicle Incident Report.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Pinching is a reportable Use of Force Report in Blue Team. In addition, any contact or collision between any vehicles will be documented by Traffic and reported as a traffic incident, LVMPD 42, Department Vehicle Incident Report.

PIT (successful uses, attempts and/or declared uses) is a reportable Use of Force Report in Blue Team. In addition a Pursuit Report in Blue Team is required when PIT was used during a pursuit.

Ramming regardless of speed is a reportable Use of Force Report in Blue Team.

**D.**    Use of Force with Firearm
Handgun/Shotgun (Low Lethality, "00" Buck & Slug)/Rifle

Level of Control:

Low Lethality Shotgun
Intermediate Force - when fired at a distance of five yards or greater.
Deadly Force - when fired at a distance less than five yards.

Handgun/Shotgun ("00" Buck & Slug)/Rifle
Deadly Force - Shots fired.

Description:
Low Lethality Shotgun - Low lethality shotguns are department-issued Remington 870 shotguns with the fore end and stock colored orange. The ammunition is a 12 gauge, drag stabilized, less lethal round.

Handgun/Shotgun ("00" Buck & Slug)/Rifle - See policy 5/208.02 Authorized Firearms and Associated Equipment.

NOTE: SERT and SWAT personnel are exempt from these provisions during tactical operations, and will follow their own training and standard operating procedures (SOP).

Certification/POST Requirements:
1.   Entry level training is taught at the LVMPD police and corrections academies;
2.   Low Lethality Shotgun - Re-qualify annually;
3.   Handgun/Shotgun ("00" Buck & Slug)/Rifle (see LVMPD 5/108.14, Firearms Training).

Inspection Requirement:
Ensure weapon is clean and functional at all times.

Low Lethality Shotgun
- Prior to each shift, ensure shotgun is only loaded with department-issued low lethality munitions.

Handgun/Shotgun ("00" Buck & Slug)/Rifle
- Ensure weapon is loaded with department duty ammunition and not mixed with practice ammunition;
- Officer is responsible to know how many rounds are loaded in the firearm and each magazine(s).

Deployment Requirement:

Low Lethality Shotgun

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

1. Prior to firing a low lethality shotgun, when feasible, the officer will announce a warning to the subject and other officers of the intent to deploy the low lethality shotgun if the subject does not comply with commands.
    Example: "Police!  Do what I am telling you to do, or I will shoot you with a bean bag, and it will hurt."
2. Officer shall give the subject a reasonable opportunity to voluntarily comply.
3. Two officers will be present if a low lethality shotgun is deployed.

Handgun/Shotgun ("00" Buck & Slug)/Rifle
1. Before using a firearm, officers will, whenever feasible, identify themselves and state their intention to shoot.
    Example:  "Police!  Stop or I'll shoot!"
2. Officer shall give the subject a reasonable opportunity to voluntarily comply.

Rifle Deployment
1. If there is a potential for deadly force an officer may deem an approved rifle is appropriate based on distance, available cover, and tactical situation presented. It is important for an officer to understand terminal ballistic capabilities and limitations of the rifle to be deployed.
    a. Airport Bureau officers may openly carry a rifle, slung with muzzle down, during any event where this method of carry could make the officer more effective in crime (or terrorism) prevention, and/or at the direction of the Airport Bureau Commander. No reporting procedure will be necessary in this instance.
2. It is incumbent on the officer to use discretion when deploying and displaying the rifle, and to only deploy the rifle when the situation dictates.  The officer must be aware of the number of rifles already deployed.
3. Officer(s) deploying rifle(s) will:
    a. Announce intent to deploy the rifle via the radio and receive an acknowledgment from dispatch;
    b. Whenever possible, deploy the rifle using a two-officer team consisting of a single rifle carrier supported by a cover officer to ensure security of the scene;
    c. Advise dispatch, via the radio, of deployment location and update dispatch and others assigned to the event whenever deployment location changes, thus providing situational awareness to all personnel on-scene of location of deployed rifle(s);
    d. Advise dispatch, via the radio, of whether or not deploying officer is accompanied by a cover officer.
4. Communications will re-broadcast that a rifle has been deployed and notify the area supervisor of the deployment.

Approved Use:

All firearms will be used only in accordance with policy and department training.

Low Lethality Shotgun
1. The low lethality shotgun should only be used against persons who are armed with a weapon that could cause serious injury or death to themselves or others, or when a subject poses an imminent threat to the safety of the officer or other persons. This includes, but is not limited to: an edged weapon, club, pipe, bottle, brick, etc.
2. Officers are cautioned that the target area for impact munitions substantially differs from a deadly force target area. Instead of aiming for center mass of the body, the low lethality shotgun is aimed at abdomen, legs or arms. The head, neck, and groin should be avoided.
3. It may be used as an option to deadly force only when circumstances allow the officer involved to bring an incident to a safe conclusion without unnecessary risk to the officers.

Handgun/Shotgun ("00" Buck & Slug)/Rifle

LVMPD 0024

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

1. Officers are to fire their weapons only:
   a. To stop and incapacitate a subject from completing a potentially deadly act;
   b. Protect themselves or others from what is reasonably believed to be an imminent threat of death or serious bodily injury;
   c. To prevent the escape of a fleeing felon who the officer has probable cause to believe has committed a violent felony crime and is an imminent threat to human life if escape should occur (see NRS 171.1455 and Tennessee v. Garner, 471 U.S. 1[1985]).

2. Humanely Euthanize Injured or Dangerous Animals - Officers may humanely euthanize an injured or dangerous animal under the following circumstances:
   a. In self-defense;
   b. To prevent serious harm to the officer or others;
   c. When the animal is so badly injured as to require humane relief from further suffering.

NOTE: A seriously wounded or injured animal may be destroyed only after attempts have been made to request assistance from the agency (Humane Society, animal control, game warden, etc.) responsible for the disposal of animals. The destruction of vicious animals involves the same rules set forth for self-defense and the defense and safety of others. (See policy 5/109.08 for an exception regarding the Humane Disposal of Animals at Resident Locations.)  Also, if the animal's owner is present, the owner will be allowed, at his option, to transport the animal to veterinary care.

Disapproved Use:

Low Lethality Shotgun
1. The low lethality shotgun will not be used in the following circumstances:
   a. Against persons who are holding a firearm unless there are compelling reasons to do so which can be clearly articulated;
   b. In a civil unrest situation unless authorized by a lieutenant or above, and each application must have a specific targeted individual who presents an imminent threat; and it must be reasonably assured that other individuals in the crowd who pose no threat of violence will not be struck by the munitions;
   c. When the subject is visibly pregnant, unless deadly force is the only other option.
2. The low lethality shotgun should not be used in the following circumstances unless there are compelling reasons to do so which can be clearly articulated:
   a. When the subject is at the extremes of age (elderly and young children) or physically disabled;
   b. When a subject is in an elevated position where a fall is likely to cause serious injury or death;
   c. When subject is handcuffed or otherwise restrained;
   d. As a breeching tool.

