UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ESTATE OF TASHI S. FARMER, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1946 JCM (PAL)<br><br>ORDER |

Presently before the court is defendant Las Vegas Metropolitan Police Department ("LVMPD"); Sergeant Travis Crumrine, Officer Michael Tran and Officer Michael Flores' motion for summary judgment. (ECF No. 92). Plaintiffs Estate of Tashi S. Farmer ("Estate of Farmer"); E.B. K. D., a minor, through his legal guardian Stevandra Lk Kuanoni; and T.B.K. F.D., a minor, through her legal guardian Kuanoni (collectively "plaintiffs") filed a response. (ECF No. 63). LVMPD, Sergeant Crumrine, Officer Tran, and Officer Flores filed a reply. (ECF No. 103).

Also before the court is plaintiffs' motion for partial summary judgment. (ECF No. 93). LVMPD, Sergeant Crumrine, Officer Tran, and Officer Flores filed a response (ECF No. 97), to which plaintiffs replied (ECF No. 108). Defendant Officer Kenneth Lopera also filed a response (ECF No. 98), to which plaintiffs replied (ECF No. 104).

Also before the court is Officer Lopera's motion for summary judgment. (ECF No. 94). Plaintiffs filed a response (ECF No. 99), to which Officer Lopera replied (ECF No. 109).

. . .

. . .

. . .

1 **I.  Facts**

2  This is a civil rights action under 42 U.S.C. § 1983 that arises from a physical confrontation
3 between now-deceased Tashi S. Farmer ("the decedent") and Officer Lopera of the LVMPD. (ECF
4 No. 1). Video evidence, transcripts, and official records inform the court of the following events:
5  On May 14, 2017, Officer Lopera and Officer Ashley Lif were working at the Venetian
6 Resort Hotel Casino. (ECF No. 93-5). At approximately 12:50 a.m., the decedent approached the
7 officers to inform them that he ran across Las Vegas Boulevard because he believed that someone
8 was following him. (ECF Nos. 45, 92-3, 93-5). The decedent was agitated, sweating profusely,
9 and looking over his shoulder. (ECF No. 93-5). In response, Officer Lopera walked closer and
10 reached out to the decedent. (ECF Nos. 93-5, 95-4). The decedent backed away into an employee
11 hallway and a chase ensued. *Id*.

12  A few steps into the pursuit, Officer Lopera fell. (ECF No. 95-4). By the time he
13 recovered, Officer Lopera no longer had sight of the decedent. (ECF Nos. 93-5, 95-4). Officer
14 Lopera immediately ran through the hallway and down a stairwell, which led him to a shared road
15 near Venetian's valet/self-park. (ECF No. 95-4). After receiving some assistance from a security
16 guard, Officer Lopera spotted the decedent in the valet area near a white truck. *Id*.

17  Officer Lopera believed that the decedent was attempting to carjack the truck. (ECF No.
18 93-5). The operator of the vehicle, Jonathan Pierce, was closer to the decedent and did not perceive
19 any attempt to enter the vehicle. (ECF No. 93-11). However, the decedent's erratic behavior
20 frightened Pierce and caused him to lock the truck's doors. (ECF No. 92-6). Meanwhile, Officer
21 Lopera sprinted to the decedent and shouted, "Stop! Don't move! You're getting tased!" (ECF
22 No. 95-4). The officer then fired his taser and the decedent fell to the floor. *Id*.

23  Officer Lopera instructed the decedent to roll onto his stomach. *Id*. The decedent initially
24 held his hands near his head, but then reached towards his feet and put his fingers inside his left
25 shoe. *Id*. The officer fired his taser a second time and again instructed the decedent to roll onto
26 his stomach. *Id*. The decedent cried, "I will, I will!" *Id*. A brief moment passed, but the decedent
27 did not comply with Officer Lopera's order. *Id*. Instead, he once again reached towards his left
28

**James C. Mahan
U.S. District Judge**

- 2 -

shoe. *Id*. The officer fired his taser a third time and tried to push the decedent onto his stomach. *Id*. Officer Lopera's efforts were unsuccessful. *Id*.

