UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ESTATE OF TASHI S. FARMER, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1946 JCM (BNW)<br><br>ORDER |

Presently before the court is plaintiff Estate of Tashi S. Farmer ("Estate of Farmer"); E.B. K. D., a minor, through his legal guardian Stevandra Lk Kuanoni; and T.B.K. F.D., a minor, through her legal guardian Kuanoni (collectively "plaintiffs")'s motion to certify appeal as frivolous. (ECF No. 138). Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Officer Kenneth Lopera filed separate responses (ECF Nos. 140, 141), to which plaintiffs filed a reply (ECF No. 142).

**I.    Facts**

This is a civil rights action under 42 U.S.C. § 1983 that arises from a physical confrontation between now-deceased Tashi S. Farmer ("the decedent") and Officer Lopera of the LVMPD. (ECF No. 1). Video evidence, transcripts, and official records inform the court of the following events:

On May 14, 2017, Officer Lopera and Officer Ashley Lif were working at the Venetian Resort Hotel Casino. (ECF No. 93-5). At approximately 12:50 a.m., the decedent approached the officers to inform them that he ran across Las Vegas Boulevard because he believed that someone was following him. (ECF Nos. 45, 92-3, 93-5). The decedent was agitated, sweating profusely, and looking over his shoulder. (ECF No. 93-5). In response, Officer Lopera walked closer and

James C. Mahan
U.S. District Judge

reached out to the decedent. (ECF Nos. 93-5, 95-4). The decedent backed away into an employee hallway and a chase ensued. *Id*.

A few steps into the pursuit, Officer Lopera fell. (ECF No. 95-4). By the time he recovered, Officer Lopera no longer had sight of the decedent. (ECF Nos. 93-5, 95-4). Officer Lopera immediately ran through the hallway and down a stairwell, which led him to a shared road near Venetian's valet/self-park. (ECF No. 95-4). After receiving some assistance from a security guard, Officer Lopera spotted the decedent in the valet area near a white truck. *Id*.

Officer Lopera believed that the decedent was attempting to carjack the truck. (ECF No. 93-5). The operator of the vehicle, Jonathan Pierce, was closer to the decedent and did not perceive any attempt to enter the vehicle. (ECF No. 93-11). However, the decedent's erratic behavior frightened Pierce and caused him to lock the truck's doors. (ECF No. 92-6). Meanwhile, Officer Lopera sprinted to the decedent and shouted, "Stop! Don't move! You're getting tased!" (ECF No. 95-4). The officer then fired his taser and the decedent fell to the floor. *Id*.

Officer Lopera instructed the decedent to roll onto his stomach. *Id*. The decedent initially held his hands near his head, but then reached towards his feet and put his fingers inside his left shoe. *Id*. The officer fired his taser a second time and again instructed the decedent to roll onto his stomach. *Id*. The decedent cried, "I will, I will!" *Id*. A brief moment passed, but the decedent did not comply with Officer Lopera's order. *Id*. Instead, he once again reached towards his left shoe. *Id*. The officer fired his taser a third time and tried to push the decedent onto his stomach. *Id*. Officer Lopera's efforts were unsuccessful. *Id*.

The decedent continued to make erratic movements in what appears to be an effort to resist arrest. *Id*. Officer Lopera fired his taser four more times and then attempted to pull the decedent's hands behind his back. *Id*. Two security guards approached the scene to provide assistance, which gave Officer Lopera an opportunity to step back and holster his taser. (ECF Nos. 95-4, 96-12). The decedent's behavior remained erratic and Officer Lopera re-engaged the decedent, delivering numerous blows to the head. *Id*.

Once the decedent was sufficiently weakened, Officer Lopera placed the decedent in a neck restraint. *Id*. At this point, Sergeant Travis Crumrine arrived and attempted to help effectuate the

**James C. Mahan**
**U.S. District Judge**

- 2 -

arrest. *Id*. After approximately 25 seconds, Sergeant Crumrine instructed Officer Lopera to let go. *Id*. The decedent then attempted to escape, causing Officer Lopera to roll over. *Id*.

Despite the decedent's show of strength, Officer Lopera managed to maintain the neck restraint while officers Michael Tran and Michael Flores arrived. *Id*. Nearly 46 seconds passed while the officers attempted to subdue and handcuff the decedent. *Id*. Officers Crumrine, Tran, and Flores eventually stepped back and Officer Lopera released the decedent's inanimate corpse. *Id*.