Handgun/Shotgun ("00" Buck & Slug)/Rifle
2. Officers are not authorized to draw or display their firearms, except for training at an approved firearms range, unless the circumstances create reasonable belief that it may be necessary to use the firearm in the performance of their duty:
   a. Airport Bureau officers may openly carry a rifle, slung with muzzle down, during any event where this method of carry could make the officer more effective in crime (or terrorism) prevention, and/or at the direction of the Airport Bureau Commander. No reporting procedure will be necessary in this instance.
3. Officers are not authorized to discharge their firearm:
   a. As warning shots;
   b. If it appears likely that an innocent person may be injured;

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

      c.   Either at or from a moving vehicle, unless it is absolutely necessary to do so to protect against imminent threat to the life of the officer or others. The imminent threat must be by means other than the vehicle, itself:

         1)  Officers will attempt to move out of the path of an oncoming vehicle, if possible, rather than discharge their firearms;

         2)  Officers will not intentionally place themselves in the path of an oncoming vehicle and attempt to disable the vehicle by discharging their firearms;

         *3)*  Officers will not discharge their firearms at a fleeing vehicle (a vehicle moving away from the officer) or its driver.

**Tactical Considerations:**

**Low Lethality Shotgun**

1. Officers should not fire the low lethality shotgun through barriers, such as glass or chain link fences, because the bag may tear and lead shot may be released.

**Handgun/Shotgun ("00" Buck & Slug)/Rifle**

*1.* An officer's decision to draw or exhibit a firearm should be based on the tactical situation at hand and the officer's reasonable belief there is a substantial risk that the situation will escalate to the point where deadly force may be justified. Unnecessarily drawing or exhibiting a firearm may limit an officer's alternatives in controlling a situation, create unnecessary anxiety on the part of citizens, and result in an unwarranted or accidental discharge of the firearm.

*2.* Officers should shoot at the "center mass" for maximum stopping effectiveness and minimal danger to innocent bystanders.

*3.* Flashlights mounted to firearms will be used only for the purposes authorized and intended and will not be used routinely in the place of a hand-held flashlight.

**Rifle**

1. It is the supervisor's responsibility to ensure proper deployment of rifles and address over-deployment.
2. Area supervisor will:
   a. Proceed immediately to the incident involving the rifle deployment and assume tactical control, when possible;
   b. Ensure that rifle deployment is appropriate for the incident;
   c. If rifle deployment is inappropriate for the incident, modify or cancel deployment.

**Additional Considerations:**

Summon medical attention on all use of a firearm and/or any incident where a subject is injured and/or complains of injury.

Notify communications of "Shots Fired!"

Notify Communications specifically of Low Lethality use or an Accidental or Negligent Discharge.

Notify a supervisor when a firearm has been used.

Any intentional use of a firearm on a subject is a reportable Use of Force Report in Blue Team.

Inform detention personnel a Low Lethality Shotgun has been used on the subject and ensure they have been screened by the detention facility medical staff, when applicable.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

Rifle Deployment

All rifle deployments are a reportable Use of Force Report in Blue Team. Exceptions to Blue Team reporting are: rifle deployments as part of training or a tactical drill exercise (i.e., MACTAC tests), SWAT personnel, Airport Bureau officers, and Corrections officers conducting a high risk transport.

When multiple officers deploy rifles during a single incident, the supervisor should designate one deploying officer to complete the Rifle Deployment Report in Blue Team, listing all officers that deployed a rifle as "involved officers" in the report. (9/15, 1/17)

**6/002.03   REPORTABLE USE OF FORCE**

      **I.**    **REPORTABLE FORCE INCIDENTS**
      **II.**   **INVESTIGATIONS AND REPORTING**

**I.**    **REPORTABLE FORCE INCIDENTS**

Reportable force incidents which require the completion of a Use of Force Report in Blue Team include, but are not limited to:
1. Empty Hand Tactics (Takedown with injury, Strikes, Kicks)
2. Baton/Impact Weapons (Jabs, Strikes)
3. OC Spray
4. ECD (spark display, touch stun and probe deployment)
5. LVNR® (Level 1, 2 and 3)
6. Canine (With bites)
7. Use of Force with a vehicle:
   a. Blocking (With officer initiated contact)
   b. Stationary Vehicle Immobilization Technique (Pinching - With contact between vehicles)
   c. P.I.T. (Used or attempted)
   d. Ramming
8. Use of Force with a Firearm
   a. Low Lethality Shotgun
   b. Handgun/Shotgun("00" Buck & Slug)/Rifle
      Deployment of Rifles (Excluding SWAT/SERT)

Note: In addition to the Use of Force Report other Blue Team reports may be required depending on the force application. (Firearm Discharge, Rifle Deployment and Vehicle Pursuit)

Supervisors will respond without necessary delay to all potential reportable uses of force.

**II.**    **INVESTIGATIONS AND REPORTING**

    A.   The department reviews or investigates all reportable use of force incidents to determine their justification, as well as to correct any identifiable training deficiencies. Officers involved in reportable use of force incidents will immediately notify their supervisor or, if unavailable, another on-duty supervisor, and complete the Use of Force Report in Blue Team prior to the end of shift (exceptions must be approved by a supervisor). The report should distinguish which force option was selected and why it was objectively reasonable.  Supervisors will respond to each use of force incident in which reportable force is used, conduct an investigation and assist with the completion of the use of force report. (NOTE: Acting supervisors are not authorized to complete this investigation). The report will be required by each officer involved in a use of force incident when reportable force is used. All Use of Force Reports in Blue Team will be completely coordinated through the officer's chain of command and entered into IA Pro within 30 calendar days of the event.  Internal Affairs will provide a monthly

# *Las Vegas Metropolitan Police Department*
## *Partners with the Community (Department Manual 5-24-2017)*

report to the appropriate Deputy Chief listing all Use of Force Reports which have exceeded the 30-day limitation.

B.  A Use of Force Report is not required when no injury and/or complaint of injury occurs as a result of:
1. Low Profile Pat Down/High Profile Pat Down/Arm Lock/Standing Search;
2. Routine Handcuffing;
3. Felony Prone Handcuffing (Front and Rear);
4. Felony Prone Search Felony Kneeling;
5. Baton Escort Technique;
6. Takedown;
7. Blocking without contact.

C.  The following Use of Force Options requires a Use of Force Report be completed by the involved officer.
1. Any use of force which is required to overcome subject resistance to gain compliance that results in injury, complaint of injury, or complaint of continuing pain;
2. Any takedown which causes injury or verbal complaint of injury;
3. Use of OC Spray;
4. Lateral Vascular Neck Restraint;
5. Use of an ECD or a Spark Display;
6. Baton Takedowns, Strikes and Jabs;
7. Empty Hand Strikes, Punches, and Kicks;
8. Use of a Low Lethality Shotgun (five yards or greater);
9. A citizen or person arrested complains that an injury has been inflicted as the result of the use of force; or
10. PIT (used, attempted, or declared).

D.  CIRT will complete the use of force report when deadly force is used (i.e. PIT over 40 MPH, or Low Lethality Shotgun less than five yards) or force which results in death.

E.  The following incidents require a Firearm Discharge Report.
1. Accidental Discharge of a firearm during a law enforcement operation.
2. A firearm discharge resulting in death or serious bodily injury;
3. A Non-Injury or Property Damage Intentional Discharge of a Firearm Incident (which includes an intentional discharge at anything other than a person, such as a dog)
4. When shots are fired outside the firearm's range, excluding off-duty situations such as hunting or participating in competitive shooting. When a firearm is discharged at a human being and/or an animal in self-defense or to humanely euthanize an animal (excluding resident areas), CIRT will complete the Firearm Discharge Report.
5. When a resident area officer discharges a firearm at an animal either in self-defense or to humanely euthanize the animal, the resident officer will complete the Firearm Discharge Report. (9/14, 06/15)■

**6/002.04       POST USE OF FORCE PROCEDURES**

The department reviews and/or investigates all reportable use of force incidents to determine their justification, as well as to correct any identifiable training deficiencies. Officers involved in reportable use of force or alleged use of force incidents will immediately notify their supervisor. If unavailable, the officer will notify another on-duty supervisor, and complete the Use of Force Report in Blue Team prior to the end of shift. Any exceptions to this must be approved by the supervisor. The report should include a detailed description on the level of force, tool and/or tactic used, to include its effectiveness or ineffectiveness. Each application of a reportable Use of Force Tool/Tactic must be separately justified and documented. Supervisor will complete a Citizen Contact for unfounded alleged use of force.