The decedent continued to make erratic movements in what appears to be an effort to resist arrest. *Id*. Officer Lopera fired his taser four more times and then attempted to pull the decedent's hands behind his back. *Id*. Two security guards approached the scene to provide assistance, which gave Officer Lopera an opportunity to step back and holster his taser. (ECF Nos. 95-4, 96-12). The decedent's behavior remained erratic and Officer Lopera re-engaged the decedent, delivering numerous blows to the head. *Id*.

Once the decedent was sufficiently weakened, Officer Lopera placed the decedent in a neck restraint. *Id*. At this point, Sergeant Crumrine arrived and attempted to help effectuate the arrest. *Id*. After approximately 25 seconds, Sergeant Crumrine instructed Officer Lopera to let go. *Id*. The decedent then attempted to escape, causing Officer Lopera to roll over. *Id*.

Despite the decedent's show of strength, Officer Lopera managed to maintain the neck restraint while officers Tran and Flores arrived. *Id*. Nearly 46 seconds passed while the officers attempted to subdue and handcuff the decedent. *Id*. Officers Crumrine, Tran, and Flores eventually stepped back and Officer Lopera released the decedent's inanimate corpse. *Id*.

Several officers applied first aid in a futile attempt to revive the decedent. (ECF No. 93-5). Eventually, medical personnel arrived and transported the decedent to Sunrise Hospital & Medical Center. *Id*. At 1:39 a.m., the decedent was pronounced dead. (ECF No. 45-1). The cause of death, according to the decedent's death certificate, was "asphyxia due to, or as a consequence of police restraint procedures." *Id*.

On July 18, 2017, plaintiffs initiated this action. (ECF No. 1). In their first amended complaint, plaintiffs allege six causes of action: (1) excessive force against Officer Lopera and failure to intercede against officers Crumrine, Tran, and Flores; (2) violation of the Fourth Amendment against defendant LVMPD; (3) deprivation of right to familial relationship against Lopera, Crumrine, Tran, and Flores; (4) deprivation of right to familial relationship against LVMPD; (5) negligence against all defendants; and (6) battery against Officer Lopera and

LVMPD. (ECF No. 45). Plaintiffs assert claims against the individual defendants in both their individual and official capacities. *Id.*

Approximately one month after plaintiffs initiated this action, LVMPD's Tactical Review Board ("review board") convened a meeting to review the officers' conduct at the March 14, 2017, incident. (ECF No. 93-5). The review board made factual findings that are substantially consistent with the video evidence and concluded that Officer Lopera's actions amounted "to a gross inappropriate use of force." *Id.* The review board also concluded that Sergeant Crumrine "was in neglect of duty as a supervisor." *Id.*

The review board recommended terminating Officer Lopera but was unable to take any adverse employment action because Officer Lopera preemptively resigned. (ECF No. 92-15). The review board also demoted Sergeant Crumrine to a patrol officer. *Id.* The remaining officers did not receive substantial disciplinary sanctions. (ECF Nos. 92-15, 93-5).

LVMPD produced documents in discovery related to its use of force policy. At the time of the subject incident, LVMPD identified five levels of resistance: compliant, passive, active, aggressive, and aggravated aggressive. (ECF No. 93-6). According to the review board, the decedent engaged in active resistance, which means that the decedent was attempting to prevent arrest without harming an officer. (ECF Nos. 93-5, 93-6). The use of force policy permits officers to use a lateral vascular neck restraint ("LVNR") on suspects that are at the level of active resistance. (ECF No. 93-6).

LVMPD also disclosed that there have been 12 excessive force incidents in which an officer used a neck restraint from 2012 to 2017. (ECF Nos. 101, 103). Of these 12 incidents, two include the inappropriate use of an LVNR. *Id.* On September 20, 2017, LVMPD changed its use of force policy so that officers could no longer use neck restraints on suspects that are at the level of active resistance. *Id.*

Now, plaintiffs move for summary judgment on their first cause of action. (ECF No. 93). The defendants also move for summary judgment on all six causes of action. (ECF Nos. 92, 94).

. . .

. . .