Several officers applied first aid in a futile attempt to revive the decedent. (ECF No. 93-5). Eventually, medical personnel arrived and transported the decedent to Sunrise Hospital & Medical Center. *Id*. At 1:39 a.m., the decedent was pronounced dead. (ECF No. 45-1). The cause of death, according to the decedent's death certificate, was "asphyxia due to, or as a consequence of police restraint procedures." *Id*.

On July 18, 2017, plaintiffs initiated this action. (ECF No. 1). In their first amended complaint, plaintiffs allege six causes of action: (1) excessive force against Officer Lopera and failure to intercede against officers Crumrine, Tran, and Flores; (2) violation of the Fourth Amendment against defendant LVMPD; (3) deprivation of right to familial relationship against Lopera, Crumrine, Tran, and Flores; (4) deprivation of right to familial relationship against LVMPD; (5) negligence against all defendants; and (6) battery against Officer Lopera and LVMPD. (ECF No. 45). Plaintiffs assert claims against the individual defendants in both their individual and official capacities. *Id*.

Approximately one month after plaintiffs initiated this action, LVMPD's Tactical Review Board ("review board") convened a meeting to review the officers' conduct at the March 14, 2017, incident. (ECF No. 93-5). The review board made factual findings that are substantially consistent with the video evidence and concluded that Officer Lopera's actions amounted "to a gross inappropriate use of force." *Id*. The review board also concluded that Sergeant Crumrine "was in neglect of duty as a supervisor." *Id*.

The review board recommended terminating Officer Lopera but was unable to take any adverse employment action because Officer Lopera preemptively resigned. (ECF No. 92-15). The

James C. Mahan
U.S. District Judge

- 3 -

review board also demoted Sergeant Crumrine to a patrol officer. *Id*. The remaining officers did not receive substantial disciplinary sanctions. (ECF Nos. 92-15, 93-5).

LVMPD produced documents in discovery related to its use of force policy. At the time of the subject incident, LVMPD identified five levels of resistance: compliant, passive, active, aggressive, and aggravated aggressive. (ECF No. 93-6). According to the review board, the decedent engaged in active resistance, which means that the decedent was attempting to prevent arrest without harming an officer. (ECF Nos. 93-5, 93-6). The use of force policy permits officers to use a lateral vascular neck restraint ("LVNR") on suspects that are at the level of active resistance. (ECF No. 93-6).

On April 25, 2019, the court denied Officer Lopera's motion for summary judgment, holding that an issue of fact prevented the court from determining whether qualified immunity shielded Officer Lopera from liability. (ECF No. 114). Specifically, the court held that the record did not undisputedly show (1) whether Officer Lopera used reasonable force and (2) whether his actions shocked the conscience.[1] *Id*.

On April 30, 2019, Officer Lopera appealed the court's order denying summary judgment. (ECF No. 116). On May 15, 2019, the court stayed proceedings against LVMPD due to the court's interest in adjudicating intertwined claims together and the public's interest in efficient litigation. (ECF No. 137). Now, plaintiffs move to certify Officer Lopera's appeal as frivolous and to lift the stay of proceedings against LVMPD. (ECF No. 138).

## II. Legal Standard

In general, a district court's denial of summary judgment is not immediately appealable. *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). A district court's denial of qualified immunity is an exception. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). The Ninth Circuit has provided for such an immediate appeal because qualified immunity is effectively lost if a case improperly proceeds. *Padgett*, 587 F.3d at 985.

---

[1] The court did not find that the facts were sufficiently undisputed to determine the correct culpability standard for plaintiffs' familial deprivation claim and whether Officer Lopera met either of those culpability standards. (ECF No. 114). The trier-of-fact must resolve these questions. *See id*.

James C. Mahan
U.S. District Judge

- 4 -

District courts can certify an appeal as frivolous and proceed to trial when the appeals process would cause waste and undue delay. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018). Absent such certification, the appeal divests the district court of jurisdiction to proceed to trial on the issues involved in the appeal. *Chuman v. Wright*, 960 F.2d 104, 106 (9th Cir. 1992).