**III.       REPORTABLE FORCE INCIDENTS**

*Las Vegas Metropolitan Police Department*
*Partners with the Community (Department Manual 5-24-2017)*

Reportable force incidents which require the completion of a Use of Force Report in Blue Team include, but are not limited to:
1. Empty Hand Tactics (Takedown with injury, Strikes, Kicks)
2. Baton/Impact Weapons (Jabs, Strikes)
3. OC Spray
4. ECD
5. LVNR® (Level 1, 2 and 3)
6. K-9 (With bites)
7. Use of Force with a vehicle:
   a. Blocking (With intentional contact)
   b. Stationary Vehicle Immobilization Technique (Pinching - With contact between vehicles)
   c. P.I.T. (Used or attempted at speeds 40 MPH or below)
8. Low Lethality Shotgun-Discharge (5 yards or greater)

A Use of Force report is required by each officer involved in a use of force incident. Any civilian employee who uses force (empty hand, OC Spray and/or Firearm) is required to complete a Use of Force Report in Blue Team. Additional Blue Team reports may be required depending on the force application. (Firearm Discharge, Rifle Deployment (excluding SWAT/ SERT) and Vehicle Pursuit)
Note: In incidents where deadly force is used, CIRT will complete the appropriate reports.

A Firearm Discharge Report is required:
1. When shots are fired outside the firearm's range, excluding off-duty situations such as hunting or participating in competitive shooting. When a firearm is discharged at a human being and/or an animal in self-defense or to humanely euthanize an animal (excluding resident areas), CIRT will complete the Firearm Discharge Report.
2. When a resident area officer discharges a firearm at an animal either in self-defense or to humanely euthanize the animal, the resident officer will complete the Firearm Discharge Report.

A Use of Force Report is not required when no injury and/or complaint of injury occurs as a result of:
1. Low Profile Pat Down/High Profile Pat Down/Arm Lock/Standing Search;
2. Routine Handcuffing;
3. Felony Prone Handcuffing (Front and Rear);
4. Felony Prone Search Felony Kneeling;
5. Baton Escort Technique;
6. Takedown.

## IV.     USE OF FORCE INVESTIGATION

Supervisors will respond, without delay, to each use of force or alleged use of force incident in which reportable force is used, conduct an investigation and assist with the completion of the use of force report to include any Use of Force Report by a civilian employee. (NOTE: Acting supervisors are not authorized to complete Use of Force investigations).

## V.     INVESTIGATIVE RESPONSIBILITIES: Use of Non-Deadly Force

A. Non-Deadly Force requiring a Use of Force report but not resulting in death or serious bodily injury will be investigated by the officer's chain of command.

   Note: Acting supervisors are not authorized to complete this investigation. Supervisors involved in the use of force incident shall not investigate other involved officers; investigative duties will be relinquished to the next higher level in the officer's chain of command.

B. All reportable Uses of Force on a subject regardless of visible injury will be photographed and downloaded into Blue Team. If CSI responds and documents the injuries, or if for some reason the

# *Las Vegas Metropolitan Police Department*
## *Partners with the Community (Department Manual 5-24-2017)*

photos cannot be downloaded into Blue Team, articulate this in the report, to indicate where the photos can be located.

1. The Officer will:
   a. Request that Communications notify the respective immediate supervisor when a reportable non-deadly use of force occurs;
   b. Complete the Use of Force Report in Blue Team and any other required reports connected to the incident;
      1) Include a synopsis of the incident,
      2) Ensure the prongs of Graham v. Connor, 490 U.S. 386 (1989) are each addressed.
   c. Forwards the Use of Force Report and any other required reports to the investigating supervisor via Blue Team, sending a copy to their immediate supervisor.

   Additional Tool/Tactic Requirements:

   ECD
   - Handle the probes in the same manner as contaminated needles and sharps in accordance with department bio-hazard disposal procedures (see 5/110.10), and impound all probes, wires and cartridges as evidence. In cases of deadly force or in-custody death CSI will impound the probes and fired cartridges;
   - Provide the ECD to a supervisor for data and/or video download prior to the end of shift.
   Canine
   - Injuries caused by the police service dog to persons who were not the subject of the search will be documented in an Officer's Report, and will require a supervisor response.

Use of Force with a Vehicle
- PIT-Traffic officers will respond to assist with the traffic investigation.

  Note: Request CSI response to take photographs of the subject(s), the scene and officer(s) involved and collect any evidence related to the Use of Force;

- Blocking- Blocking with contact of an unoccupied vehicle or a subject's vehicle unintentionally touches the patrol vehicle; the contact will be reported as a traffic incident, LVMPD 42, Vehicle Incident Report.

- Pinching- Stationary Vehicle Immobilization Technique (Pinching) is a reportable Use of Force Report in Blue Team. In addition, any contact or collision between any vehicles will be documented by Traffic and reported as a traffic incident, LVMPD 42, Department Vehicle Incident Report.

  Note: Blocking, Pinching and PIT are planned enforcement techniques; an NHP 5, a State of Nevada accident report will not be required.

A supervisor will:
1. Ensure medical assistance has been requested when applicable;
2. Respond to the scene without unnecessary delay, if unable to respond, request an alternate supervisor at the same level or higher respond to the scene;
3. Document investigation in a Citizen Contact (CC) in Blue Team when alleged use of force is determined to be unfounded;
4. Ensure the level of force used is a use of non-deadly force;
5. Notify Communications and the area lieutenant or watch commander to ensure proper notifications are made;

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

6. Interview the subject, officer(s), medical personnel and witnesses who claim to have firsthand knowledge of the incident. Witness statements should be documented on a voluntary statement or recorded, and are obtained by an uninvolved party.

7. Ensure photographs are taken, and placed into Blue Team, of the subject(s), the scene and officer(s) involved and collect any evidence related to the Use of Force;

8. Check the surrounding area for any video surveillance; obtain a copy (mp4 format, if possible). If body camera video is available, refer to 5/210.01, Body Worn Cameras;

9. Viewing of Third Party Video Prior to Giving Statements:
   An officer shall be given the opportunity to review third party surveillance video when the video depicts the officer's actions during a reportable use of force incident. For the purpose of this policy, third party surveillance video is considered video recorded and made available by third party security systems, video captured from cells phones, tablets, etc., and/or video recorded by handheld cameras at CCDC, which we are in legal possession of and are able to legally view.
   a. The immediate supervisor (or investigating supervisor) will:
      1) Permit the officer to review only their own actions as depicted by the third party surveillance video. If multiple officers are shown on the third party surveillance video using force, it's necessary that each officer view only their own actions -  not the actions of the other officers - before doing his Use of Force report;
      2) Ensure the third party video is impounded as evidence and noted in BlueTeam.

10. Review all applicable reports in Blue Team to ensure accuracy and completeness.
    a. Document how a use of force has been determined to be justified and in adherence to procedure,
    b. Document any training deficiencies identified and how they were corrected,
    c. Document if misconduct is identified and how it has been addressed.