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

The parties dispute in their dispositive motions all six causes of action. (ECF Nos. 92, 93, 94). Plaintiffs assert two § 1983 claims against the individual defendants, two *Monell* claims against LVMPD, and two state law claims. (ECF No. 45). The court will address plaintiffs' claims in turn.

*a. § 1983 claims against individual defendants*

Plaintiffs assert the following § 1983 claims: (1) excessive force against Officer Lopera and failure to intercede against officers Crumrine, Tran, and Flores; and (2) deprivation of right to familial relationship against all individual defendants. *Id*. Plaintiff asserts these claims against the respective defendants in both their individual and official capacities. *Id*. The court hereby addresses plaintiffs' individual capacity claims.

When a plaintiff asserts a § 1983 cause of action against a government official in his or her individual capacity, the government official may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005). Here, officers Lopera, Crumrine, Tran, and Flores have asserted this defense. (ECF Nos. 92, 94).

Qualified immunity insulates public officials "'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court must consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court must determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the plaintiff's burden to show that the constitutional right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Although plaintiffs' assert two § 1983 causes of action, the substance of the complaint alleges three theories of relief: (1) excessive force against Officer Lopera; (2) failure to intervene against officers Crumrine, Tran, and Flores; and (3) deprivation of right to familial relationship against all officers. *See* (ECF No. 45). The defendants recognized this much and accordingly briefed the issues in their filings. *See* (ECF No. 92, 94, 97, 98). The court proceeds with its analysis of all three causes of action.

### i. *Excessive force*

A claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Conor*, 490 U.S. 386, 394 (1989); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In determining whether an officer's use of force is reasonable, courts look at "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 411 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

Plaintiffs emphasize that Officer Lopera violated LVMPD policy when he repeatedly fired his taser, punched the decedent numerous times, and used a non-standard neck restraint. (ECF No. 99). The court recognizes that the officer's actions were extreme, continuous, and deadly. However, the court does not solely look at Officer Lopera's actions. Rather, it considers whether the officer's actions are objectively reasonable in light of the facts and circumstances that the officer confronted, without the "20/20 vision of hindsight." *See Graham*, 490 U.S. at 396.

Video evidence shows that the decedent was in panic. (ECF No. 95-4). Officer Lopera rapidly became involved in a high-intensity pursuit. (ECF No. 95-4). Eventually, Officer Lopera found the decedent near a white truck and perceived, perhaps inaccurately, that the decedent was attempting to carjack the vehicle. *Id*. At no point did the decedent follow the officer's orders to stop or lay on his stomach. *Id*. Instead, the decedent came into direct contact with Officer Lopera and made remarkable efforts to resist arrest. *Id*.

Indeed, Officer Lopera was in a volatile situation with limited information regarding the potential threat the decedent posed to himself and others. Under these circumstances, the reasonableness of Officer Lopera's use of deadly force is a genuine jury question. Therefore, the court cannot determine whether qualified immunity shields Officer Lopera from liability nor can it summarily rule on plaintiffs' excessive force claim.

. . .

. . .

James C. Mahan
U.S. District Judge

*ii. Failure to intercede*

Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a citizen. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal citations omitted). When law enforcement officers fail to intercede, they are liable for violating the same constitutional right as their fellow officer. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996). However, courts cannot hold law enforcement officers liable if they did not have a "reasonable opportunity" to intercede. *Cunningham*, 229 F.3d at 1289–90.

The Ninth Circuit has held that officers fulfill their duty to intercede when they "become involved or give orders." *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Here, officers Crumrine, Tran, and Flores became involved when they attempted to detain the decedent so that Officer Lopera could cease the neck restraint. (ECF Nos. 93-5, 95-4, 96-12). Moreover, Sergeant Crumrine ordered Officer Lopera to let go. *Id*. Therefore, officers Crumrine, Tran, and Flores fulfilled their duty to intercede and did not violate the decedent's constitutional rights.

In consideration of the foregoing, the court will enter summary judgment on plaintiffs' claim for failure to intercede in favor of the defendants.