### III. Discussion

An appeal is frivolous if the results are obvious or the arguments are wholly without merit. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n.3 (9th Cir. 2002). Appealing a denial of qualified immunity due to a genuine dispute of material fact is a frivolous appeal because appellate courts do not have jurisdiction over such orders. *Rodriguez*, 891 F.3d at 791. However, the Ninth Circuit can properly exercise jurisdiction over issues that do not require resolution of factual disputes. *Johnson v. City of Los Angeles*, 240 F.3d 787, 791 n.1 (9th Cir. 2003) ("when a determination of qualified immunity depends on disputed issues of material fact so long as we assume the version of the material facts asserted by the non-moving party to be correct").

The court denied Officer Lopera's motion for summary judgment because there was a genuine dispute of fact pertaining to the nature of Officer Lopera's conduct. (ECF No. 116). Thus, the Ninth Circuit does not have jurisdiction over the court's determination that a dispute of fact puts into question whether Officer Lopera violated constitutional rights. However, the Ninth Circuit can exercise jurisdiction with respect to the second prong of the qualified immunity analysis: whether the respective constitutional rights were clearly established. *See Schwenk v. Hartford*, 204 F.3d 1187, 1195–96 (9th Cir. 2000). Accordingly, the court will consider whether Officer Lopera's arguments pertaining to the second prong have merit.

The "clearly established" prong of the qualified immunity analysis involves whether prior decisions gave reasonable warning that the conduct at issue violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). Courts determine whether a right is clearly established by looking to case law on the allegedly violated right. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). A case directly on point is not necessary, but "existing

precedent must have placed the statutory or constitutional question beyond debate." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (quotes and citation omitted).

    *a. Excessive force*

It is well-established that a law enforcement officer must use force that is proportionate to the level of threat that a suspect creates. *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1131–32 (9th Cir. 2017). An officer can use deadly force "only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others*.*" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).

Although the decedent was actively resisting arrest, at no point did he attempt to harm Officer Lopera. (ECF Nos. 93-5, 93-6, 95-4). Once the security guards interceded, any threat arising from the incident became inconsequential because Officer Lopera was no longer acting alone. *Id*. Nevertheless, Officer Lopera proceeded to use deadly force by punching the decedent on the head multiple times and placing him in a neck restraint for over one minute. *Id*. The decedent began to engage in remarkable acts of resistance only shortly before his death, after Officer Lopera placed him in a neck restraint. *Id*.

Any reasonable officer would have known that multiple strikes to the head and a neck restraint for over a minute is appropriate only when there is a significant threat of death or serious physical injury. Thus, there is a clearly established right with respect to Officer Lopera's use of deadly force. *See Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013) ("Rather, police officers who confront actual (or perceived) resistance are only permitted to use an amount of force that is reasonable to overcome that resistance.")

    *b. Deprivation of familial relationship*

The Ninth Circuit has clearly established that a defendant violates a child's substantive due process rights to familial relationships by causing a deprivation of that interest with conduct that "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008); *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). As a matter of settled law, conduct shocks the conscience if a defendant (1) had time to deliberate and acted with

"deliberate indifference" or (2) did not have time to deliberate and acted with "purpose to harm." *County of Sacramento v Lewis*, 523 U.S. 833, 851 (1998).

The foregoing mandatory authority provides Officer Lopera with fair warning of whether his conduct violated E.B. K. D. and T.B.K. F.D's constitutional rights. *See A.D. v. California Highway Patrol*, No. C 07-5483 SI, 2009 WL 733872, at *8 (N.D. Cal. March 17, 2009). Therefore, plaintiffs had a clearly established right in familial relationship at the time Officer Lopera strangled the decedent.

In sum, Officer Lopera has filed a baseless appeal. The Ninth Circuit does not have jurisdiction to review the court's order in so far as it denies summary judgment due to a genuine dispute of material fact. Further, Officer Lopera's arguments that plaintiffs did not have clearly established Fourth and Fourteenth Amendment rights are without merit. Therefore, the court will certify the appeal as frivolous and lift stay on proceedings against LVMPD. Both defendants shall follow the applicable Local Rules and proceed to trial in concert.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion to certify appeal as frivolous (ECF No. 138) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Officer Lopera's interlocutory appeal (ECF No. 116) be, and the same hereby is, CERTIFIED AS FRIVOLOUS.

IT IS FURTHER ORDERD that the stay on proceedings against LVMPD (ECF No. 137) be, and the same hereby is, LIFTED.

DATED June 13, 2019.

_____
UNITED STATES DISTRICT JUDGE