11. When an ECD has been used:
    a. Ensure the data record of the ECD and/or the video in which a reportable use of force incident occurs has been uploaded into Blue Team prior to the end of shift. (X26 uploads must be attached in either a .pdf or .rtf format);
    b. Verify the probes, wires and cartridges are properly impounded and arrange for replacement cartridges. Accidental discharges will not require impounding of the probes, wires and cartridges unless there has been an injury.
       1) Forward to the next supervisor in the involved officers' chain.

The Area Lieutenant/Watch Commander will:
a. Respond to the scene when significant force is used. If unable to respond, request an alternate supervisor at the same level respond to the scene;
b. Ensure interviews, photographs and reports are being completed;
c. Notify Internal Affairs Section Lieutenant if significant force is used (Examples include, but are not limited to: skeletal fractures; serious bodily injury or complaint of injury to a person's head or sternum area. All Significant Force is Reportable Force.);
d. Review the Use of Force Report and all attached documentation and evidence in Blue Team to ensure accuracy and completeness, then forward to the Bureau Commander.

The Bureau/Area Commander will:
a. Complete the Use of Force administrative review in Blue Team and forward to IAB within 30 days of date of incident.

VI.     **INVESTIGATIVE RESPONSIBILITIES: Use of Deadly Force or Force Involving Serious Bodily Injury**

It is the policy of this department to conduct a fair, impartial and thorough investigation of all uses of deadly force for the interest of the officer, the department and the community alike. The following procedures shall apply to all deadly force investigations:

## Las Vegas Metropolitan Police Department
### Partners with the Community (Department Manual 5-24-2017)

A.  **Primary Responsibilities in a Deadly Force Investigation**
1.  Patrol Investigations Detail: When available, Patrol Investigations Detail detectives will respond immediately to the scene, contact the Incident Commander for direction and provide assistance.
2.  Force Investigation Team (FIT):
    a.  FIT Response Criteria:
        1)  Any use of deadly force as described in LVMPD – Use of Force policy 6/002.0;
        2)  Officer Involved Shootings (fatal or non-fatal);
        3)  PIT over 40 MHP;
        4)  Ramming;
        5)  Low Lethal Shotgun fired at under 5 yards
        6)  In-custody death involving Patrol or Corrections officer(s);
        7)  In-custody death of an inmate housed at CCDC or medical facility;
        8)  Other Jurisdiction requests meeting FIT criteria.
    b.  The criminal investigation will seek to determine whether the use of deadly force was legally justified under criminal law. FIT also directs the investigation against a suspect who committed crimes such as robbery, homicide or any other crime immediately prior to the use of deadly force or who has committed crimes against an officer. The ranking FIT personnel at the scene shall be in overall charge of police activities which occur at the crime scene, and may request the assistance of additional investigative units if needed. FIT detectives shall arrest the suspect on applicable charges. If the involved officer declines to provide FIT with a voluntary statement, and they are the only witness to the incident, the officer will decide whether to arrest the suspect. If the involved officer decides to make an arrest, the officer will be responsible for completing the TCR/DOA in the field. The supervisor will arrange for transporting the suspect. Additionally, the involved officer will dictate an arrest report before the end of the officer's shift.
3.  Critical Incident Review Team (CIRT): Conducts non-criminal, administrative examinations of uses of deadly force or other high-risk police operations as directed by the Sheriff. The purpose of this review is to improve individual and agency performance through the evaluation of decision making, tactics used, supervision and the actual use of force. CIRT will then present conclusions to the Sheriff that may identify possible training needs (for the individual, squad, unit, section or department) and/or changes to policies and practices.
4.  Crime Scene Investigations Section (CSI): CSI responds to a deadly force incident to complete crime scene documentation. The ranking Crime Scene Investigations member shall be in charge of the collection, marking, recording, and processing of evidentiary material at the crime scene. Prior to commencing the crime scene investigation, the FIT Supervisor and ranking CSI Supervisor shall confer to determine the actions to be taken by those persons assigned to the scene, including which officers, detectives, and crime scene analysts shall be authorized to enter the crime scene perimeter.

B.  **Involved/Witness Officer(s)**
1.  When an officer intentionally discharges a firearm at a human being, uses deadly force, has an unintentional discharge of a firearm during a police operation, causes serious bodily injury or becomes aware of an in-custody death, the officer will:
    a.  Ensure life safety of others;
    b.  Ensure the scene is safe and secure;
    c.  Notify both Communications (via radio if on-duty) and a supervisor without delay;
        1)  If needed, will request medical assistance and provide information on injuries;
        2)  Include suspect description and location.
2.  In addition, off-duty officers or plain-clothes personnel will:
    a.  Be aware of the particular danger of a potential police-on-police confrontation when first-responding officers arrive to the scene;

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

    b.  Make certain they are readily identifiable as officers; Off-duty officers or plain-clothes personnel should display their badges and/or identification prominently and identify themselves frequently;

    c.  Inform Communications via radio (or if off-duty and no radio available, they should call 9-1-1) if they have taken action, are armed or are wearing plainclothes;

    d.  When confronted by first-responding officers, off-duty officers or plain-clothes personnel should be aware of and obey first-responding officers' verbal commands.

3.  In deadly force investigations, FIT detectives shall be briefed, by the first-responding supervisor or supervisor in charge of the event, on the names and locations of the Involved Officer and potential Witness Officers.

    a.  When there is concern that an officer is not a Witness Officer, but an Involved Officer, the ranking FIT supervisor will make the final determination regarding the status of the officers(s).

4.  Officer statements:

    a.  Involved Officer:  An officer or supervisor, who participated in, directed or influenced the application of the use of force.

        1)  Involved Officers <u>may</u> provide a recorded statement to FIT investigators.  If given, involved officer statements should be taken at least 48 hours after the incident by FIT investigators. Note: The 48 hours may be waived by the involved Officer.

    b.  Witness Officer: An officer or supervisor who did not participate in or directly influence the application of the use of force.

        1)  Witness Officers shall provide a recorded statement to FIT investigators.  An officer who refuses to provide such information shall be deemed to be in violation of section 4/104.04 Obedience and Insubordination and 4/104.14 Duty to Provide Statements. Witness Officer statements will be taken at a date, time and location determined by FIT investigators.

**B·**   **Incident Responsibilities**

1.  Any officer or supervisor assigned, involved, or arrived on the scene of a use of force investigation shall not leave until released by the supervisor in charge of the event.

2.  The supervisor first on scene will act as Incident Commander (per 5/213.06) until relieved by an area lieutenant or watch commander and will:

    a.  Ensure medical attention is provided for those in need;

    b.  Coordinate the search for outstanding suspects;

    c.  Ensure the immediate crime scene is secured and protected;

    d.  Oversee the identification and isolation of witnesses;

    e.  Ensure witness officer(s) and involved officer(s) are separated and placed in a secure and safe environment, with a witness monitor.

    f.  Contact Communications and advise the type of incident and request that notifications be made;

    g.  When practical, only the involved officer and a supervisor should be present during the Public Safety Statement (PSS).  If multiple officers are involved, the PSS should be done separately with each involved officer, by the same supervisor.  The questions below will be read directly from the PSS card to the officer. A supervisor will write down the officer's response. The PSS will be documented and maintained by the supervisor until provided to a FIT detective. No unauthorized card or form will be used for the PSS documentation.

        1)  Did you discharge your firearm?

           a)  If so, in what direction?

           b)  Approximately where were you located when you fired?

           c)  How many shots do you think you fired?

        2)  Is anyone injured?

           a)  If so, where are they located?