*iii. Deprivation of right to familial relationship*

The Ninth Circuit has clearly established that a parent has a Fourteenth Amendment liberty interest in the companionship and society of his or her child. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Likewise, a child has substantive due process rights in his or her relationship with a parent. *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). A deprivation of that interest is a constitutional violation that a plaintiff may vindicate through a § 1983 action. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

To prevail on such a claim, a plaintiff must show that the defendant's conduct in causing the deprivation "shocks the conscience." *Porter*, 546 F.3d at 1137. "What state of mind shocks the conscience depends on the circumstances of a particular case." *Provencio v. Vazquez*, 258 F.R.D. 626, 640 (E.D. Cal. 2009) (citation omitted). Mere negligence, however, is never enough.

*Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989); *City of Sacramento v Lewis*, 523 U.S. 833, 849 (1998).

As the court already explained, Officer Lopera used an extreme amount of force in a fast pace, volatile situation. It is inappropriate for the court to determine as a matter of law whether this conduct "shocks the conscience" due to the complexity of the circumstances that Officer Lopera confronted. *Porter*, 546 F.3d at 1137. Accordingly, the court will not summarily rule on plaintiffs' deprivation claim against Officer Lopera.

The conduct of the remaining officers is a different matter. Officers Crumrine, Tran, and Flores attempted to place the decedent in custody most likely to de-escalate the situation and allow Officer Lopera to release the decedent. (ECF Nos. 93-5, 95-4, 96-12). Officer Crumrine's order for Officer Lopera to let go of the decedent confirms that officers Crumrine, Tran, and Flores were partially acting out of concern for the decedent's health. Nothing about these facts "shocks the conscience." *Porter*, 546 F.3d at 1137.

In sum, a genuine dispute of material fact precludes summary judgment on plaintiffs' deprivation claim against Officer Lopera. As for plaintiffs' deprivation claim against officers Crumrine, Tran, and Flores, the court will enter summary judgment in favor of the defendants.

*b. Monell claims*

"A suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Therefore, the court will analyze plaintiffs' official capacity claims against the individual defendants together with plaintiffs' *Monell* claims against LVMPD. *See, e.g.*, *Shafter v. City of Boulder*, 896 F. Supp. 2d 915, 936 n.10 (D. Nev. 2012).

Under *Monell*, a municipality is liable for constitutional torts that its employees commit pursuant to a municipal policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 698 (1978). To prevail on a *Monell* claim, a plaintiff must show (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving

force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

The Ninth Circuit has held that a plaintiff can establish a municipal policy by demonstrating one of the following:

> (1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate.

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quotation marks and citations omitted). In "limited circumstances," the failure to train municipal employees can also serve as the policy underlying a *Monell* claim. *Bd. of the City Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

Plaintiffs argue that LVMPD had a *de facto* policy that causes officers to use excessive force because LVMPD's use of force policy authorized officers to use neck restraints in circumstances that require low-level force on actively resisting suspects. (ECF No. 101).

A plaintiff cannot prove the existence of a *de facto* municipal policy or custom based only on random acts or isolated events. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Rather, there must be a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001).[1]

From 2012 to 2017 there have been 12 incidents of excessive force involving an officer's improper use of a neck restraint. (ECF Nos. 101, 103). Moreover, plaintiffs reasonably contend that LVMPD's policy of allowing officers to use neck restraints on suspects that are at a level of active resistance caused these incidents. (ECF No. 101); *see Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (holding that a plaintiff must show that the municipal policy was the cause-in-fact and proximate cause of the constitutional violation).

---

[1] A plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).

The court recognizes that LVMPD reprimanded the respective officers for all 12 incidents. *See* (ECF No. 101). However, the record before the court does not indicate the nature of these reprimands and their effect on policing practices. Therefore, LVMPD's history of excessive force incidents precludes summary judgment because a reasonable juror could find that LVMPD had a *de facto* policy or custom that caused officers to violate the constitutional rights of citizens.

Plaintiffs also argue that LVMPD has a policy of failing to properly train its officers in using neck restraints. (ECF No. 101). Defendants contend that plaintiffs have not provided any evidence showing that LVMPD's training practices are somehow deficient. (ECF Nos. 92, 103).