LVMPD 0033

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

        3)   Are there any outstanding suspects?
            a)   If so, what is their description?
            b)   What direction and mode of travel?
            c)   How long have they been gone?
            d)   What crime(s) have they committed?
            e)   What type of weapon do they have?
        4)   Is it possible the suspect fired rounds at you?
            a)   If so, what direction were the rounds fired from?
            b)   How many shots do you think the suspect fired?
            c)   Approximately where was the suspect located when they fired?
        5)   Do you know if any other officer(s) discharged their firearms?
            a)   If so, who are they?
            b)   Approximately where was the officers(s) located when they fired?
        6)   Are there any weapons or evidence that needs to be secured/protected?
            a)   If so, where are they located?
        7)   Are you aware of any witnesses?
            a)   If so, what is their location?

Note: The PSS is a series of questions to obtain information to determine an immediate threat to public safety. The PSS must be taken in a timely manner and under a condition which has demonstrated an immediate threat to the public. (An example would be shots fired by an officer or a subject in the direction where the public may be in immediate danger.) The supervisor must take appropriate action based on the information received from the PSS.

    3.   The Watch Commander (and/or an area lieutenant) will:
        a.   Respond immediately to the scene of the use of deadly force.
    4.   The Incident Commander will:
        a.   Designate a Command Post;
        b.   Establish the outer perimeter, the staging area, and the media staging area;
        c.   Identify and separate civilian witnesses;
        d.   Identify and separate officer witnesses;
        e.   Assign an Officer Witness Monitor(s) and explain their duties to them, which are:
            1)   To ensure that involved officers and witness officers do not discuss the incident being investigated.
            2)   The monitor shall allow the officer's attorney and association representative to communicate privately with the officer.
            3)   The monitor will not talk to the officer about the facts and circumstances of the incident.
            4)   Remain with the officer until firearms countdown is completed.
    5.   The appropriate Patrol Investigations detective or on-scene Supervisor will:
        a.   Respond immediately to begin a preliminary investigation;
        b.   Ensure the Major Incident Log has been assigned and is being completed.
        c.   Assist in the early management of the crime scene, the identification and separation of witnesses, and the canvass.
    6.   Communications will:
        a.   Assign at least one additional sergeant to the scene;
            1)   If sergeants are unavailable for the particular area command in which the use of deadly force occurred, the dispatcher will assign sergeants from other area commands or units other than Patrol.
        b.   Ensure the proper notifications are made immediately by utilizing the approved Critical Incident/OIS messaging system notification.

The following guidelines for notifications are to be made by Communications dependent upon the type of incident:

*Las Vegas Metropolitan Police Department*
*Partners with the Community (Department Manual 5-24-2017)*

1. Use of Deadly Force or Force Involving Serious Bodily Injury
   a. The officer's immediate supervision (sergeant, lieutenant, and captain);
   b. The watch commander (and area lieutenant);
   c. Patrol Investigations Detectives;
   d. FIT;
   e. OIO Bureau Commander
   f. CIRT;
   g. Crime Scene Investigations Section;
   h. Risk Management Section;
   i. PEAP;
   j. Respective collective bargaining unit.
2. Unintentional Discharge or Accidental Discharge of a Firearm at anything other than a person, or animal shoots:
   a. The officer's immediate supervision (sergeant, lieutenant, and captain);
   b. The watch commander (and area lieutenant);
   c. The officer's bureau commander;
   d. Crime Scene Investigations Section;
   e. CIRT;
      1) CIRT will investigate any unintentional discharge of a firearm that occurs during a police operation, such as the inadvertent discharge of a shotgun while deploying it in response to a high-risk call, and/or when officer discharges firearm at an animal.
   f. Internal Affairs;
      1) IA will investigate any accidental discharges that occur not as the result of a police operation, such as an unintentional discharge of a shotgun while inspecting it at an area command parking lot.
   g. Risk Management Section, when injury or property damage result;
   h. PEAP;
   i. Respective collective bargaining unit.
3. Use of Force with a vehicle incident that causes death or serious bodily injury: (PIT over 40 MPH and Ramming)
   a. The officer's immediate supervision (sergeant, lieutenant, and captain);
   b. The watch commander (and area lieutenant);
   c. CIRT;
   d. FIT;
   e. OIO Bureau Commander
   f. Traffic Bureau/Fatal Detail
   g. Risk Management Section;
   h. Crime Scene Investigations Section;
   i. PEAP;
   j. Respective collective bargaining unit.
4. The Use of PIT at speeds below 40mph when contact is made:
   a. The officer's immediate supervision (sergeant, lieutenant, and captain);
   b. The watch commander (and area lieutenant);
   c. An on-duty Traffic supervisor;
      1) If any questions or concerns arise from this PIT investigation, regarding the Use of Force was Deadly or Non-Deadly, FIT and/or the Traffic Section/Fatal Detail shall be notified.

**D.    Initial Briefing**
1. The Incident Commander will:
   a. Designate a location for the initial briefing as to provide a secure place where operational security measures can be met. The briefing location will not compromise the integrity of

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

the immediate crime scene. Environmental factors and location of the media should be considered;

2. Patrol Investigations detective or on-scene supervisor will:
   a. Conduct the initial briefing;
   b. Only essential personnel will attend the briefing. Essential personnel are identified as:
      1) The supervisor(s) who obtained the Public Safety Statement;
      2) Involved officer's supervision (sergeant, lieutenant, and captain);
      3) FIT personnel;
      4) Office of Internal Oversight Bureau Commander
      5) CSI personnel;
      6) CIRT personnel;
      7) Traffic Bureau/Fatal Detail. (When Applicable)
      8) PIO

All other personnel are deemed non-essential and will be excluded from the briefing. FIT Section Lieutenant or designee will monitor those in attendance for compliance.

   c. A sign in sheet will be completed by all personnel at the briefing. The initial briefing should include the following:
      1) Location of involved officer(s), witness officer(s) and/or civilian witness(es);
      2) Location of the subject(s);
      3) Location of the scene(s);
      4) Location of evidence;
      5) Location of the Supervisor who took a PSS(when applicable) and ;
      6) Details of the incident.
   d. At the close of the brief, FIT will assumes control of the scene and investigation.

2. The Office of Internal Oversight Bureau Commander or their designee will:
   a. Coordinate with the Office of Public Information prior to any media release.

E. **Scene Walkthrough**
   1. The purpose of the scene walkthrough with an officer involved is to help investigators develop an understanding of the scene and identify potential physical evidence. The walkthrough is voluntary and it is not an interview. Detailed narratives shall be avoided. If more than one officer is involved in the incident, their walkthroughs will be conducted independently of each other. Walkthroughs will be conducted by FIT personnel. The personnel observing the walkthrough shall be limited to:
      a. The officer involved;
      b. A representative of the officer or legal counsel;
      c. FIT detectives;
      d. FIT sergeant and/or lieutenant;
      e. CSI Director and/or supervisor.
   2. Witness officers shall provide a walkthrough and audio recorded statement as needed and directed by FIT. An officer who refuses to provide such information shall be deemed to be in violation of section 4/104.04 Obedience and Insubordination and 4/104.14 Duty to Provide Statements. The personnel observing the walkthrough shall be limited to:
      a. The witness officer;
      b. A representative of the officer or legal counsel;
      c. FIT detectives;
      d. FIT sergeant and/or lieutenant;
      e. CSI Director and/or supervisor.
   3. FIT will provide a briefing and scene walkthrough to CIRT after their determination that the scene is completely identified, documented, and evidence has been secured.
   4. CSI personnel will collect, preserve, and book physical evidence within the identified crime scenes. The FIT supervisor is responsible for determining the steps taken in the handling of any potential video surveillance. Such video surveillance evidence shall be seized and booked in accordance with LVMPD Search and Seizure Policy, Section 4 (5/200.01).