Failure to adequately train employees may serve as a policy underlying a *Monell* claim when the "failure to train amounts to deliberate indifference to the rights of persons with whom police come in contact with." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality is deliberately indifferent "when the need for more or different action is so obvious and the in adequacy of current procedures so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 723 (9th Cir. 2010) (brackets and citation omitted).

To succeed on a *Monell* claim for failure to train, a plaintiff must demonstrate (1) specific training deficiencies and (2) either a pattern of constitutional violations of which policymakers were aware or that training is obviously necessary to avoid constitutional violations. *City of Canton*, 489 U.S. 390–91; *see also Rose v. Cnty. of Sacramento*, 163 F. Supp. 3d 787, 794 (E.D. Cal. 2016).

Plaintiffs have not provided any substantive evidence showing specific training deficiencies. In their response brief, plaintiffs merely state that Officer Lopera was not trained on when to release a neck restraint and Sergeant Crumrine was not trained to recognize the level of restraint that other officers are applying. *See* (ECF No. 101). These uncorroborated statements cannot preclude summary judgment. *See, e.g.*, *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1260 (9th Cir. 2016). Therefore, the court will dismiss plaintiffs' failure to train claim.

In sum, a genuine dispute of material fact precludes summary judgment on plaintiffs' *Monell* claim asserting that LVMPD had a *de facto* policy that caused officers to use excessive

force. As for plaintiffs' *Monell* claim for failure to train, the court will grant summary judgment in favor of LVMPD.

### c. State law claims

Plaintiffs assert two state law claims: (1) negligence against all defendants and (2) battery against Officer Lopera and LVMPD. (ECF No. 45). Defendants argue that these state law claims fail as a matter of law because the discretionary-function immunity shields defendants from liability. (ECF Nos. 92, 94). The court will dismiss plaintiffs' unsupported state law claims before addressing defendants' discretionary-function immunity argument.

### i. Unsupported state law claims

Plaintiffs argue that defendants negligently caused decedent's death when (1) LVMPD failed to adequately train its officers; (2) officers Crumrine, Tran, and Flores failed to intercede; and (3) Officer Lopera used excessive force. (ECF Nos. 45, 101). Plaintiffs also argue that Officer Lopera and LVMPD are liable for battery because Officer Lopera used more force than was reasonably necessary. *Id*.

The record before the court does not contain any evidence showing that LVMPD failed to adequately train its employees or that officers Crumrine, Tran, and Flores did not fulfill their duty to intercede. The record also does not show that the officers acted in bad faith when they attempted to intercede. Moreover, plaintiffs do not identify any other duty that LVMPD or officers Crumrine, Tran, and Flores purportedly violated.

Therefore, without reaching defendants' immunity argument, the court will grant summary judgment on plaintiffs' negligence claim as it pertains to LVMPD and officers Crumrine, Tran, and Flores. *See, e.g.*, *Hill v. Las Vegas Metro. Police Dep't*, 197 F. Supp. 3d 1226, 1235–36 (D. Nev. 2016) (summarily dismissing a negligence claim without addressing immunity because the record did not contain evidence showing that defendants breached a duty).

The court notes, however, that the parties have provided documentary evidence that would allow a reasonable juror to conclude that Officer Lopera used excessive force against the decedent. *See, e.g.*, (ECF Nos. 93-5, 95-4, 96-12). This evidence supports plaintiffs' negligence claim against Officer Lopera as well as plaintiffs' battery claim against Officer Lopera and LVMPD.

James C. Mahan
U.S. District Judge

- 13 -

Thus, the court must determine whether discretionary-function immunity shields Officer Lopera and LVMPD from liability.

### ii. Discretionary-function immunity

The Eleventh Amendment to the United States Constitution preserves state sovereign immunity and prevents private citizens from asserting claims against states, their agencies, or employees. *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011). However, this immunity is not absolute. A private citizen may assert a claim against a state when the federal government has abrogated sovereign immunity or when the state has waived it. *Coll. Sav. Bank. v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S 666, 670 (1999).