# Las Vegas Metropolitan Police Department
## Partners with the Community (Department Manual 5-24-2017)

5. No photographs of the crime scene shall be taken independent of the CSI Section. If other photographs, audio or video recordings have been taken, such evidence will be reported to the FIT by any officer who has such knowledge.

F. **Media Release**
1. Media inquiries shall be referred to the Office of Internal Oversight Bureau Commander, or their designee. The bureau commander will provide liaison with the on-scene and follow-up media inquiries. At the close of the scene investigation, the FIT lieutenant will prepare the written media release. The Office of Public Information will also be an available resource in deadly-force incidents.
2. The identity of officers involved in deadly force incidents will not be released to the public or media for 48 hours. The Office of Public Information will collect media coverage of deadly force incidents and will provide the coverage to FIT and to CIRT. Such coverage may be a resource for both the investigative and administrative review.
3. FIT Lieutenant will be responsible to coordinate with the Sheriff/Undersheriff and the PIO to construct a formal media release to the general public after the 72 hour Executive Staff Brief.

G. **Countdown of Firearms and Photographs of Officer Involved**
1. The FIT Supervisor will:
   a. Determine which officers will be photographed and have their firearms counted down;
   b. Ensure the involved and witness officer(s) relinquish custody of their firearm(s) to the Crime Scene Investigations Section;
   c. Provide a replacement if the firearm used was a handgun for which there is a department-issued replacement available;
      1) No immediate replacement will be provided for any department-issued or personally-owned long guns, such as an AR-15 rifle or shotgun.
   d. Ensure the officer's equipment is photographed in place (on the person) prior to examination to show the location, presence, and condition of any tools (firearm, ECD, baton, flashlight, etc.) available during the incident;
   e. Direct the countdown of an officer's firearm. It is preferable the countdown occurs at the Force Investigation Team's office; however, circumstances may dictate another location is utilized.
      1) Prior to handling specialized weapons or an unfamiliar firearm, Crime Scene Investigations personnel will permit an officer who is familiar with the firearm to unload the firearm, under supervision, to ensure a safe countdown.
2. CSI personnel will:
   a. Ensure, in an officer-involved shooting, that the officer's firearm(s) are not modified, operated, loaded or unloaded in any fashion following the shooting prior to countdown.
   b. Complete the documentation of the officer's immediate condition. Standard documentation will include, but is not limited to:
      • Photographs of at least four full-length views of the officer (front, back, right and left sides) in a standing position;
      • Items of evidence or injuries to show general location and condition;
      • Items of evidence or injuries (with and without scale) so they can be recognized and identified;
      • Items or areas (patterned injuries, bloodstains, bite marks, etc.) where it is necessary to document class and individual characteristics for future comparison, and at least one facial view.

H. **Force Investigation Team's Interview Guidelines**
1. The involved officers have the same rights and privileges, regarding criminal investigation interviews that all persons have.

*Las Vegas Metropolitan Police Department*
*Partners with the Community (Department Manual 5-24-2017)*

2. When practical, involved officers should be interviewed last to ensure investigators have as complete a picture as possible prior to the interview.
3. FIT will conduct a voluntary interview, a minimum of 48 hours after the incident (unless waived by the involved officer), with the officer whose use of force resulted in death. Since the interviews are voluntary, involved officers have the right to decline to be interviewed.
4. FIT will forward the investigative case file on all OIS's to the DA's office for review regardless of a voluntary statement provided by an involved officer.
5. If an involved officer refuses to provide a voluntary statement or decides to wait before giving one, they will be admonished by CIRT not to discuss the incident with any other officers involved in the incident. In those cases where an involved officer declines to provide a timely interview, investigators shall document their efforts to obtain the interview, including when the request was made and to whom it was directed. A subsequent compelled interview, conducted by CIRT, will be scheduled at a later date and in compliance with the rights and obligations set out in NRS 289.
6. All statements provided to FIT will be transcribed and available to the officer before providing a statement to CIRT.

*I.* **Viewing of Third Party Video Prior to Giving Statements**
Although our intent is always to preserve the sanctity of life for all citizens, there may come a time when an officer uses deadly force. From time-to-time, these events are captured on third party surveillance video which can be used to further the post-use of deadly force investigation. They can also serve as a memory aid to officers before they provide voluntary statements for the criminal investigation to the Force Investigation Team (FIT). Therefore, on a case-by-case basis, the FIT Supervisor may give the involved officer(s) (not witness officers) the option to view their actions during a deadly force incident when captured on third party surveillance video. (Reference policy 4/107.01 regarding Body Worn Cameras.)

The following procedure outlines the process:
1. On a case-by-case basis, FIT Investigator(s) may:
   a. Ask the involved officer if he are willing to provide a voluntary statement to FIT and inform him that third party surveillance video exists depicting their actions;
   b. Inform the involved officer that he and his representative will be given an opportunity to review the third party surveillance video;
   c. Provide the officer and his representative an opportunity to review that portion of the third party video that depicts the officer's actions;
   d. Schedule and conduct the interview; and,
   e. Make a copy of the third party video surveillance and impound it as evidence.
2. The Force Investigation Team Investigator will not:
   f. Make and distribute copies of the third party video surveillance to the involved officer, his legal counsel, or collective bargaining association representative at any time before or after the statement is taken.

**Reporting Procedures**
*1.* The Involved Officer's Immediate Supervisor will:
   a. Complete Notice of Relief of Duty (LVMPD 117), thus placing the involved officer in relief of duty status for any incident involving the use of deadly force or wherein serious bodily injury results. Supervisors will place other officers in relief of duty status at the direction of PEAP. This will be done based on all the facts and circumstances known to the PEAP personnel and only for the well-being of that officer.
*2.* The CIRT Supervisor will:
   a. Ensure the Firearms Discharge Report and CIRT Case in IAPro are completed for uses of deadly force.
   b. Ensure the following forms are completed and provided to the FIT to be memorialized in

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

      the case file of a use of deadly force incident:
          1)   Major Incident Log;
     c.   If involved officer is a PMSA member, drug analysis will be performed (see policy 5/110.01).
  3.   The Officer of Internal Oversight Bureau Commander, or designee, will brief the Sheriff, Undersheriff and/or Assistant Sheriffs upon completion of the initial briefing with the details of the incident.

      Upon completion of the preliminary investigation the FIT Lieutenant or designee will draft an e-mail detailing the sequence of events and information learned. The e-mail will be sent to the following:
     a.   Sheriff
     b.   Undersheriff
     c.   Assistant Sheriff(s)
     d.   Office of General Counsel
     e.   Deputy Chief of Involved Officer
     f.   Patrol Area Captain and/or Involved Officer Bureau Commander
     g.   OIO Bureau Commander
     h.   Director of PIO
     i.   CIRT Lieutenant
     j.   OOTS Lieutenant
     k.   OIO sergeant
     l.   CIRT Sergeant
     m.   CIRT Team executive support
     n.   FIT LEST

**J.**    **Police Employee Assistance Program (PEAP) Involvement**
  1.   PEAP personnel respond to use of force incidents resulting in death, serious injury, or where death could have resulted or any intentional discharge of a firearm at a human being. PEAP arranges for psychological counseling of involved officers by a qualified psychologist and advises the appropriate chain of command of the officer's readiness to return to duty.
  2.   Upon PEAP personnel's arrival to the scene they will contact the FIT supervisor. After conferring with the FIT supervisor, PEAP will provide assistance to the officers involved in the incident.
  3.   PEAP personnel will not become involved in the investigative process, nor will personnel discuss any details of the incident with the involved officer prior to the officer providing a statement to FIT or CIRT.  PEAP personnel will be able to interact with involved officers and can explain the investigative process to them while the officer is under the observation of the Officer Witness Monitor.
  **4.**   If PEAP personnel believe a Critical Incident Stress Debriefing is appropriate after a deadly force incident, PEAP will seek prior approval of such a forum with the FIT lieutenant and the CIRT lieutenant.