A state waives sovereign immunity when consent to suit is "unequivocally expressed in statutory text." *Holley v. California Dept. of Corrections*, 599 F.3d 1108, 1111 (9th Cir. 2010) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)). The State of Nevada has unequivocally waived its sovereign immunity under NRS 41.031 subject to certain limitations. Nev. Rev. Stat. 41.031. One of these limitations is discretionary-function immunity, which provides that a plaintiff cannot bring an action against the state "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function . . ."[2] Nev. Rev. Stat. 41.032(2).

For an act to constitute a discretionary function, it must "(1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007). Any government decision, including those that are frequent and routine, may fall within the scope of discretionary-function immunity. *Ransdell v. Clark Cnty.*, 192 P.3d 756, 855 (Nev. 2008).

Due to the limited legal authority on the application of NRS 41.032(2), Nevada courts look to federal decisional law regarding the Federal Tort Claims Act ("FTCA") for guidance on what type of conduct discretionary-function immunity protects. *Martinez*, 168 P.3d at 727–28. Under

---

[2] On its face, NRS 41.032(2) does not immunize municipal governments or their employees because municipalities are considered independent corporations or "persons" with their own identities, not mere political subdivisions of a state. *See Monell*, 436 U.S. at 690. The Nevada Supreme Court, however, has implicitly assumed that municipalities are political subdivisions of the state for the purposes of applying discretionary-function immunity. *See, e.g.*, *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987).

the FTCA, a law enforcement officer's decision concerning how to effectuate an arrest is a discretionary act that the discretionary-function immunity generally protects. *Sabow v. United States*, 93 F.3d 1145, 1453 (9th Cir. 1996).

The facts of this case confirm that Officer Lopera engaged in a discretionary act. Not only did Officer Lopera make an individual judgment to detain the decedent, but he also acted out of consideration for the public's safety such as the safety of Pierce, the operator of the white truck. *See* (ECF No. 93-5). Thus, Officer Lopera acted in conformity with most law enforcement officers by considering social, economic, and political policy in effectuating an arrest. *See Sandoval v. Las Vegas Metro. Police Dep't*, 854 F. Supp. 2d 860, 880 (D. Nev. 2012), *rev'd on other grounds*, 756 F.3d 1154 (9th Cir. 2014).

To defendants' detriment, the court's analysis does not end here. Even when the acts of a state employee satisfy both prongs of the discretionary-function test, immunity does not attach if the employee acted in bad-faith misconduct or violated the Constitution. *Franchise Tax Bd. of State of California v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017) (holding that NRS 41.032(2) does not protect bad-faith misconduct); *see also Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011) (holding that the FTCA's discretionary-function immunity does not shield acts that violate the Constitution.)

As the court explained above, plaintiffs have raised a genuine dispute of material fact pertaining to the constitutionality of Officer Lopera's conduct. Without first resolving whether Officer Lopera used excessive force when he placed the decedent in a neck restraint, the court cannot determine whether discretionary-function immunity protects Officer Lopera from liability. Therefore, the court will not enter summary judgment on plaintiffs negligence and battery claims against Officer Lopera.

Lastly, plaintiffs argue that LVMPD is liable under *respondeat superior* because Officer Lopera committed battery while in the scope of his employment. (ECF Nos. 45, 101). The discretionary-function immunity does not protect municipalities from *respondeat superior* liability for the common law torts of its employees. *See Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 939 (D. Nev. 2012); *see also ASAP Storage, Inc. v. City of Sparks*, 173 P.3d 734, 745 (Nev. 2007).

As there remains a jury question regarding Officer Lopera's state tort liability, the court will not enter summary judgment on plaintiffs' battery claim against LVMPD.

**IV.     Conclusion**

A genuine dispute of material fact precludes summary judgment on plaintiffs' (1) § 1983 claims against Officer Lopera; (2) *Monell* claim against LVMPD for a *de facto* policy of using excessive force; (3) state tort claims against Officer Lopera; and (4) battery claim against LVMPD. The court will enter summary judgment on all remaining claims in favor of defendants.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that LVMPD and officers Crumrine, Tran and Flores' motion for summary judgment (ECF No. 92) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (ECF No. 93) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Officer Lopera's motion for summary judgment (ECF No. 94) be, and the same hereby is, DENIED.

DATED April 25, 2019.

                                                         _____
                                                         UNITED STATES DISTRICT JUDGE