**K.**    **Contact with Suspect or Person to Whom Force Was Applied**
  1.   If a suspect or person to whom force was applied is transported for emergency medical treatment, an officer shall accompany the subject to the hospital. This will guarantee the chain of evidence is preserved and memorialized and spontaneous statements can be documented. The escorting officer will verify that medical personnel are aware the subject's clothing and personal effects must be secured as evidence.
  2.   Interviews with a suspect or person involved in a use of deadly force will be video or audio recorded. If a suspect has been transported to a hospital, a FIT detective will arrange for a timely interview when it becomes permissible. Additional evidence from the suspect, such as blood or ballistic evidence will be collected at the hospital.

## *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

3. In circumstances such as an unintentional discharge or an inappropriate use of deadly force, if no reasonable suspicion or probable cause exists to warrant an investigative detention, the subject is free to leave. Timely and consensual efforts will be made to attempt to identify the subject and investigators will seek the subject's cooperation. Subjects will be told their cooperation is voluntary and such interaction will then be documented.

**L.    Executive Staff 72 Hour Briefing**
1. FIT will provide a briefing to Executive Staff on the details of the criminal investigation related to the use of deadly force.
2. The date, time and location of the briefing will be determined by the Office of the Sheriff.

**M.    The Administrative and Tactical Review**
1. CIRT will brief the Organizational Development Bureau on preliminary review of tactical, training, and administrative issues.
2. During the criminal investigation conducted by FIT, they will provide copies of reports to CIRT as they become available. The criminal investigation can and will share its information freely with the administrative/tactical examination, but CIRT may not share information with the criminal investigation that was compelled under "Garrity."

Upon completion of the criminal investigation of non-fatal incidents, FIT Section Lieutenant will notify CIRT. See the Critical Incident Review Team (5/109.04) and the Critical Incident Review Process (5/109.02) policies for further information.

**IV.    ADMINISTRATIVE REVIEW**

All Use of Force Reports in Blue Team will be completely coordinated through the officer's chain of command and entered into IA Pro within 30 calendar days of the event.  Internal Affairs will provide a monthly report to the appropriate Deputy Chief listing all Use of Force Reports which have exceeded the 30-day limitation.

The Office of Internal Oversight will complete a documented annual use of force analysis.  (3/15, 7/15)■

*Las Vegas Metropolitan Police Department*

*Partners with the Community (Department Manual 5-24-2017)*

5/108.16      **DEFENSIVE TACTICS**
               **A.S. 1.3.4, 1.3.10, 1.3.11, 33.1.2, 33.1.5, 33.5.1, 72.1.1**

It is the policy of this department to train personnel in the area of defensive tactics to ensure proficiency in their application.

Department personnel are <u>not</u> authorized to train or otherwise demonstrate the use and techniques of LVMPD defensive tactics to any person outside the LVMPD without the express written permission of the Sheriff or his designee.

DEFINITIONS

| | |
|---|---|
| Defensive Tactics | Includes batons, weaponless defense, (weaponless defense includes but is not limited to handcuffing techniques, empty hand techniques and ground defense) lateral vascular neck restraint (LVNR). Any special training for corrections officers. |
| Defensive Tactics Instructor | A person who has completed the Basic Defensive Tactics Instructor Course, Instructor Development and has been approved by the Organizational Development Bureau to train others in defensive tactics. |
| Advanced Defensive Tactics Instructor | A qualified defensive tactics instructor who has been approved by the Organizational Development Bureau to train and evaluate defensive tactics instructors. |
| Defensive Tactics Coordinator | One coordinator will be assigned from each of the following areas: Police and Corrections Academy, Advanced Officer Skills Training. The DTC is responsible for running the Defensive Tactics Instructor course at respective area of assignment and Defensive Tactics Instructor Re-certification classes. |
| Bureau/Area Command Training Coordinator | Officer responsible for coordinating bureau/area command training with the Organizational Development Bureau. |

DEFENSIVE TACTICS SUB-COMMITTEE

The Defensive Tactics Sub-Committee falls under the Training Committee and oversees defensive tactics and associated training throughout the department. The DT committee considers key issues regarding defensive tactics, such as standardized training and instructor certification; classroom and practical training; selection of new defensive tactic techniques and equipment; and modifications to the defensive tactics lesson plan. The DT committee will coordinate with the Firearms Committee for any cooperative training issues. They will submit their findings and recommendations to the Training Committee. The Training Committee will be responsible for the review and approval of any modifications and forward recommendations to the Professional Standards Division Commander.

The Sub-Committee chairman will be appointed by the committee on an annual basis. Members will include: Academy sergeants, or designee(s); the Advanced Training sergeant, or designee; Advanced Officer Skills Training sergeant (AOST), or designee; Reality Based Training (RBT) sergeant, or designee; Critical Incident Review Team (CIRT) sergeant, or designee; SWAT representative; the Traffic Training sergeants, or designee(s); Corrections DTI representative, FTTU sergeant, or designee; DTI Coordinator(s); ECD Coordinator.

DEFENSIVE TACTICS INSTRUCTORS

*Las Vegas Metropolitan Police Department*

**Partners with the Community (Department Manual 5-24-2017)**

For certification as an LVMPD Defensive Tactics Instructor, commissioned officers must meet the following requirements:

1. Pass the Basic Instructor Development course;
2. Demonstrate proficiency in all areas of defensive tactics and successfully complete the Defensive Tactics Basic Instructor Course;
3. Attend a formal four (4) hour Instructor Re-Certification Course conducted at the Advanced Officers Skills Training (AOST) annually. This recertification qualifies the DTI to instruct throughout the following calendar year and must be completed every year (scheduled during the quarter of the DTIs birth month). DTI's employed at DSD will attend a re-certification course conducted at the DSD academy. DTI's assigned to the Academies will attend the re-certification course conducted at AOST unless the academy has an Advanced DTI available to conduct a recertification class. DTIs employed as residents will attend a recertification course conducted at AOST unless there is a Resident ADTI available to conduct a recertification class. Each DTI will be evaluated/audited during the annual four (4) hour class in order to ensure their proficiency and knowledge. Officers can register on UMLV through the intranet:
   a. The certified Defensive Tactics Instructor must conduct a minimum of four (4) sessions of quarterly proficiency training annually to remain proficient as an instructor. Exception will be for Defensive Tactics Instructors assigned to the academies and AOST (who are instructing defensive tactics as part of their current assignment) due to the required daily training;
   b. If instructors fail to comply with the above requirements, they will be de-certified effective December 31st of the current year. Compliance and notification of certification will be completed by the Organizational Development Bureau Advanced Training Section;
      i. Any exception to this must be approved by the Defensive Tactics Sub-Committee by request of the DTI's bureau commander.
   c. If de-certified, the Defensive Tactics Basic Instructor course must be completed to regain instructor status.

ELECTRONIC CONTROL DEVICE INSTRUCTORS

For recertification as an LVMPD Electronic Control Device (ECD) Instructor, commissioned officers must meet the following requirements:

1. Maintain Basic Defensive Tactics Instructor certification as stated above;
2. Attend an Initial ECD Instructor Certification course through TASER, Intl., or from AOST Instructors;
3. Attend a bi-annual ECD Instructor Recertification course provided by AOST personnel (or a TASER, Intl., Certified Master Instructor).

ADVANCED DEFENSIVE TACTICS INSTRUCTORS

Advanced Defensive Tactics Instructor positions are designated by the Organizational Development Bureau. Applications can be found in UMLV and must be submitted to the Defensive Tactics sub-committee by sending them to AOST or Advanced Training. Upon approval by the DT committee, applications will be forwarded to the Training Bureau Commander for final approval, and then sent to Advanced Training for entry into UMLV.

Current Defensive Tactics Instructors wanting to be certified as an Advanced Defensive Tactics Instructor must meet the following qualifications:

1. Complete the LVMPD Basic Instructor Development Course (if not already completed);
2. Complete a minimum of two years as a certified Defensive Tactics Instructor. Submit copies of Defensive Tactics Proficiency Report Form (LVMPD Form 171a) listing applicant as the instructor for a minimum of 200 hours to include all defensive tactics techniques;
3. Assist in instructing a Basic Defensive Tactics Instructor Certification course;
4. Submit the Advanced Defensive Tactics Instructor Application Form (LVMPD 368) and forward it to the Defensive Tactics Sub-Committee for approval at the next quarterly committee meeting;
5. Attend and successfully complete the three Advanced Defensive Tactics Instructor Certification courses (ADT01, ADT02, and ADT03).

*Las Vegas Metropolitan Police Department*
*Partners with the Community (Department Manual 5-24-2017)*

Advanced Defensive Tactics Instructors must fulfill the following requirements annually to maintain their certification:

1.   Must evaluate a minimum of two (2) separate defensive tactics training sessions annually conducted by squad level DTI's, at two (2) separate patrol area commands, unless currently assigned to the Organizational Development Bureau and defensive tactics instruction is part of regular duties (Academy, AOST).  Area command assignments will rotate year to year and will be assigned by ODB.
2.   Must instruct at least eight (8) hours of defensive tactics per year.  This can include squad level quarterly and/or additional training, or academy and/or AOST instruction.
3.   Advanced DTI's will instruct two (2), four (4) hour basic DTI Re-Certification courses annually at the AOST facility or the DSD Academy (Corrections ADTIs).
4.   If an Advanced DTI fails to meet the above listed requirements, the DTI will be deactivated (no longer authorized to instruct defensive tactics) and given sixty (60) days to comply with the above requirements. Failure to do so within the sixty (60) days will result in the officer being decertified as an ADTI.  The instructor will be returned to Basic DTI status by the Advanced Training sergeant, or designee.  The instructor then has ninety (90) days to comply with the Basic Defensive Tactics Instructor recertification requirements.  Failure to do so within the 90-day period will result in decertification as a Basic DTI.
     a.   Any exceptions must be approved by the Defensive Tactics sub-committee by request of the ADTIs bureau commander.

TRAINING PARAMETERS

Only techniques approved by the Department will be taught.  A formal request to add or remove a technique must be made to the Defensive Tactics Sub-committee. The request must be submitted in memorandum format including name of technique, research completed, and justification for adding it or removing it from the current defensive tactics lesson plan(s). These requests will be reviewed on a quarterly basis and upon acceptance will be recommended to the Training Committee for approval.

All officers, in the rank of lieutenant and below, shall complete the following requirements:
Baton (commissioned helicopter pilots and corrections officers who do not carry a baton in their official duties will be exempted from the baton requirement).

1.   Receives initial expandable straight baton training in the academy; OR
2.   Receives a minimum of four (4) hours of initial expandable straight baton training by an LVMPD certified Defensive Tactics Instructor.

Electronic Control Device (ECD) (commissioned officers of the rank of lieutenant and above, helicopter pilots and observers, and corrections officers who do not carry an ECD in their official duties will be exempted from the ECD requirement).

1.   Receives initial ECD training in the academy; OR
2.   Receives initial ECD training by an LVMPD certified ECD/Defensive Tactics Instructor;
3.   Receives annual ECD Re-certification training.

Lateral Vascular Neck Restraint (LVNR):

1.   Receives initial LVNR training in the academy; OR
2.   Receives a minimum of 12 hours of initial LVNR training by an LVMPD certified Defensive Tactics Instructor;
3.   Receives two (2) hours of annual LVNR re-certification training.

All commissioned officers below the rank of captain will successfully pass the LVMPD quarterly Defensive Tactics Proficiency Test.  Per policy 6/002.00, plainclothes officers are required to carry either OC spray OR an expandable straight baton. Plainclothes officers who choose to carry the expandable straight baton must become certified to carry it prior to carrying it on duty.

REMEDIAL TRAINING

# *Las Vegas Metropolitan Police Department*
### *Partners with the Community (Department Manual 5-24-2017)*

If an officer cannot demonstrate proficiency in an area of defensive tactics, the Defensive Tactics Instructor will provide training in the deficient area and will forward a Defensive Tactics Training Report Form (LVMPD 171) to the ODB, Advanced Training Section, for verification and entry into UMLV showing the training received and reflect that the officer has demonstrated proficiency. If the officer fails to demonstrate proficiency after additional training, the officer and/or the officer's supervisor will contact the ODB, AOST, for assistance in formulating a remedial training program.

## REPORTING DEFENSIVE TACTICS TRAINING

Defensive Tactics Instructor
1. Schedules quarterly defensive tactics training with the bureau/area command training coordinator at least one month in advance (so the advanced defensive tactics instructors can coordinate and evaluate a minimum of two separate defensive tactics training sessions annually), to be conducted by squad level DTI's;
2. Conducts quarterly proficiency training as prescribed in LVMPD lesson plan(s);
3. Documents the proficiency testing on the Defensive tactics Proficiency Report Form (LVMPD 171a);
4. Any additional defensive tactics training will be documented on the Defensive Tactics Training Report Form (LVMPD 171);
5. Forwards forms, electronically, to the Advanced Training Sergeant or DSD Training within ten (10) working days of the completed training.

Bureau/Area Command Training Coordinator
1. Schedules quarterly defensive tactics with squad level defensive tactics instructors at least one month in advance;
2. Ensures all squad level quarterly defensive tactics are being completed on the date scheduled;
3. Makes the schedule available to the Organizational Development Bureau (ODB), or another advanced defensive tactics instructor, to coordinate evaluation of the defensive tactics instructors in the field.

Advanced Training /DSD Training Section
1. Enters the information into the department training record;
2. Files the completed forms.

## LIGHT DUTY/MEDICAL LEAVE/MILITARY LEAVE

All officers who are unable to complete required quarterly defensive tactics training due to medical, military, FMLA, or other excused leave are responsible for notifying ODB of their status and estimated end date of leave. Upon return to full duty the officer is responsible for making up all missed defensive tactics training in order to remain compliant with Nevada POST standards. The FTEP Supervisor will coordinate all necessary training sections to ensure the officer receives whatever training they are missing.

## NEGATIVE SANCTIONS

The Organizational Development Bureau will send a memorandum to the appropriate office, division, or bureau/area commander, or designee, advising of personnel who have failed to participate in the required defensive tactics training.

Each bureau/area commander, or designee, shall, upon receipt of the memorandum from ODB, determine if an acceptable excuse exists for the officers who did not participate, and arrange training as soon as possible. All quarterly proficiency training must be completed by the end of the calendar year unless an authorized exemption exists. (3/13, 6/15)■